# Exhibit A

**LAW OFFICE OF LEON AUSSPRUNG, M.D., L.L.C.**
By:　H. Leon Aussprung, III, M.D., Esquire
　　　　I.D. No.: 80183
　　　　James E. Hockenberry, Esquire
　　　　I.D. No.: 91133
One Commerce Square, Suite 2300
2005 Market Street
Philadelphia, PA　19103
267-809-8250
LA@aussprunglaw.com
JH@aussprunglaw.com

---

GARY B. FREEDMAN, ESQUIRE,　　　　）
Administrator of the ESTATE OF
ABRAHAM STRIMBER, deceased　　　　）
Freedman & Grinshpun, P.C.
7909 Bustleton Avenue　　　　　　　　）
Philadelphia, PA 19152
　　　　　　　　　　　　　　　　　　）
and
　　　　　　　　　　　　　　　　　　）
BRACHA STRIMBER　　　　　　　　　）
3117 Northbrook Road
Pikesville, MD 21208　　　　　　　　　）

Plaintiffs,　　　　　　　　　　　　　）

　　　　　v.　　　　　　　　　　　　）

STEVEN FISHER, M.D.　　　　　　　　）
c/o Abington Emergency Physician
Associates　　　　　　　　　　　　　　）
AMH Emergency Trauma Center
1200 Old York Road　　　　　　　　　）
Abington, PA 19001
　　　　　　　　　　　　　　　　　　）

and　　　　　　　　　　　　　　　　）

MARGO TURNER, M.D.　　　　　　　　）
c/o Abington Memorial Hospital
1200 Old York Road　　　　　　　　　）
Abington, PA 19001
　　　　　　　　　　　　　　　　　　）

and　　　　　　　　　　　　　　　　）

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF**
**PENNSYLVANIA**

No.:

MANOJ R. MUTTREJA, M.D.
c/o Abington Medical Specialists          )
Association, P.C., d/b/a Abington
Medical Specialists and d/b/a             )
AMS Cardiology
1235 Old York Road                        )
Levy Medical Plaza, Suite 222
Abington, PA 19001                        )

and                                       )

ABINGTON MEDICAL SPECIALISTS )
ASSOCIATION, P.C., d/b/a
ABINGTON MEDICAL                          )
SPECIALISTS, and d/b/a AMS
CARDIOLOGY                                )
1235 Old York Road
Levy Medical Plaza, Suite 222             )
Abington, PA 19001
                                          )
and
                                          )
ABINGTON EMERGENCY
PHYSICIAN ASSOCIATES                      )
c/o AMH Emergency Trauma
Center                                    )
1200 Old York Road
Abington, PA 19001                        )

and                                       )

ABINGTON MEMORIAL HOSPITAL )
1200 Old York Road
Abington, PA 19001                        )

        and                               )

RITESH RAMPURE, M.D.                      )
c/o Abington Memorial Hospital
1200 Old York Road                        )
Abington, PA 19001
                                          )
_____

## PLAINTIFFS' FIRST AMENDED CIVIL ACTION COMPLAINT

### I. INTRODUCTION

1.      This case involves medical negligence that occurred on 2/22/2012 while Abraham Strimber, (hereafter Decedent), was a patient at Abington Memorial Hospital in the Emergency Department and after being admitted to the Internal Medicine service.   On that date, the licensed professionals involved in Decedent's care failed to diagnose and treat Decedent properly and within the standards of care required of them, leading to Decedents' death as a result of a ruptured ascending aortic aneurysm on that same date.   Plaintiffs bring this action pursuant to their authority as personal representatives of the Estate of Abraham Strimber pursuant 20 Pa.C.S.A §3373 and 42 Pa.C.S.A. §8302.   Plaintiff Bracha Strimber, as the surviving spouse of Abraham Strimber, also brings this action individually.

### II. JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states as plaintiff, Bracha Strimber, Decedent's surviving spouse, is a resident of the state of Maryland.   In addition, Plaintiff, Gary B. Freedman, Esquire, the Administrator of Decedent's estate, is deemed a citizen of Maryland for the purposes of diversity jurisdiction pursuant to 28 U.S.C. §1332(c)(2), as the Decedent was a citizen of Maryland at the time of his death on 2/22/2012.

3.      Venue in the Eastern District of Pennsylvania is proper as at least one (1) of the defendants resides in this District and a substantial part of the

events or omissions giving rise to the claim occurred in this District.

III.   PARTIES

4.     Plaintiff, Gary B. Freedman, Esquire, is an attorney licensed to practice law in the Commonwealth of Pennsylvania and is the personal representative/Administrator of the Estate of Abraham Strimber, pursuant to Letters of Administration issued by the Register of Wills for Philadelphia County on 11/14/2012, with an address of 7909 Bustleton Avenue, Philadelphia, Pennsylvania.

5.     Plaintiff, Bracha Strimber, is an adult individual and the surviving spouse of the Decedent, Abraham Strimber, residing at 3117 Northbrook Road, Pikesville, Maryland.

6.     Defendant, Steven Fisher, M.D., (hereafter "Dr. Fisher"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in emergency medicine, and has a principal place of business at c/o Abington Emergency Physicians Associates, AMH Trauma Center, 1200 Old York Road, Abington, Pennsylvania.   At all times material and relevant hereto, Dr. Fisher was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

7.     Defendant, Margot Turner, M.D., (hereafter "Dr. Turner"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in

Internal Medicine, and has a principal place of business at c/o Abington
Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania.   At all times
material and relevant hereto, Dr. Turner was the employee and/or agent
and/or ostensible agent and/or apparent agent of each of the other defendants
in this matter, and his negligent acts and/or omissions are imputed to said
defendants.   Plaintiff is asserting a professional liability claim against this
defendant.

8.   Defendant Manoj R. Muttreja, M.D., (hereafter "Dr. Muttreja"), is
an adult individual and licensed physician who at the time of the alleged
negligence on 2/22/2012, set forth more fully herein, purported to specialize in
Cardiology, and has a principal place of business at c/o Abington Medical
Specialists Association, P.C., d/b/a Abington Medical Specialists and d/b/a
AMS Cardiology, 1235 Old York Road, Levy Medical Plaza, Suite 222, Abington,
Pennsylvania.   At all times material and relevant hereto, Dr. Muttreja was the
employee and/or agent and/or ostensible agent and/or apparent agent of each
of the other defendants in this matter, and his negligent acts and/or omissions
are imputed to said defendants.   Plaintiff is asserting a professional liability
claim against this defendant.

9.   Defendant Abington Medical Specialists Association, P.C., d/b/a
Abington Medical Specialists, and/or d/b/a AMS Cardiology, (hereafter
AAMS@), is a corporation, fictitious name, or other similar entity, organized
and/or existing under the laws of the Commonwealth of Pennsylvania, and is
engaged in the business of providing healthcare and related services to the

general public, and at all times material and relevant hereto maintained a

principle place of business at 1235 Old York Road, Levy Medical Plaza, Suite

222, Abington, Pennsylvania. At all times material and relevant hereto said

defendant acted through its agents, ostensible agents, servants, workmen,

and/or employees, specifically including Dr. Watson and Dr. Muttreja, each of

whose negligent acts and/or omissions are imputed to AMS. Plaintiff is

asserting a professional liability claim against this defendant.

10.     Defendant Abington Emergency Physicians Associates is a

corporation, fictitious name, or other similar entity, organized and/or existing

under the laws of the Commonwealth of Pennsylvania, and is engaged in the

business of providing healthcare and related services to the general public, and

at all times material and relevant hereto maintained a principle place of

business at c/o AMH Trauma Center, 1200 Old York Road, Abington,

Pennsylvania. At all times material and relevant hereto said defendant acted

through its agents, ostensible agents, servants, workmen, and/or employees,

specifically including Dr. Fisher, whose negligent acts and/or omissions are

imputed to AMS. Plaintiff is asserting a professional liability claim against this

defendant.

11.     Defendant Abington Memorial Hospital, (hereafter "AMH"), is, upon

information and belief, a corporation, or other entity, organized and/or existing

under the laws of the Commonwealth of Pennsylvania, and is engaged in the

business of providing healthcare and related services to the general public, and

at all times material and relevant hereto maintained a principle place of

business at 1200 Old York Road, Abington, Pennsylvania. At all times

material and relevant hereto, AMH acted through its agents, apparent agents, ostensible agents, servants, workmen, and/or employees, specifically including each defendant named herein, all of whose negligent acts and/or omissions are imputed to AMH. Plaintiff is asserting a professional liability claim against this defendant.

12.     Defendant, Ritesh Rampure, M.D., (hereafter "Dr. Rampure"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in Internal Medicine, and has a principal place of business at c/o Abington Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania. At all times material and relevant hereto, Dr. Rampure was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants. Plaintiff is asserting a professional liability claim against this defendant.

IV.     ALLEGATIONS

13.     The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

14.     Decedent, Abraham Strimber, a 61 year old male, presented to the Abington Memorial Hospital Emergency Room at 11:42 a.m. on 2/22/2012 with multiple complaints, including the abrupt onset, after loading his car, of the sensation that he had a lid of a paint can that began in his epigastrum and slammed up into his jaw and then came down and continues to compress on his abdomen.

15.   The assessment performed by triage nurse Lori Ischinger, RN, at 11:45 a.m. stated that Decedent "here w/ c/o legs vibrating and and feels like is going to explode." Nurse Ischinger is an agent of all defendants.

16.   Nurses Lynne Stelaris, R.N. and Perry Benedict, R.N. also provided emergency department triage and/or care to Decedent and they were agents of all defendants.

17.   Decedent reported his past medical history as significant for hypertension and mitral and aortic valve replacement.

18.   Cardiac valve replacement is a risk factor for an aortic aneurysm.

19.   The emergency department nursing assessment noted:

a.   A[patient] states he was walking up the driveway after loading things in the car felt >a rising metallic feeling like someone put a pain can in my stomachs and the lid was rising up into my throat=. Wife states became pale and clammy. Denies syncope. [Patient] had 2 episodes of diarrhea and + nausea. C/o abd distention and pain radiating to back.@

b.   APatient denies chest pain@

c.   AAbdominal pain is diffuse, Pain radiates to back, Abdomen is distended@;

20.   Upon physical examination, Dr. Fisher noted the following findings:

a.   systolic click;

      b.     epigastric tenderness; and,

      c.     aortic pulsation;

21.    Additionally, Dr. Fisher noted that A[t]he exact precipitant of the Patient's pain remained unclear.   I was worried based upon his examination that he could have a AAA.   This did not appear to be the case.   The patient did not receive IV contrast as he has a significant allergy to IV dye.   Ultimately, the patient was admitted given our uncertainty as to the patient's pain.   He was clearly uncomfortable.   The patient's case was discussed at length with the hospitalist who admitted the patient.@

22.    Upon information and belief, the hospitalist who discussed the patient's case was an agent of Defendants.

23.    Dr. Turner performed a History & Physical at approximately 4:09 p.m. on 2/22/12 while Decedent was in the emergency department, and noted the following:

      a.     Chief Complaint: chest/epigastric/back pain, n/v/d@

      b.     that Decedent takes Warfarin at home in doses ranging from 5 to 7.5 mg daily dependent upon INR results, which increases the likelihood and severity of bleeding;

      c.     Lab results noting PTT of 40 and INR of 2.8

      d.     CT scan of abdomen and pelvis showed no *abdominal* aortic aneurysm or any evidence of dissection; and,

      e.     that Decedent had a history of valve replacement surgery;

24.    No thoracic CT scan was ever ordered or completed for Decedent.

25.     Warfarin is a blood thinning medication that worsens bleeding and the likelihood to bleed.

26.     At approximately 6:30 p.m., following Decedent's admission to the internal medicine service, he was seen and examined by Dr. Muttreja, a cardiologist.

27.     Dr. Muttreja's *Consultation Report* notes that the "Reason for Consult as Aback pain h/o AVR."

28.     Dr. Muttreja further noted that Decedent was admitted with Aback pain epigastric pain and that Decedent complained of AN/V + back pain.@

29.     Dr. Muttreja's assessment stated that Decedent was stable regarding his cardiovascular issues and that doubts acute coronary syndrome based upon cardiac markers and EKG, but recommended an echocardiogram.

30.     At approximately 8:31 p.m. on the evening of 2/22/2012, prior defendant Kristina Martinez, (herafter "NP Martinez"), was notified by the telemetry nurse of a Achange in condition@ of Decedent, specifically of a heart rate of 49 and ST changes.

31.     NP Martinez rendered care and treatment to Decedent as follows:

        a.      ordering sublingual Nitroglycerin at 8:40 p.m.

        b.      ordering aspirin at 9:01 p.m.

        c.      ordering Decadron (Dexamethasone ) at 9:01 p.m.

        d.      ordering Leukoreduced Packed Red Blood Cells at 9:01 p.m.

        e.      an EKG, nitroglycerin, SL & cardiac enzymes later that evening.

32.    At approximately 9:34 p.m. Decedent was taken to the Cardiac Catheterization Lab for urgent catheterization.

33.    Dr. Watson arrived to perform the catheterization procedure at approximately 9:38 p.m.

34.    Dr. Watson found no obstructive coronary artery disease, however concluded that Decedent suffered [c]ardiogenic shock due to ruptured ascending aortic aneurysm with fistula to Right atrium/pericardium presumably and [p]ossible acute pericardial tamponade, and that the patient expired.

35.    Decedent's ascending aortic aneurysm was located in his thorax.

36.    Dr. Watson spoke with Dr. Garrido, a cardothoracic surgeon following his findings, but noted that it was futile to attempt to open this thorax.

37.    Following efforts at cardiopulmonary resuscitation, the patient was pronounced dead at 10:49 p.m.

38.    Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Turner, who consulted with defendant Ritesh Rampure, M.D., her attending, regarding the presentation of Abraham Strimber, as well as the plan and assessment for Abraham Straimber, both of whom had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

39.    At all times while Decedent was under the care of each and every defendant he was suffering from a thoracic aortic aneurysm and/or dissection.

40.   None of the defendants ordered, completed and/or performed a thoracic CT scan, chest x-ray, thoracic ultrasound, thoracic MRI, trans-esophogeal echocardiogram, or trans-thoracic echocardiogram upon Decedent nor did they timely diagnose an aortic aneurysm/dissesction.

### COUNT I - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. STEVEN FISHER, M.D.

41.   Paragraphs one (1) through forty (40) are incorporated by reference hereat as if set forth at length.

42.   At all time material and relevant hereto, defendant, Dr. Fisher, the agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Emergency Physicians Associates and/or Abington Memorial Hospital, failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and this negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

  a. failing to properly diagnose Decedent;

  b. failing to timely diagnose Decedent;

  c. failing to properly treat Decedent;

  d. failing to timely treat Decedent;

  e. failing to timely diagnose an aortic aneurysm and/or dissection;

  f. failing to timely treat an aortic aneurysm and/or dissection;

  g. failing to timely order and obtain a surgical consultation;

  h. failing to timely surgically treat an aortic aneurysm and/or

dissection;

i.    failing to timely medically treat an aortic aneurysm and/or dissection;

j.    failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k.    failing to properly appreciate Decedent's risks and complaints

as potentially related to an aortic aneurysm and/or dissection;

l.    failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.    failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.    failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.    failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.    failing to order and obtain cardiothoracic surgical consult;

q.    failing to order and obtain a consult by a cardiologist;

r.    failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.    failing to order and obtain an ultrasound;

t.    failing to order and obtain a chest x-ray;

u.    failing to properly and/or timely intervene in Decedent's care

to prevent his aortic aneurysm and/or dissection from

bleeding and/or rupturing;

v.     failing to properly and/or timely intervene in Decedent's care

to prevent his death; and

w.     failing to timely and/or properly communicate with other

physicians/nurses regarding the care and treatment of

Decedent.

43.     The careless and negligent acts and/or omissions of Dr. Fisher,

which acts and/or omissions are imputed to Abington Emergency Physicians

Associates and/or Abington Memorial Hospital, deviated from accepted

standards of medical care, increased the risk of harm to the Decedent, and/or

was a substantial factor and/or was a factual cause of said Decedent=s

suffering the following injuries and damages:

a.     death;

b.     pain and suffering;

c.     past mental anguish;

d.     cardiac tamponade;

e.     loss of ability to enjoy the pleasures of life;

f.     financial loss, general expenses, funeral expenses, and bills;

g.     the loss of the Decedent=s companionship, guidance,

nurture, and tutelage;

h.     as a result of the death of Abraham Strimber, his estate has

been deprived of the economic value of his life expectancy,

and Plaintiffs herein claim damages for said pecuniary loss; and,

f.    such other valuables and damages as are appropriately allowed by Pennsylvania law under the Wrongful Death and Survival statutes, respectively, 42 Pa.C.S.A. §§8301, 8302.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT II - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. MARGO TURNER, M.D.

44.    Paragraphs one (1) through forty-three (43) above are incorporated by reference hereat as if set forth at length.

45.    Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Turner, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

46.    At all time material and relevant hereto, Dr. Turner was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and

her negligent and careless acts and/or omissions fell below the applicable

standard of care in the following manner:

    a.    failing to properly diagnose Decedent;

    b.    failing to timely diagnose Decedent;

    c.    failing to properly treat Decedent;

    d.    failing to timely treat Decedent;


    e.    failing to timely diagnose an aortic aneurysm and/or
        dissection;

    f.    failing to timely treat an aortic aneurysm and/or dissection;

    g.    failing to timely order and obtain a surgical consultation;

    h.    failing to timely surgically treat an aortic aneurysm and/or
        dissection;

    i.    failing to timely medically treat an aortic aneurysm and/or
        dissection;

    j.    failing to order and/or complete proper radiology studies to
        evaluate Decedent's complaints;

    k.    failing to properly appreciate Decedent's risks and
        complaints
        as potentially related to an aortic aneurysm and/or
        dissection;

    l.    failing to order and/or perform a CT scan of Decedent's
        chest/thorax;

    m.    failing to order and/or perform a Trans-Esophageal

Echocardiogram (TEE);

n.  failing to order and/or perform a Trans-Thoracic
    Echocardiogram (TTE);

o.  failing to order and/or perform an MRI or CT scan of
    Decedent's chest/thorax;

p.  failing to order and obtain cardiothoracic surgical consult;

q.  failing to order and obtain a consult by a cardiologist;

r.  failing to recognize the signs, symptoms, and risk factors of a
    thoracic aortic aneurysm and/or dissection;

s.  failing to order and obtain an ultrasound;

t.  failing to order and obtain a chest x-ray;

u.  failing to properly and/or timely intervene in Decedent's care
    to prevent his aortic aneurysm and/or dissection from
    bleeding and/or rupturing;

v.  failing to properly and/or timely intervene in Decedent's care
    to prevent his death; and

w.  failing to timely and/or properly communicate with other
    physicians/nurses regarding the care and treatment of
    Decedent.

47.  The careless and negligent acts and/or omissions of Dr. Turner,
which acts and/or omissions are imputed to Abington Memorial Hospital,
deviated from accepted standards of medical care, increased the risk of harm to
the Decedent, and/or was a substantial factor and/or was a factual cause of

said Decedent's suffering the injuries and/or damages set forth in ¶43 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT III - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER
### V. MANOJ R. MUTTREJA, M.D.

48.    Paragraphs one (1) forty-seven (47) above are incorporated by reference hereat as if set forth at length.

49.    At all time material and relevant hereto, defendant Dr. Muttreja was the agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology and/or Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

      a.    failing to properly diagnose Decedent;

      b.    failing to timely diagnose Decedent;

c.   failing to properly treat Decedent;

d.   failing to timely treat Decedent;

e.   failing to timely diagnose an aortic aneurysm and/or
     dissection;

f.   failing to timely treat an aortic aneurysm and/or dissection;

g.   failing to timely order and obtain a surgical consultation;

h.   failing to timely surgically treat an aortic aneurysm and/or
     dissection;

i.   failing to timely medically treat an aortic aneurysm and/or
     dissection;

j.   failing to order and/or complete proper radiology studies to
     evaluate Decedent's complaints;

k.   failing to properly appreciate Decedent's risks and
     complaints
     as potentially related to an aortic aneurysm and/or
     dissection;

l.   failing to order and/or perform a CT scan of Decedent's
     chest/thorax;

m.   failing to order and/or perform a Trans-Esophageal
     Echocardiogram (TEE);

n.   failing to order and/or perform a Trans-Thoracic
     Echocardiogram (TTE);

o.   failing to order and/or perform an MRI or CT scan of
     Decedent's chest/thorax;

p.     failing to order and obtain cardiothoracic surgical consult;

q.     failing to order and obtain a consult by a cardiologist;

r.     failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.     failing to order and obtain an ultrasound;

t.     failing to order and obtain a chest x-ray;

u.     failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.     failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.     failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

50.     The careless and negligent acts and/or omissions of Dr. Manoj, which acts and/or omissions are imputed to Abington Emergency Physicians Associates and/or Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's suffering the injuries and/or damages set forth in ¶43 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical

Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT IV - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V.   ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., d/b/a   ABINGTON MEDICAL SPECIALISTS, and d/b/a AMS CARDIOLOGY

51.   Paragraphs one (1) through fifty (50) above are incorporated by reference hereat as if set forth at length.

52.   Defendant AMS is vicariously responsible for the acts and/or omissions of defendant Dr. Muttreja as detailed herein.

53.   Defendant AMS is vicariously responsible for the acts and/or omissions of its known and unknown agents, workmen, servants, and/or employees who provided negligent care and treatment to decedent Abraham Strimber.

54.   All allegations asserted against Dr. Muttreja as detailed above are incorporated herein by reference and made a part hereof as if set forth in full.

55.   The injuries and damages to decedent Abraham Strimber, his Estate, and/or his widow, Bracha Strimber, were caused solely and wholly by reason of the negligence of the defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B.

Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical

Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or

d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or

Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or

severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT V - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ABINGTON EMERGENCY PHYSICIAN ASSOCIATES

56.     Paragraphs one (1) through fifty-five (55) above are incorporated

by reference hereat as if set forth at length.

57.     Defendant Abington Emergency Physician Associates is vicariously

responsible for the acts and/or omissions of defendant Dr. Fisher as detailed

herein.

58.     Defendant Abington Emergency Physician Associates is vicariously

responsible for the acts and/or omissions of its known and unknown agents,

workmen, servants, and/or employees who provided negligent care and

treatment to decedent Abraham Strimber.

59.     All allegations asserted against Dr. Fisher as detailed above

are incorporated herein by reference and made a part hereof as if set forth in

full.

60.     The injuries and damages to decedent Abraham Strimber, his

Estate, and/or his widow, Bracha Strimber, were caused solely and wholly by

reason of the negligence of the defendants, as set forth more fully herein, and

were not caused or contributed thereto by any negligence on the part of

Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT VI - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ABINGTON MEMORIAL HOSPITAL

61.     Paragraphs one (1) through sixty (60) above are incorporated by reference hereat as if set forth at length.

62.     Defendant AMH is vicariously responsible for the acts and/or omissions of defendants Dr. Fisher, Dr. Turner, and Dr. Rampure as detailed herein.

63.     Defendant AMH is vicariously responsible for the acts and/or omissions of its known and unknown agents, workmen, servants, and/or employees who provided negligent care and treatment to decedent Abraham Strimber.

64.     All allegations asserted against Dr. Fisher, Dr. Turner, and Dr. Rampure, as detailed above are incorporated herein by reference and made a part hereof as if set forth in full.

65.     The injuries and damages to decedent Abraham Strimber, his

Estate, and/or his widow, Bracha Strimber, were caused solely and wholly by reason of the negligence of the defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT VII - CORPORATE NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER
### V. ABINGTON MEMORIAL HOSPITAL

66. Paragraphs one (1) through sixty-five (65) above are incorporated by reference hereat as if set forth at length.

67. The corporate negligence of defendant AMH consisted of the following:

    a.    A duty to select and retain only competent physicians, surgeons, residents, interns, nurses, technicians, and others who treated decedent Abraham Strimber, as described herein, including staff and/or employees that will ensure proper communication of all medical care and treatment, including emergency department care, and for enforcing

policies and/or procedures to protect and/or mitigate the risk of harm to patients such as Abraham Strimber;

b. A duty to use reasonable care in the maintenance of safe and adequate emergency department equipment and facilities for the treatment of decedent, Abraham Strimber;

c. A duty to oversee all persons who practice medicine within its walls as to patient care, in particular the duty to oversee the physicians, surgeons, nurses, resident, interns, technicians, and others who treated decedent Abraham Strimber, as described herein, including staff and/or employees that will ensure proper communication of enforcing policies concerning protocol for medical conditions such as decedent Abraham Strimber=s;

d. A duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients, in particular to have rules and policies to:

　　i. Ensure physicians, surgeons, residents, interns, nurses, technicians, and/or other medical staff perform and/or document timely and proper patient assessments and/or evaluations;

　　ii. Ensure proper monitoring of patients while in the emergency department;

　　iii. Ensure proper monitoring of patients following

admission from the emergency department;

iv.     Ensure that all orders are timely and properly carried out;

v.      ensure that patient complaints are timely and appropriately assessed and responded to;

vi.     Ensure that changes in a patient's condition, including cardiovascular status and/or physical status are timely and properly communicated to physicians, surgeons, nurses, residents, interns, technicians, aides, and/or other personnel responsible for patient medical care and/or treatment;

vii.    Ensure policies and/or procedures and their enforcement concerning the admission of patients from the emergency department without a proper plan and/or diagnosis;

viii.   Ensure proper and timely communication and/or consultation of physicians;

ix.     Ensure proper training and supervision of emergency department staff;

x.      Ensure proper training and supervision of hospitalists, interns, residents, and specialists; and,

xi.     Ensure the use of proper diagnostic tools for emergency   department physicians, hospitalists,

interns, residents, nurses, and other medical staff.

68.     The carelessness and negligence of defendant AMH as set forth above increased the risk of harm and was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiffs and decedent Abraham Strimber as set forth more fully herein.

69.     Defendant AMH had actual and/or constructive knowledge of its failures, carelessness, and/or negligence as described above.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

**COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.;
RITESH RAMPTURE, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON
MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL
SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON
EMERGENCY PHYSICIANS ASSOCIATES AND
ABINGTON MEMORIAL HOSPITAL**

70.     Paragraphs one (1) through sixty-nine (69) above are incorporated by reference hereat as if set forth at length.

71.     At the time of the aforesaid incident of 2/22/2012, plaintiff Bracha Strimber was the wife of decedent Abraham Strimber.

72.     Plaintiff Bracha Strimber was present throughout the entirety of

the care and treatment rendered by the defendants herein while her husband, Abraham Strimber, was a patient at Abington Memorial Hospital on 2/22/2012, and observed the care, treatment, pain, suffering, anguish, and fear suffered by Abraham Strimber.

73.    As a direct and proximate result of the defendants' negligence and Bracha Strimber's sensory and contemporary observation of the care, treatment, pain, suffering, anguish, and fear of her husband, said plaintiff suffered and experienced severe emotional distress and extreme mental pain and suffering.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT IX – LOSS OF CONSORTIUM
### BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; RITESH RAMPURE, M.D..; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL

74.    Paragraphs one (1) through seventy-three (73) above are incorporated by reference hereat as if set forth at length.

75.    Plaintiff Bracha Strimber in her individual capacity bring this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. §8301 and

Pa.R.C.P. 2202(a)

76.   As a result of the negligence of the defendants herein, plaintiff Bracha Strimber has and will continue to suffer the loss of the services, support and consortium of her spouse, decedent Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT X - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. RITESH RAMPURE, M.D.

77.   Paragraphs one (1) through seventy-six (76) above are incorporated by reference hereat as if set forth at length.

78.   Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was treated by Dr. Rampure, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

79.   Specifically, Dr. Turner telephone Dr. Rampure, who was her attending, and presented Mr. Strimber's case to him, including discussing her History & Physical, symptoms, and laboratory studies.

80.   Dr. Rampure then advised Dr. Turner to cancel the cardiology

consult that she had previously requested.

81.    At all times material and relevant hereto, Dr. Rampure was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

    a.    failing to properly diagnose Decedent;

    b.    failing to timely diagnose Decedent;

    c.    failing to properly treat Decedent;

    d.    failing to timely treat Decedent;

    e.    failing to timely diagnose an aortic aneurysm and/or dissection;

    f.    failing to timely treat an aortic aneurysm and/or dissection;

    g.    failing to timely order and obtain a surgical consultation;

    h.    failing to timely surgically treat an aortic aneurysm and/or dissection;

    i.    failing to timely medically treat an aortic aneurysm and/or dissection;

    j.    failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

    k.    failing to properly appreciate Decedent's risks and complaints

    as potentially related to an aortic aneurysm and/or

dissection;

l.   failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.   failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.   failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.   failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.   failing to order and obtain cardiothoracic surgical consult;

q.   failing to order and obtain a consult by a cardiologist;

r.   failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.   failing to order and obtain an ultrasound;

t.   failing to order and obtain a chest x-ray;

u.   failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.   failing to properly and/or timely intervene in Decedent's care to prevent his death;

w.   failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent; and,

x.   failing to personally see and examine Decedent.

82.     The careless and negligent acts and/or omissions of Dr. Rampure, which acts and/or omissions are imputed to Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's suffering the injuries and/or damages set forth in ¶43 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT XI – VIOLATION OF EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT, 42 U.S.C. §1395dd
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER
### V. ABINGTON MEMORIAL HOSPITAL

83.     Paragraphs one (1) through eighty-two (82) above are incorporated by reference hereat as if set forth at length.

84.     Defendant Abington Memorial Hospital violated § 1395dd(a) of EMTALA on 2/22/2012 in order to determine if Decedent Abraham Strimber was suffering from an "emergency medical condition;" specifically, said Defendants and/or their employees, servants, workmen, agents, and/or ostensible agents:

    a.    failed to conduct a full and complete medical screening examination;

    b.    performed an inadequate triage examination without an appropriate complete medical screening examination;

    c.    treated Abraham Strimber disparately from other similarly situated patients;

    d.    departed from their standard medical screening examination of patients with complaints and symptoms similar to those of Abraham Strimber;

    e.    failed to timely determine whether or not an emergency medical condition existed;

    f.    failed to adhere to their own standard policies, procedures and/or protocols for patients entering the Emergency Department in similar medical circumstances;

    g.    failed to perform a medical screening examination within the capabilities of the defendant hospitals' Emergency Department and ancillary services; and

    h.    otherwise departed from appropriate standards of care as described herein.

85.    Had such an appropriate screening examination been performed, his thoracic aortic aneurysm/dissection that was placing his life, health, body and/or organ function in serious jeopardy would have been discovered and

appropriately treated.

86.     In the alternative, at the time Abraham Strimber presented to Abington Memorial Hospital's Emergency Department on 2/22/2012, he was suffering from an emergency medical condition, *i.e.,* a thoracic aortic aneurysm/dissection, that put his life and health in jeopardy, placed him at risk for a serious impairment of a body function, placed him at risk for the serious dysfunction of a body organ, to wit, his heart/thoracic aorta.

87.     Dr. Fisher and/or Dr. Turner and/or Dr. Rampure and/or the employees, agents, staff, nurses, or other medical providers who cared for Mr. Strimber during his Emergency Department visit at Abington Memorial Hospital on 2/22/2012, failed to stabilize Mr. Strimber and/or to transfer him to another hospital for further appropriate treatment.

88.     In addition, the screening procedure used at Abington Memorial Hospital as of 2/22/2012 for patients complaining of, *inter alia*, chest pain, was not reasonably calculated to identify critical medical conditions.

89.     In the alternative, the screening procedure used at Abington Memorial Hospital as of 2/22/2012 for patients complaining, *inter alia,* of chest pain, was not applied uniformly, *i.e.*, to Mr. Strimber, as to others who present to the Emergency Department with substantially similar complaints/scenarios.

90.     As a result of the foregoing violations of EMTALA by Abington Memorial Hospital, and/or its employees, servants, workmen, agents and/or ostensible agents, Plaintiffs and/or Decedent Abraham Strimber suffered the losses and damages set forth above in detail.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha
Strimber, respectfully demand judgment in their favor, and against Steven B.
Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical
Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or
d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or
Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or
severally, in an amount in excess of $75,000, exclusive of interest and costs.

Respectfully submitted,

By: _____

H. Leon Aussprung, III, M.D., Esquire
James E. Hockenberry, Esquire
*Counsel for Plaintiffs*

# Exhibit B

725605.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY FREEDMAN, et al.                    :        CIVIL ACTION

          v.                                       :

                                :

STEVEN FISHER, M.D., et al.               :        NO. 13-3145

### ORDER

AND NOW, this 6ᵗʰ day of May, 2014, IT IS HEREBY ORDERED that plaintiffs'

motion to amend the complaint (Dkt. 42) is GRANTED. Pursuant to Federal Rule of Civil

Procedure 15, Dr. Ritesh Rampure shall be added as a party defendant[1] and plaintiffs may amend

their complaint to assert a claim under 42 U.S.C. § 1395dd against defendant Abington

Memorial Hospital. The Clerk's Office is directed to file the plaintiffs' proposed amended

complaint, docketed as Exhibit A to plaintiffs' motion to amend (Dkt. 42-2).

In connection with this order, I make the following findings and reach the following

conclusions:

1. Plaintiffs seek to amend their complaint to add a claim against defendant Abington

Memorial Hospital for violation of the Emergency Medical Treatment and Active Labor Act,

("EMTALA"), 42 U.S.C. § 1395dd(a). According to plaintiffs' motion, they first learned of the

existence of a possible EMTALA claim at the deposition of one of the party defendants, Dr.

Margo Turner, on March 18, 2014.

2. At this stage of the case, plaintiffs' complaint may be amended only with the opposing

party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). Leave to amend must

---

[1] Defendants do not oppose the joinder of Dr. Rampure and the amendment of plaintiffs' claims to reflect
his addition to this case. By agreement of the parties, Dr. Rampure will be joined as a defendant as of April 15,
2014. As defendants do not object to Dr. Rampure's joinder, their response to plaintiffs' motion to amend is a
partial opposition and discusses only the additional claim against Abington Hospital.

be freely given when justice so requires. *Id.* Undue delay, bad faith, dilatory motive, prejudice and futility are among the grounds that could justify a denial of leave to amend. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Here, defendants urge me to deny plaintiffs' motion on the basis that such an amendment would be a futility. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* In assessing "futility," I apply the same standard of legal sufficiency as under Rule 12(b)(6). *Id.*

3. EMTALA was enacted based on concerns over "patient dumping"– a practice where hospitals, because of economic constraints, either refused to treat certain emergency room patients or transferred them to other facilities. *See Torretti v. Main Line Hospitals*, 580 F.3d 168, 173 (3d Cir. 2009).

4. The Act contains several requirements, however, and is not limited to a prohibition against refusing to treat individuals with emergency conditions based on insurance coverage. "EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside facilities." *Torretti*, 580 F.3d at 172 (citing 42 U.S.C. § 1395dd(a)-(c)). However, EMTALA does not create a federal cause of action for malpractice. Accordingly, "[l]iability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice, as the statute was aimed at disparate patient treatment." *Id.* at 174 (internal citations omitted).

5. Plaintiffs here contend Abington Hospital violated EMTALA's screening provision when Mr. Strimber entered the hospital's emergency department. *See Pl.'s Mot. to Amend*, Exh. A (*Proposed Am. Compl.* ¶ 84). That provision requires a hospital to "provide for an appropriate

2

medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition [] exists."  42 U.S.C. § 1395dd(a).

6.   The statute does not define "appropriate medical screening."  However, courts in this Circuit have interpreted the statute as requiring hospitals to provide "uniform screening to all those who present substantially similar complaints."  *Blake v. Main Line Hospitals, Inc.*, Civ. No. 12-3456, 2014 WL 1345973, at *3 (E.D. Pa. Apr. 3, 2014); *see also Byrne v. Cleveland Clinic*, 519 Fed. Appx. 739, 742 (3d Cir. 2013) (observing that, under EMTALA, a hospital is free to determine what its screening procedures will be, but it must "apply them alike to all patients").

7.   Under this interpretation of the statute, the allegations in plaintiffs' amended complaint are sufficient to withstand the Rule 12(b)(6) standard for the legal sufficiency of a claim. Plaintiffs have alleged, *inter alia*, that Abington Hospital departed from their standard screening procedures and failed to perform a medical screening examination in accordance with its capabilities when Mr. Strimber presented his complaints to the emergency department.  *See Proposed Am. Compl.* ¶ 84.  Plaintiffs further allege that the hospital's screening procedure for a patient complaining of chest pain was not applied uniformly, as it was not applied to Mr. Strimber.  *Id.* ¶ 89.

8.   It may be that, after further development of the record is completed and evidence is presented concerning Abington Hospital's screening procedures and whether those procedures were used or should have been used for Mr. Strimber, plaintiffs' EMTALA claim will not be able to survive summary judgment.  However, based on the facts presented in the plaintiffs'

proposed amended complaint, I find that amendment to add an EMTALA claim would not be futile and therefore, plaintiffs' motion to amend is granted.

BY THE COURT:

J. WILLIAM DITTER, JR., J.

# Exhibit C

## Emergency Expert Report
## Keith A. Marill, M.D.

I have been asked to review 222 charts from Abington Memorial Hospital covering a four week period of time.  These charts consist of the Emergency Department records of 221 patients other than Mr. Strimber who presented to the Abington Memorial Hospital Emergency Department with a complaint of chest pain.  Specifically, you have asked me to review these charts in the context of whether the care provided to Mr. Strimber on February 22, 2012, demonstrates an inadequate screening evaluation under EMTALA.  As noted in my previous report, I have reviewed all documents provided regarding the care of Mr. Strimber.  In addition to the 221 charts, I have also reviewed a spreadsheet documenting the age, gender, chief complaint, chest x-ray, other chest imaging studies, and final diagnosis of all patients seen in the Abington Memorial Hospital Emergency Department with a chief complaint of chest pain from 2 weeks before to 2 weeks after the date Mr. Strimber presented, February 22, 2012.  This spreadsheet is an accurate summary of the 222 charts.

According to the spreadsheet provided, 222 patients presented to the Abington Memorial Hospital with a triage chief complaint of chest pain during this period.  207 patients (93%) had a chest x-ray ordered, while 15 patients (including Mr. Strimber) did not have a chest x-ray ordered.  With regard to the 14 patients other than Mr. Strimber, the reasons for not obtaining a chest x-ray vary as follows:

1. In 3 cases (MRN #'s 1072603, 1306027, 411351) a CT of the chest was ordered both with and without contrast, which is more sensitive and useful as a diagnostic tool than a plain film chest x-ray and thus a chest x-ray would have been superfluous.

2. In the case of MRN #1278443, the patient was a 42 year old male who was hit in the chest playing soccer and received an x-ray of his ribs in which his heart and lungs were visualized and reported as normal.  A chest x-ray would have therefore been superfluous.

3. In the case of MRN #1161066, a STEMI was immediately diagnosed based upon EKG findings and the ED physician made arrangements for the patient to be taken immediately to the cardiac cath lab for appropriate intervention.  Again, a chest x-ray in this case would have been superfluous because a diagnosis was made before arrival to the ED and a PCI alert was initiated.  A chest x-ray is not indicated in this situation as it delays time critical transfer to the cardiac cath lab.  The patient would subsequently receive cardiac and chest imaging in the cath lab by the cardiologist via fluoroscopy films.

4. In the case of MRN #5052201, a 23 year old male presented with epigastric pain reported to the triage nurse that felt the same as a previous gallbladder attack.  An abdominal ultrasound was performed and showed cholelithiasis (gallstones).  In the case of a 23 year old otherwise healthy individual with a confirmed diagnosis of cholelithiasis and known history of cholelithiasis, a chest x-ray would have been superfluous.

5. In the case of MRN #5053797, an otherwise healthy 48 year old female became "upset, nervous, and emotional" while in the waiting room waiting for the discharge of her daughter.  She had no cardiac history and reported a history of chest discomfort when she gets stressed and worried.  An EKG was normal.  In light of the patient's lack of cardiac history, age, nature of the onset of the symptoms, reports of prior incidents similar to this, a chest x-ray was not warranted.

6. In the case of MRN #753211, a 17 year old female was seen for complaints of chest pain and a history of the flu.  It was noted in the triage notes that she recently had a chest x-ray.  Her primary care physician faxed over a radiology

1

report and office chart notes that showed a chest x-ray from just the day before was normal. In the case of an otherwise healthy 17 year old with a normal chest x-ray from the previous day, a second chest x-ray would have been superfluous and contraindicated due to unnecessary radiation exposure.

7.    In the case of MRN #1038797, a 24 year old female with no prior medical or surgical history and who was otherwise healthy presented to the ED with intermittent chest pain "for years," previously diagnosed as spasms. The patient's chest pain was worse with movement and was "never" associated with shortness of breath or difficulty breathing. In addition, she had no abdominal or back complaints. An EKG was performed which was normal. Under the circumstances of a young, healthy patient with no prior medical history and a normal EKG with reported intermittent chest pain for years, no chest x-ray would be necessary.

8.    In the case of MRN #107228, a 36 year old pregnant female reported chest pain, palpitations, and dizziness. She had diabetes mellitus (type 2) that was uncontrolled. X-rays are relatively contraindicated during pregnancy, and therefore unless absolutely necessary, no chest x-ray should have been performed on this patient. I note that she had 2 EKG's that were normal as well as a normal cardiac troponin. Obstetrical consult felt that the pain was musculoskeletal in nature. Again, in this patient, where a chest x-ray was contraindicated due to pregnancy, a chest x-ray was not indicated, especially in light of her age, lack of any cardiac history, two normal EKG's, and negative Troponin.

9.    In the case of MRN #818403, this 60 year old male patient with a history of MI presented with epigastric pain and nausea. He denied crushing chest pain and stated that it felt exactly like his MI from two years prior. In light of this history and an EKG that showed a right bundle branch block "worse than his previous EKG," he was taken "emergently" to the cardiac cath lab. Similar to MRN #1161066 above, any chest x-ray would have been superfluous when the patient is taken immediately to the cath lab where fluoroscopy (x-ray) films of the chest would be part of the procedure.

10.   In the case of MRN #333116, a 48 year old female presented for left "lung" pain with a recent history of atelectasis and requesting pain medication. She was just discharged from the hospital two days prior with this diagnosis. Drug-seeking behavior was on the differential. She was given a prescription refill and advised that it was not appropriate to use the ED for prescription refills. No orders were entered for this patient. This was a request for pain medication refill from a patient who obviously had had chest imaging in the days prior. Any chest x-ray would have been unwarranted and superfluous.

11.   In the case of MRN #236533, an 87 year old female presented with left rib pain following a fall the night before. She had just been released the day prior from the hospital where she was being treated for chest pain. She reported no "anterior chest pain" and reported "no other chest pain." Her symptoms were reported to be "all pain related to the fall." Plain films of the ribs were ordered which imaged to the patient's shoulder. In this case, where the patient was just released from an inpatient stay where she was being treated for chest pain, where chest imaging was most certainly done, and the pain was directly from a fall assessed with rib films, a chest x-ray was not warranted.

12.   In the case of MRN #1375381, a 51 year old male presented with a 1 week history of left lower quadrant abdominal pain who developed chest pain that morning while drinking a glass of juice. He reported no radiation of the pain, no shortness of breath, no nausea, and no past medical history other than an

2

unspecified orthopedic shoulder problem. He described his chest pain as "burning." His cardiac enzymes were normal and his EKG was unremarkable. His chest pain returned while in the ED and he was therefore admitted for a cardiac stress test. In this case, a chest x-ray would have been appropriate, but was not required, in a patient with no cardiac history, normal EKG, normal enzymes, and no reported risk factors for cardiac etiology.

In reviewing these 14 charts, 5 of the patients had imaging that included the chest (three CT scans and two rib series x-rays). Therefore, excluding Mr. Strimber, 212 or 96% of patients with any complaint of chest pain, even when it was not their primary complaint, received some form of chest imaging. Of the remaining 9 individuals, other than Mr. Strimber, two were taken urgently to the cath lab making a chest x-ray unnecessary and superfluous. Of the 7 remaining, 6 were significantly younger than Mr. Strimber and were otherwise healthy individuals who had no prior cardiac medical history. Moreover, every patient older than 60 received some chest imaging, excluding patients taken directly to the cath lab where fluoroscopy films would have been obtained. Also note that Dr. Fisher was the attending for 8 patients other than Mr. Strimber, whose ages ranged from 13 to 85. 8 out of 8, or 100%, of his patients other than Mr. Strimber received a chest x-ray.

It is my understanding there is no written policy, and I have not seen any policy, of Abington Memorial Hospital regarding the standard screening examination to be given to patients who present to the ED with a complaint of chest pain. The only policy is an order set used by nurses when a physician is not available to see the patient which requires a chest x-ray to be ordered for patients with chest pain. However, based upon my review of the 222 charts provided by Abington spanning a 4 week period of time, it is clear that the standard screening evaluation for patients who present with a triage chief complaint of chest pain at the Abington Memorial Hospital Emergency Department includes a chest x-ray or other chest imaging. Mr. Strimber did not receive the usual level of screening evaluation afforded to other chest pain patients in this ED. Because Mr. Strimber did not receive the same basic screening examination given to similarly situated patients with comparable complaints during this 4 week period of time, Abington Memorial Hospital, to a reasonable degree of medical certainty, violated EMTALA.

The opinion rendered is based on my experience and training as an emergency physician over the past 23 years. During this time I have practiced emergency medicine at multiple high volume, high acuity referral centers that care for patients with similar complaints. I have rendered care to thousands of patients with a chief complaint of chest pain. My opinions are also based on my experience as a clinical investigator who has performed original research on the care of patients with chest pain and related complaints and diagnoses. The opinion is based on the totality of information provided. I have no specific legal training or legal expertise in the field of emergency medicine, or otherwise. I reserve the right to amend this opinion based on any additional information that may become available.

Keith A. Marill, M.D.

# Exhibit D

725605.1

| Abington Memorial Hospital | Department Manual: EMERGENCY TRAUMA CENTER | Policy Number: ETC 3-68 |
|---|---|---|
| Title: PROTOCOL ORDERS | Category: Patient Care | Original Date: 4/85 |
| Policy Owner: ETC Director | Keywords: [Type Here] | Last Review Date: 6/04 |
| Referenced With: [Type Here] | Review Cycle: Annual | Last Revision Date: 6/09 |

I. **PURPOSE:**   To ensure safe, timely care to patients in the Emergency Trauma Center by implementing clinically indicated diagnostic studies based upon patient's presentation.

II. **POLICY:**

    A.    The ETC Professional staff may initiate specific diagnostic studies utilizing protocol orders.  The protocol orders will be clearly defined and available as protocol order sets in the ED PulseCheck system.

III. **PROCEDURE:**

    A.    The ETC professional staff will receive an orientation to the approved protocol ordering process.

    B.    Protocol orders will be initiated when there are two or more charts in the physician's line-up or upon physician request.

    C.    Approved protocol orders are as follows:

        1.  Chest pain
        2.  Abdominal pain
        3.  Neurological complaints
        4.  Distal extremity injury
        5.  Pregnancy/vaginal bleeding

PP618.00

April 1985

Reviewed April 1986, Reviewed May 1987

Revised February 1988

Reviewed February 1989, Reviewed May 1991, Reviewed June 1993

Revised January 1994, Revised May 1994

Reviewed 8/95, 3/96, 5/97

Revised April 1999

Reviewed 2/00

Revised 2002

Protocol Orders.04

Revised 9/03, 6/04, 4/09, 6/09

# Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY B. FREEDMAN, ESQUIRE,     :
Administrator of the ESTATE OF ABRAHAM   :
STRIMBER, Deceased     :
    and     :      No. 2:13-cv-03145-CDJ
BRACHA STRIMBER     :
    :
    v.     :
    :
STEVEN FISHER, M.D.,     :
MARGO TURNER, M.D.,     :
KRISTINA A. MARTINEZ, CRNP,     :
MANOJ R. MUTTREJA, M.D.,     :
ABINGTON MEDICAL SPECIALISTS     :
ASSOCIATION, P.C., D/B/A ABINGTON     :
MEDICAL SPECIALISTS AND D/B/A AMS   :
CARDIOLOGY,     :
ABINGTON EMERGENCY PHYSICIAN     :
ASSOCIATES AND     :
ABINGTON MEMORIAL HOSPITAL     :

## DEFENDANT, ABINGTON MEMORIAL HOSPITAL'S, RESPONSES TO
## PLAINTIFFS' FIRST SUPPLEMENTAL REQUEST FOR PRODUCTION OF
## <u>DOCUMENTS</u>

    1.      Objection.  This Request is objected to as overly broad, vague and unreasonably

burdensome.  This Request is further objected to as seeking information which is not material or

relevant and is not reasonably calculated to lead to the discovery of material or relevant

information or evidence which will be admissible at the time of trial.  Subject to and without

waiver of the foregoing objections, see attached Abington Memorial Hospital policy titled

"Myocardial Infarction – Primary Percutaneous Coronary Intervention for Acute ST Segment

Elevation/New Left Bundle Branch Block Myocardial Infarction."  Answering defendant is

attempting to identify the "Chest pain protocol orders" which was in effect on the relevant date and the response to this request for production will be supplemented.

2.      Objection.  This Request is objected to as overly broad, vague and unreasonably burdensome.  This Request is further objected to as seeking information which is not material or relevant and is not reasonably calculated to lead to the discovery of material or relevant information or evidence which will be admissible at the time of trial.  Subject to and without waiver of the foregoing objections, see attached Abington Memorial Hospital policy titled "Myocardial Infarction – Primary Percutaneous Coronary Intervention for Acute ST Segment Elevation/New Left Bundle Branch Block Myocardial Infarction."  See, also, the attached Abington Memorial Hospital policies titled, "Assessment Emergency Trauma Center Patients," "Protocol Orders," and "Patient/Family Educational Information."

3.      See attached Collaborative Agreement pertaining to Kristina Martinez, CRNP for the relevant time period.

CHRISTIE, PABARUE & YOUNG,
A Professional Corporation

BY: _____
HEATHER A. TERESHKO, ESQ.
Attorney for Defendants, Margo Turner, M.D., Kristina A.
Martinez, CRNP, and Abington Memorial Hospital

Dated: 3/14/04

2

865544.1