# Exhibit M

Page 1

```
1                UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2                    -  -  -
3   GARY B. FREEDMAN, ESQUIRE, :
    Administrator of the ESTATE:
4   OF ABRAHAM STRIMBER,         :
    deceased                     :
5                                :
            and                  :
6                                :
    BRACHA STRIMBER              :
7                                :
            Plaintiffs,          :
8                                :No. 2:13-cv-3145-CDJ
            vs.                  :
9                                :
    STEVEN FISHER, ET AL.,       :
10                               :
            Defendant .         :
11

12                    -  -  -

13         Monday, March 31, 2014

14                    -  -  -

15          Oral deposition of LYNNE STEBULIS, taken
16   at Abington Hospital, 1200 Old York Road, Rorer
17   Conference Room 4, Abington, Pennsylvania,
18   commencing at 10:14 a.m., before Theresa F.
19   Franco, a Court Reporter and Notary Public.
20

21

22

23

24       VERITEXT NATIONAL COURT REPORTING COMPANY
                 MID-ATLANTIC REGION
25          1801 Market Street, Suite 1800
                Philadelphia, PA 19103
```

1                     LYNNE STEBULIS

2          A.      Yes.

3          Q.      -- there's a heading that says,

4    Complaint; what does that say?

5          A.      Chest pain.

6          Q.      And immediately under the heading

7    Complaint, it says Assessment, true?

8          A.      Correct.

9          Q.      What does it say about chest pain

10   under the heading of Assessment?

11         A.      "Patient denies chest pain."

12         Q.      Do you have experience, by the way,

13   do you do triage occasionally?

14         A.      Occasionally.

15         Q.      Are there times when patients

16   complain of triage -- I'm sorry, complain of

17   chest pain at triage, and then a few minutes

18   later when they're seen, they deny chest pain?

19         A.      Yes.

20         Q.      That assessment, "denies chest

21   pain," is that actually written by the triage

22   nurse?

23         A.      Yes.

24         Q.      And is it written -- according to

25   the timing of these notes, it's actually

Page 56

1                      LYNNE STEBULIS

2  written at the same time or immediately after a

3  complaint of chest pain, right?

4          A.      Yes.

5          Q.      Is that triage assessment of

6  "denies chest pain" consistent with your

7  nursing assessment?

8          A.      Yes.

9          Q.      Can you go -- do you have your

10  nursing assessment in front of you?

11          A.      Yes.

12          Q.      Under the heading of

13  Respiratory/Chest, you wrote, "No complaint of

14  pain."  And my question is, where did you get

15  the information in order for you to document

16  under the heading Respiratory/Chest, "no

17  complaint of pain?"

18          A.      I asked.

19          Q.      What type of question do you ask in

20  order to get that answer?

21          A.      Do you have any chest pain.

22          Q.      The timing of that note, by the

23  way, is what time, 12:08?

24          A.      Yes.

25          Q.      Had, up until 12:08, Mr. Strimber

# Exhibit N

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

GARY B. FREEDMAN,                :
ESQUIRE, Administrator : NO.
of the ESTATE OF         : 2:13-cv-3145-CDJ
ABRAHAM STRIMBER,        :
deceased                 :
and                      :
BRACHA STRIMBER,         :
                         :
          Plaintiffs,    :
                         :
          v.             :
                         :
STEVEN FISHER, M.D.,     :
et al.,                  :
                         :
          Defendants.    :

- - -

Tuesday, March 18, 2014

- - -

          Videotape deposition of
MARGO E. TURNER, M.D., taken pursuant to
notice, was held at the law offices of
Christie, Pabarue & Young, 1880 JFK
Boulevard, 10th Floor, Philadelphia,
Pennsylvania, commencing at 10:40 a.m.,
on the above date, before Amy M. Murphy,
a Professional Court Reporter and Notary
Public there being present.

- - -

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com

MAGNA LEGAL SERVICES



Page 34

1  had eaten in the hours prior to that,
2  what evaluation had been done in the ER
3  to evaluate those symptoms and what the
4  reason for admission would be.
5      Q.   Did Dr. Fisher, in that
6  initial conversation, mention to you that
7  Mr. Strimber had an artificial heart
8  valve?
9      A.   He did.
10     Q.   Did he mention -- did Dr.
11 Fisher mention to you anything about pain
12 in the chest?
13     A.   He did not.
14     Q.   Did Dr. Fisher mention to
15 you anything about pain that went through
16 to the patient's back?
17     A.   We talked about his
18 abdominal pain, nausea, vomiting, and
19 diarrhea. That's what I recall.
20     Q.   Do you have any recollection
21 of how the abdominal pain was described
22 to you?
23     A.   I do not.
24     Q.   So you don't know whether it

Page 35

1  was described as going through to the
2  back or not?
3      A.   I don't.
4      Q.   Did you discuss Mr.
5  Strimber's EKG in that initial
6  conversation?
7      A.   Yes.
8      Q.   So it had been done by then?
9      A.   Yes.
10     Q.   Had Mr. Strimber's -- did
11 you discuss Mr. Strimber's CAT scan
12 results?
13     A.   We did.
14     Q.   So you believe the CAT scan
15 was completed before you first came to
16 the emergency department?
17     A.   Yes.
18     Q.   That helps give us a little
19 bit of a timeline.
20         It looks like the CAT scan
21 report is at least timed around 1:30 or
22 so.
23         Anything else about that
24 conversation with Dr. Fisher that you

Page 36

1  remember?
2      A.   No.
3      Q.   Was the next thing you did
4  go and see the patient?
5      A.   Yes.
6      Q.   Where was the patient
7  located?
8      A.   In one of the holding areas,
9  one of the rooms in the ER.
10     Q.   Was it a room?
11     A.   They're like partitioned
12 cubicles.
13     Q.   And what do you recall from
14 that initial interaction with Abraham
15 Strimber?
16     A.   I remember Mr. Strimber was
17 sitting there. I interviewed Mr.
18 Strimber initially to just evaluate what
19 symptoms presented him to the hospital
20 for admission. I conducted a physical
21 examination. I left, reviewed the data
22 then that I had, and I returned back to
23 him to describe to him the plan of action
24 of what was going to happen subsequent to

Page 37

1  the admission.
2      Q.   One of the things you did
3  was you took -- you did a history and
4  physical?
5      A.   That's correct.
6      Q.   You did it in the emergency
7  department?
8      A.   Yes.
9      Q.   So as part of that history,
10 you, again, confirmed that he had an
11 artificial heart valve?
12     A.   Yes.
13     Q.   And as part of the history,
14 did you get a description of his pain?
15     A.   Yes.
16     Q.   And what do you recall --
17 and we'll look at the note in a minute,
18 but what do you recall of that
19 description?
20     A.   I remember there was
21 abdominal pain, feeling like something
22 exploded in his abdomen and just went up
23 to the top of his head, and that he had
24 eaten a series of things that are listed



MAGNA
LEGAL SERVICES

Page 38

1    in the medical record earlier that day.
2    He had one episode of diarrhea earlier
3    and had an episode of vomiting in the ER.
4    When I saw him, the abdominal pain had
5    subsided.
6         Q.   So, the abdominal pain was
7    no longer present when you saw him?
8         A.   That's correct.
9         Q.   You said something in his
10   abdomen that went up, and I think you
11   just said to the top of his head?
12        A.   He -- in the medical record,
13   my description in the history of present
14   illness will be a description of how he
15   described that abdominal pain to me.  If
16   we can refer to that, the details of it,
17   I'd be more clear about it.
18        Q.   Did you understand that his
19   pain was limited to his abdomen or that
20   it went up through his chest to his head?
21        A.   My understanding was that he
22   felt something like -- I think he
23   described it as a vibrating sensation in
24   his abdomen.  Again, if I could refer to

Page 39

1    that I could tell you exactly.  What I
2    wrote in that history of present illness
3    will reflect what his words were which is
4    then how I interpreted those things.
5         Q.   I'm just trying to figure
6    out what you recall from your memory.
7         A.   I understand.
8         Q.   All right.  Do you remember
9    anything else in the history that he told
10   you?
11        A.   I noted that there had been
12   a complaint of chest pain given to the
13   triage nurse.  So, I asked if he was
14   experiencing chest pain at the time that
15   I saw him.
16        Q.   And was he?
17        A.   He was not.
18        Q.   And in fact, he wasn't even
19   experiencing abdominal pain when you saw
20   him?
21        A.   That's correct.
22        Q.   Had he received any
23   analgesics in the emergency department
24   before you saw him?

Page 40

1         A.   I believe he had received
2    morphine before I saw him.
3         Q.   What do you remember of your
4    physical examination, if anything?
5         A.   I remember my physical
6    examination to reveal to be within normal
7    limits and not to reveal any
8    abnormalities on the examination.
9         Q.   Did you palpate his abdomen?
10        A.   I did.
11        Q.   Did you specifically feel
12   for aortic pulsations?
13        A.   I did.
14        Q.   Did you detect them?
15        A.   I did not.
16        Q.   Are you aware that there was
17   a note in the emergency department record
18   that they found he did have unusual
19   aortic pulsations?
20        A.   I saw that note.
21        Q.   What did you understand that
22   to mean?
23        A.   I thought that that was
24   probably directing attention to whether

Page 41

1    there was an aneurism present.
2         Q.   But on your exam you did not
3    have that same finding?
4         A.   I did not.
5             MR. AUSSPRUNG:  I'm going to
6    mark as Exhibit-4 a big packet of
7    papers, I think it's 12 pages
8    long, which is the emergency
9    department record, because I
10   believe Dr. Turner has some orders
11   and things in it.
12            THE WITNESS:  Yes.
13                - - -
14            (Whereupon, Exhibit Turner-4
15   was marked for identification.)
16                - - -
17   BY MR. AUSSPRUNG:
18        Q.   Now, Dr. Turner, the first
19   place -- which might not be totally
20   accurate -- that I saw anything was on
21   the third page of this document under the
22   orders.
23        A.   Yes.
24        Q.   I want to start in the

# Exhibit O

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

— — —

GARY B. FREEDMAN,          :
ESQUIRE, Administrator     :
of the ESTATE OF           : NO.
ABRAHAM STRIMBER,          : 2:13-cv-3145-CDJ
deceased                   :
and                        :
BRACHA STRIMBER,           :
                           :
          Plaintiffs,      :
                           :
          v.               :
                           :
STEVEN FISHER, M.D.,       :
et al.,                    :
                           :
          Defendants.      :

— — —

Friday, March 28, 2014

— — —

        Videotape deposition of
MANOJ R. MUTTREJA, M.D., taken pursuant
to notice, was held at the law offices of
German, Gallagher & Murtagh, The
Bellevue, 200 S. Broad Street, 5th Floor,
Philadelphia, Pennsylvania, commencing at
10:50 a.m., on the above date, before Amy
M. Murphy, a Professional Court Reporter
and Notary Public there being present.

— — —

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com

MAGNA LEGAL SERVICES



Page 34

```
 1          statement that was made by him at

 2          his deposition in another case; is

 3          that the question?

 4   BY MR. AUSSPRUNG:

 5          Q.     Do you agree that a physical

 6   exam cannot determine whether or not

 7   somebody is having chest pain?

 8          A.     Yes.

 9          Q.     Do you agree that chest pain

10   is subjective information?

11          A.     Yes.

12          Q.     So, the patient presented

13   with chest pain; correct?

14          A.     The initial triage from the

15   ER said chest pain.

16          Q.     Do you have any reason to

17   believe that the patient did not present

18   with chest pain?

19          A.     In every assessment that was

20   made after that the patient denied chest

21   pain.  And the assessment that was made

22   by nursing right after that said he did

23   not have chest pain.  And when I spoke

24   with him, he did not describe any chest
```



Page 35

```
 1   pain to me.

 2          Q.     Thank you, but that wasn't

 3   what my question was.

 4                 MR. AUSSPRUNG:   Can you read

 5          back my question?

 6                      -   -   -

 7          (Whereupon, the pertinent

 8          portion of the record was read.)

 9                      -   -   -

10   BY MR. AUSSPRUNG:

11          Q.     My question was that the

12   patient did not present with chest pain.

13   Do you have any reason to believe that?

14                 MR. SHUSTED:   Objection.  He

15          answered your question but you can

16          answer that question that he just

17          posed to you.

18                 THE WITNESS:   The history

19          that was listed in the chart did

20          not mention any chest pain that he

21          had.

22   BY MR. AUSSPRUNG:

23          Q.     What was the final diagnosis

24   of the emergency department; do you know?
```



# Exhibit P

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY B. FREEDMAN, ESQUIRE,     :
Administrator of the ESTATE OF ABRAHAM  :
STRIMBER, Deceased     :
     and     :     No. 2:13-cv-03145-CDJ
BRACHA STRIMBER     :
     :
     v.     :
     :
STEVEN FISHER, M.D.,     :
MARGO TURNER, M.D.,     :
KRISTINA A. MARTINEZ, CRNP,     :
MANOJ R. MUTTREJA, M.D.,     :
ABINGTON MEDICAL SPECIALISTS     :
ASSOCIATION, P.C., D/B/A ABINGTON     :
MEDICAL SPECIALISTS AND D/B/A AMS     :
CARDIOLOGY,     :
ABINGTON EMERGENCY PHYSICIAN     :
ASSOCIATES AND     :
ABINGTON MEMORIAL HOSPITAL     :

## **AFFIDAVIT OF RITESH J. RAMPURE, M.D.**

I, Ritesh J. Rampure, M.D., being duly sworn, depose and state the following:

1.    I was the attending physician for the Department of Medicine Green Service on February 22, 2012 at Abington Memorial Hospital at or around the time that Abraham Strimber was admitted for observation.

2.    On February 22, 2012, I was an employee of Abington Memorial Hospital, and I remain an employee of Abington Memorial Hospital as of the making of this Affidavit.

3.    To the best of my knowledge, I was not physically present in the hospital when the patient was admitted for observation by Dr. Margo Turner, who was providing coverage services for the Department of Medicine Green Service.

4.      I did not examine, treat, consult, or see Abraham Strimber prior to his death on February 22, 2012.

5.      I have no recollection of the substance of any conversation with any defendant in this case, including Dr. Margo Turner, Dr. Steven Fisher, and Dr. Manoj Muttreja.

6.      To the best of my knowledge, I made no recommendations and offered no opinions to any other physician regarding the care of Abraham Strimber on February 22, 2012.

7.      Based upon my review of the medical records as well as my review of my schedule for February 22, 2012, I had no involvement in the care or treatment of Abraham Strimber after he was admitted to Abington Memorial Hospital for observation on February 22, 2012.

8.      Based on my review of the Abington medical chart, I wrote no progress notes nor did I make any other entries in the patient's chart.

9.      This affidavit is made to the best of my knowledge, information and belief.

_____
RITESH J. RAMPURE, M.D.


SWORN AND SUBSCRIBED
BEFORE ME THIS 19ᵗʰ DAY
OF FEBRUARY, 2014

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LaTOYA ANN RICHIE, Notary Public
Abington Twp., Montgomery County
My Commission Expires October 9, 2016

2

# Exhibit Q

**ROVNER, ALLEN, ROVNER, ZIMMERMAN & NASH**
By:    Joseph S. Lukomski, Esquire
I.D. No.: 28532
James E. Hockenberry, Esquire
I.D. No.: 91133                                    *Counsel for Plaintiffs*
175 Buslteton Pike
Feasterville, PA 19053
215-953-2730, ext. 2311
hockenj@dial-law.com

_____

GARY B. FREEDMAN, ESQUIRE,          )
Administrator of the ESTATE OF      )    **UNITED STATES DISTRICT COURT**
ABRAHAM STRIMBER, deceased               **EASTERN DISTRICT OF**
Freedman & Grinshpun, P.C.          )    **PENNSYLVANIA**
7909 Bustleton Avenue
Philadelphia, PA 19152              )    No.:

and                                 )

BRACHA STRIMBER                     )
3117 Northbrook Road
Pikesville, MD 21208                )

Plaintiffs,                         )

                 v.                 )

STEVEN FISHER, M.D.                 )
c/o Abington Emergency Physician
Associates                          )
AMH Emergency Trauma Center
1200 Old York Road                  )
Abington, PA 19001
                                    )
and                                 )

MARGO TURNER, M.D.                  )
c/o Abington Memorial Hospital
1200 Old York Road                  )
Abington, PA 19001

and                                 )

ASHISH H. JANI, M.D.                )
c/o Abington Memorial Hospital
1200 Old York Road                  )
Abington, PA 19001

and                                              )

KRISTINA A. MARTINEZ, CRNP                       )
c/o Abington Memorial Hospital
1200 Old York Road                               )
Abington, PA 19001
                                                 )
and                                              )

                                                 )
BHUVIN M. BUDDHDEV, M.D.                          )
c/o Abington Memorial Hospital
1200 Old York Road                               )
Abington, PA 19001
                                                 )
and                                              )

EUN KYUNG KOH, M.D.                               )
c/o Abington Memorial Hospital
1200 Old York Road                               )
Abington, PA 19001
                                                 )
and                                              )

                                                 )
MANOJ R. MUTTREJA, M.D.                           )
c/o Abington Medical Specialists
Association, P.C., d/b/a Abington                 )
Medical Specialists and d/b/a                    )
AMS Cardiology
1235 Old York Road                               )
Levy Medical Plaza, Suite 222
Abington, PA 19001                                )

and                                              )

ABINGTON MEDICAL SPECIALISTS )
ASSOCIATION, P.C., d/b/a
ABINGTON MEDICAL                                 )
SPECIALISTS, and d/b/a AMS
CARDIOLOGY                                       )
1235 Old York Road
Levy Medical Plaza, Suite 222                    )
Abington, PA 19001
                                                 )
and

                                                 )

ABINGTON EMERGENCY
PHYSICIAN ASSOCIATES            )
c/o AMH Emergency Trauma
Center                          )
1200 Old York Road
Abington, PA 19001              )

and                             )

ABINGTON MEMORIAL HOSPITAL      )
1200 Old York Road
Abington, PA 19001              )

Defendants.                     )

---

## PLAINTIFFS' CIVIL ACTION COMPLAINT

I.    INTRODUCTION

      1.    This case involves medical negligence that occurred on 2/22/2012

while Abraham Strimber, (hereafter "Decedent"), was a patient at Abington

Memorial Hospital in the Emergency Department and after being admitted to the

Internal Medicine service.   On that date, the licensed professionals involved in

Decedent's care failed to diagnose and treat Decedent properly and within the

standards of care required of them, leading to Decedents' death as a result of a

ruptured ascending aortic aneurysm on that same date.   Plaintiffs bring this

action pursuant to their authority as personal representatives of the Estate of

Abraham Strimber pursuant 20 Pa.C.S.A §3373 and 42 Pa.C.S.A. §8302.

Plaintiff Bracha Strimber, as the surviving spouse of Abraham Strimber, also

brings this action individually.

II.   JURISDICTION AND VENUE

      2.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332,

as the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different states as plaintiff, Bracha Strimber, Decedent's surviving spouse, is a resident of the state of Maryland.   In addition, Plaintiff, Gary B. Freedman, Esquire, the Administrator of Decedent's estate, is deemed a citizen of Maryland for the purposes of diversity jurisdiction pursuant to 28 U.S.C. §1332(c)(2), as the Decedent was a citizen of Maryland at the time of his death on 2/22/2012.

3.    Venue in the Eastern District of Pennsylvania is proper as at least one (1) of the defendants resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

III.   PARTIES

4.    Plaintiff, Gary B. Freedman, Esquire, is an attorney licensed to practice law in the Commonwealth of Pennsylvania and is the personal representative/Administrator of the Estate of Abraham Strimber, pursuant to Letters of Administration issued by the Register of Wills for Philadelphia County on 11/14/2012, with an address of 7909 Bustleton Avenue, Philadelphia, Pennsylvania.

5.    Plaintiff, Bracha Strimber, is an adult individual and the surviving spouse of the Decedent, Abraham Strimber, residing at 3117 Northbrook Road, Pikesville, Maryland.

6.    Defendant, Steven Fisher, M.D., (hereafter "Dr. Fisher"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in emergency medicine, and has a principal place of business at c/o Abington Emergency Physicians Associates, AMH Trauma Center, 1200 Old York Road, Abington,

Pennsylvania.   At all times material and relevant hereto, Dr. Fisher was the

employee and/or agent and/or ostensible agent and/or apparent agent of each

of the other defendants in this matter, and his negligent acts and/or omissions

are imputed to said defendants.   Plaintiff is asserting a professional liability

claim against this defendant.

    7.     Defendant, Margot Turner, M.D., (hereafter "Dr. Turner"), is an

adult individual and licensed physician, who at the time of the alleged negligence

on 2/22/2012, set forth more fully herein, purported to specialize in Internal

Medicine, and has a principal place of business at c/o Abington Memorial

Hospital, 1200 Old York Road, Abington, Pennsylvania.   At all times material

and relevant hereto, Dr. Turner was the employee and/or agent and/or

ostensible agent and/or apparent agent of each of the other defendants in this

matter, and his negligent acts and/or omissions are imputed to said defendants.

Plaintiff is asserting a professional liability claim against this defendant.

    8.     Defendant, Ashish H. Jani, M.D., (hereafter "Dr. Jani"), is an adult

individual and at the time of the alleged negligence on 2/22/12 was a licensed

physician as a "Graduate Medical Trainee" with a principal place of business at

c/o Abington Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania.

At all times material and relevant hereto, Dr. Jani was the employee and/or

agent and/or ostensible agent and/or apparent agent of each of the other

defendants in this matter, and his negligent acts and/or omissions are imputed

to said defendants.   Plaintiff is asserting a professional liability claim against

this defendant.

9.     Defendant Kristina A. Martinez, CRNP, (hereafter "NP Martinez"), is an adult individual and certified registered nurse practitioner, with a principal place of business at c/o Abington Memorial Hospital- Department of Medicine, 1200 Old York Road, Abington, Pennsylvania.     At all times material and relevant hereto, NP Martinez was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

10.     Defendant Bhuvin M. Buddhdev, M.D., (hereafter "Dr. Buddhdev"), is an adult individual and licensed physician as "Graduate Medical Trainee" with a principal place of business at c/o Abington Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania.     At all times material and relevant hereto, Dr. Buddhdev was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

11.     Defendant Eun Kyung Koh, M.D., (hereafter "Dr. Koh"), is an adult individual and licensed physician as "Graduate Medical Trainee" with a principal place of business at c/o Abington Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania.     At all times material and relevant hereto, Dr. Koh was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

12.    Defendant Manoj R. Muttreja, M.D., (hereafter "Dr. Muttreja"), is an adult individual and licensed physician who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in Cardiology, and has a principal place of business at c/o Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists and d/b/a AMS Cardiology, 1235 Old York Road, Levy Medical Plaza, Suite 222, Abington, Pennsylvania.   At all times material and relevant hereto, Dr. Muttreja was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

13.    Defendant Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, (hereafter "AMS"), is a corporation, fictitious name, or other similar entity, organized and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and related services to the general public, and at all times material and relevant hereto maintained a principle place of business at 1235 Old York Road, Levy Medical Plaza, Suite 222, Abington, Pennsylvania.   At all times material and relevant hereto said defendant acted through its agents, ostensible agents, servants, workmen, and/or employees, specifically including Dr. Muttreja, each of whose negligent acts and/or omissions are imputed to AMS.   Plaintiff is asserting a professional liability claim against this defendant.

14.    Defendant Abington Emergency Physicians Associates is a corporation, fictitious name, or other similar entity, organized and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and related services to the general public, and at all times material and relevant hereto maintained a principle place of business at c/o AMH Trauma Center, 1200 Old York Road, Abington, Pennsylvania.   At all times material and relevant hereto said defendant acted through its agents, ostensible agents, servants, workmen, and/or employees, specifically including Dr. Fisher, whose negligent acts and/or omissions are imputed to AMS. Plaintiff is asserting a professional liability claim against this defendant.

15.    Defendant Abington Memorial Hospital, (hereafter "AMH"), is, upon information and belief, a corporation, or other entity, organized and/or existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the business of providing healthcare and related services to the general public, and at all times material and relevant hereto maintained a principle place of business at 1200 Old York Road, Abington,   Pennsylvania.   At all times material and relevant hereto, AMH acted through its agents, apparent agents, ostensible agents, servants, workmen, and/or employees, specifically including each defendant named herein, all of whose negligent acts and/or omissions are imputed to AMH.   Plaintiff is asserting a professional liability claim against this defendant.

IV.   ALLEGATIONS

16.    The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

17.     Decedent, Abraham Strimber, a 61 year old male, presented to the Abington Memorial Hospital Emergency Room at 11:42 a.m. on 2/22/2012 with multiple complaints, including the abrupt onset, after loading his car, of the sensation that he had a lid of a paint can that began in his epigastrum and slammed up into his jaw and then came down and continues to compress on his abdomen.

18.     The assessment performed by triage nurse Lori Ischinger, RN, at 11:45 a.m. stated that Decedent "here w/ c/o legs vibrating and and feels like is going to explode."   Nurse Ischinger is an agent of all defendants.

20.     Nurses Lynne Stelaris, R.N. and Perry Benedict, R.N. also provided emergency department triage and/or care to Decedent and they were agents of all defendants.

21.     Decedent reported his past medical history as significant for hypertension and mitral and aortic valve replacement.

22.     Cardiac valve replacement is a risk factor for an aortic aneurysm.

23.     The emergency department nursing assessment noted:

  a.     "[patient] states he was walking up the driveway after loading things in the car felt 'a rising metallic feeling like someone put a pain can in my stomachs and the lid was rising up into my throat'.   Wife states became pale and clammy.   Denies syncope. [Patient] had 2 episodes of diarrhea and + nausea. C/o abd distention and pain radiating to back."

  b.     "Patient denies chest pain"

      c.     "Abdominal pain is diffuse, Pain radiates to back, Abdomen

         is distended";

24.    Upon physical examination, Dr. Fisher noted the following

findings:

      a.     systolic click;

      b.     epigastric tenderness; and,

      c.     aortic pulsation;

25.    Additionally, Dr. Fisher noted that "[t]he exact precipitant of the

Patient's pain remained unclear.   I was worried based upon his examination

that he could have a AAA.   This did not appear to be the case.   The patient did

not receive IV contrast as he has a significant allergy to IV dye.   Ultimately, the

patient was admitted given our uncertainty as to the patient's pain.   He was

clearly uncomfortable.   The patient's case was discussed at length with the

hospitalist who admitted the patient."

26.    Upon information and belief, the hospitalist who discussed the

patient's case was an agent of Defendants.

27.    Dr. Turner performed a History & Physical at approximately 4:09

p.m. on 2/22/12 while Decedent was in the emergency department, and noted

the following:

      a.     "Chief Complaint: chest/epigastric/back pain, n/v/d"

      b.     that Decedent takes Warfarin at home in doses ranging from

         5 to 7.5 mg daily dependent upon INR results, which

         increases the likelihood and severity of bleeding;

      c.     Lab results noting PTT of 40 and INR of 2.8

    d.    CT scan of abdomen and pelvis showed no *abdominal* aortic

aneurysm or any evidence of dissection; and,

    e.    that Decedent had a history of valve replacement surgery;

28.    No thoracic CT scan was ever ordered or completed for Decedent.

29.    Warfarin is a blood thinning medication that worsens bleeding and the likelihood to bleed.

30.    At approximately 6:30 p.m., following Decedent's admission to the internal medicine service, he was seen and examined by Dr. Muttreja, a cardiologist.

31.    Dr. Muttreja's *Consultation Report* notes that the "Reason for Consult" as "back pain h/o AVR."

32.    Dr. Muttreja further noted that Decedent was admitted with "back pain epigastric pain" and that Decedent complained of "N/V + back pain."

33.    Dr. Muttreja's assessment stated that Decedent was "stable" regarding his cardiovascular issues" and that doubts acute coronary syndrome based upon cardiac markers and EKG, but recommended an echocardiogram.

34.    At approximately 8:31 p.m. on the evening of 2/22/2012, NP Martinez was notified by the telemetry nurse of a "change in condition" of Decedent, specifically of a heart rate of 49 and ST changes.

35.    NP Martinez rendered care and treatment to Decedent as follows:

    a.    ordering sublingual Nitroglycerin at 8:40 p.m.

    b.    ordering aspirin at 9:01 p.m.

    c.    ordering Decadron (Dexamethasone ) at 9:01 p.m.

    d.    ordering Leukoreduced Packed Red Blood Cells at 9:01 p.m.

     e.     an EKG, nitroglycerin, SL & cardiac enzymes later that evening.

36.     At approximately 9:34 p.m. Decedent was taken to the Cardiac Catheterization Lab for urgent catheterization.

37.     Dr. Watson arrived to perform the catheterization procedure at approximately 9:38 p.m.

38.     Dr. Watson found no obstructive coronary artery disease, however concluded that Decedent suffered "[c]ardiogenic shock due to ruptured ascending aortic aneurysm with fistula to Right atrium/pericardium presumably" and "[p]ossible acute pericardial tamponade," and that the patient expired.

39.     Decedent's ascending aortic aneurysm was located in his thorax.

40.     Dr. Watson spoke with Dr. Garrido, a cardothoracic surgeon following his findings, but noted that "it was futile to attempt to open this thorax."

41.     Following efforts at cardiopulmonary resuscitation, the patient was pronounced dead at 10:49 p.m.

42.     Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Turner, Dr. Jani, Dr. Koh, NP Martinez, and Dr. Buddhdev, each of whom had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

43.     At all times while Decedent was under the care of each and every defendant he was suffering from a thoracic aortic aneurysm and/or dissection.

44.     None of the defendants ordered, completed and/or performed a thoracic CT scan, chest x-ray, thoracic ultrasound, thoracic MRI, trans-esophogeal echocardiogram, or trans-thoracic echocardiogram upon Decedent nor did they timely diagnose an aortic aneurysm.

## COUNT I - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. STEVEN FISHER, M.D.

45.     Paragraphs one (1) through forty-four (44) are incorporated by reference hereat as if set forth at length.

46.     At all time material and relevant hereto, defendant, Dr. Fisher, the agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Emergency Physicians Associates and/or Abington Memorial Hospital, failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and this negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

    a.     failing to properly diagnose Decedent;

    b.     failing to timely diagnose Decedent;

    c.     failing to properly treat Decedent;

    d.     failing to timely treat Decedent;

    e.     failing to timely diagnose an aortic aneurysm and/or dissection;

    f.     failing to timely treat an aortic aneurysm and/or dissection;

    g.     failing to timely order and obtain a surgical consultation;

    h.     failing to timely surgically treat an aortic aneurysm and/or dissection;

i.     failing to timely medically treat an aortic aneurysm and/or dissection;

j.     failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k.     failing to properly appreciate Decedent's risks and complaints as potentially related to an aortic aneurysm and/or dissection;

l.     failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.     failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.     failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.     failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.     failing to order and obtain cardiothoracic surgical consult;

q.     failing to order and obtain a consult by a cardiologist;

r.     failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.     failing to order and obtain an ultrasound;

t.     failing to order and obtain a chest x-ray;

u.     failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.      failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.      failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

47.     The careless and negligent acts and/or omissions of Dr. Fisher, which acts and/or omissions are imputed to Abington Emergency Physicians Associates and/or Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's suffering the following injuries and damages:

a.      death;

b.      pain and suffering;

c.      past mental anguish;

d.      cardiac tamponade;

e.      loss of ability to enjoy the pleasures of life;

f.      financial loss, general expenses, funeral expenses, and bills;

g.      the loss of the Decedent's companionship, guidance, nurture, and tutelage;

h.      as a result of the death of Abraham Strimber, his estate has been deprived of the economic value of his life expectancy, and Plaintiffs herein claim damages for said pecuniary loss; and,

     f.     such other valuables and damages as are appropriately

allowed by Pennsylvania law under the Wrongful Death and

Survival statutes, respectively, 42 Pa.C.S.A. §§8301, 8302.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha

Strimber, respectfully demand judgment in their favor, and against Steven B.

Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez,

CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja,

M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical

Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians

Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an

amount in excess of $75,000, exclusive of interest and costs.

## COUNT II - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF
### ABRAHAM STRIMBER AND BRACHA STRIMBER V. MARGO TURNER, M.D.

48.    Paragraphs one (1) through forty-seven (47) above are incorporated

by reference hereat as if set forth at length.

49.    Following Decedent's admission to the Internal Medicine service at

Abington Memorial Hospital, he was examined and/or treated by Dr. Turner,

who had access to Decedent's hospital chart that was created upon arrival in the

Abington Memorial Hospital Emergency Department.

50.    At all time material and relevant hereto, Dr. Turner was an agent,

ostensible agent, apparent agent, workman, employee, and/or servant of

Abington Memorial Hospital, and failed to exercise the care, skill, and/or

judgment of a reasonable healthcare provider under the circumstances, and her

negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

a.  failing to properly diagnose Decedent;

b.  failing to timely diagnose Decedent;

c.  failing to properly treat Decedent;

d.  failing to timely treat Decedent;

e.  failing to timely diagnose an aortic aneurysm and/or dissection;

f.  failing to timely treat an aortic aneurysm and/or dissection;

g.  failing to timely order and obtain a surgical consultation;

h.  failing to timely surgically treat an aortic aneurysm and/or dissection;

i.  failing to timely medically treat an aortic aneurysm and/or dissection;

j.  failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k.  failing to properly appreciate Decedent's risks and complaints as potentially related to an aortic aneurysm and/or dissection;

l.  failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.  failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.      failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.      failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.      failing to order and obtain cardiothoracic surgical consult;

q.      failing to order and obtain a consult by a cardiologist;

r.      failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.      failing to order and obtain an ultrasound;

t.      failing to order and obtain a chest x-ray;

u.      failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.      failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.      failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

51.     The careless and negligent acts and/or omissions of Dr. Turner, which acts and/or omissions are imputed to Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's   suffering the injuries and/or damages set forth in ¶47 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT III - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ASHISH H. JANI, M.D.

52.     Paragraphs one (1) through fifty-two (52) above are incorporated by reference hereat as if set forth at length.

53.     Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Jani, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

54.     At all time material and relevant hereto, Dr. Jani was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

      a.     failing to properly diagnose Decedent;

      b.     failing to timely diagnose Decedent;

c. failing to properly treat Decedent;

d. failing to timely treat Decedent;

e. failing to timely diagnose an aortic aneurysm and/or dissection;

f. failing to timely treat an aortic aneurysm and/or dissection;

g. failing to timely order and obtain a surgical consultation;

h. failing to timely surgically treat an aortic aneurysm and/or dissection;

i. failing to timely medically treat an aortic aneurysm and/or dissection;

j. failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k. failing to properly appreciate Decedent's risks and complaints as potentially related to an aortic aneurysm and/or dissection;

l. failing to order and/or perform a CT scan of Decedent's chest/thorax;

m. failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n. failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o. failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p. failing to order and obtain cardiothoracic surgical consult;

q.    failing to order and obtain a consult by a cardiologist;

r.    failing to recognize the signs, symptoms, and risk factors of a
      thoracic aortic aneurysm and/or dissection;

s.    failing to order and obtain an ultrasound;

t.    failing to order and obtain a chest x-ray;

u.    failing to properly and/or timely intervene in Decedent's care
      to prevent his aortic aneurysm and/or dissection from
      bleeding and/or rupturing;

v.    failing to properly and/or timely intervene in Decedent's care
      to prevent his death; and

w.    failing to timely and/or properly communicate with other
      physicians/nurses regarding the care and treatment of
      Decedent.

55.    The careless and negligent acts and/or omissions of Dr. Jani,
which acts and/or omissions are imputed to Abington Memorial Hospital,
deviated from accepted standards of medical care, increased the risk of harm to
the Decedent, and/or was a substantial factor and/or was a factual cause of said
Decedent's   suffering the injuries and/or damages set forth in ¶47 above and
incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha
Strimber, respectfully demand judgment in their favor, and against Steven B.
Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez,
CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja,
M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical

Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians

Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an

amount in excess of $75,000, exclusive of interest and costs.

<u>**COUNT IV - PROFESSIONAL NEGLIGENCE**</u>
<u>**GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF**</u>
<u>**ABRAHAM STRIMBER AND BRACHA STRIMBER V. KRISTINA A. MARTINEZ,**</u>
<u>**CRNP**</u>

56.     Paragraphs one (1) through fifty-five (55) above are incorporated

by reference hereat as if set forth at length.

57.     Following Decedent's admission to the Internal Medicine service at

Abington Memorial Hospital, he was examined and/or treated by NP Martinez,

who had access to Decedent's hospital chart that was created upon arrival in the

Abington Memorial Hospital Emergency Department.

58.     At all time material and relevant hereto, NP Martinez was an agent,

ostensible agent, apparent agent, workman, employee, and/or servant of

Abington Memorial Hospital, and failed to exercise the care, skill, and/or

judgment of a reasonable healthcare provider under the circumstances, and her

negligent and careless acts and/or omissions fell below the applicable standard

of care in the following manner:

      a.     failing to properly diagnose Decedent;

      b.     failing to timely diagnose Decedent;

      c.     failing to properly treat Decedent;

      d.     failing to timely treat Decedent;

      e.     failing to timely diagnose an aortic aneurysm and/or

             dissection;

f.      failing to timely treat an aortic aneurysm and/or dissection;

g.      failing to timely order and obtain a surgical consultation;

h.      failing to timely surgically treat an aortic aneurysm and/or
        dissection;

i.      failing to timely medically treat an aortic aneurysm and/or
        dissection;

j.      failing to order and/or complete proper radiology studies to
        evaluate Decedent's complaints;

k.      failing to properly appreciate Decedent's risks and complaints
        as potentially related to an aortic aneurysm and/or
        dissection;

l.      failing to order and/or perform a CT scan of Decedent's
        chest/thorax;

m.      failing to order and/or perform a Trans-Esophageal
        Echocardiogram (TEE);

n.      failing to order and/or perform a Trans-Thoracic
        Echocardiogram (TTE);

o.      failing to order and/or perform an MRI or CT scan of
        Decedent's chest/thorax;

p.      failing to order and obtain cardiothoracic surgical consult;

q.      failing to order and obtain a consult by a cardiologist;

r.      failing to recognize the signs, symptoms, and risk factors of a
        thoracic aortic aneurysm and/or dissection;

s.      failing to order and obtain an ultrasound;

t.    failing to order and obtain a chest x-ray;

u.    failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.    failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.    failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

59.    The careless and negligent acts and/or omissions of NP Martinez, which acts and/or omissions are imputed to Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's suffering the injuries and/or damages set forth in ¶47 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, M.D., Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT V - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. BHUVIN M. BUDDHDEV, M.D.

60.    Paragraphs one (1) through fifty-nine (59) above are incorporated by reference hereat as if set forth at length.

61.    Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Buddhdev, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

62.    At all time material and relevant hereto, Dr. Buddhdev was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

      a.    failing to properly diagnose Decedent;

      b.    failing to timely diagnose Decedent;

      c.    failing to properly treat Decedent;

      d.    failing to timely treat Decedent;

      e.    failing to timely diagnose an aortic aneurysm and/or dissection;

      f.    failing to timely treat an aortic aneurysm and/or dissection;

      g.    failing to timely order and obtain a surgical consultation;

h.     failing to timely surgically treat an aortic aneurysm and/or

       dissection;

i.     failing to timely medically treat an aortic aneurysm and/or

       dissection;

j.     failing to order and/or complete proper radiology studies to

       evaluate Decedent's complaints;

k.     failing to properly appreciate Decedent's risks and complaints

       as potentially related to an aortic aneurysm and/or

       dissection;

l.     failing to order and/or perform a CT scan of Decedent's

       chest/thorax;

m.     failing to order and/or perform a Trans-Esophageal

       Echocardiogram (TEE);

n.     failing to order and/or perform a Trans-Thoracic

       Echocardiogram (TTE);

o.     failing to order and/or perform an MRI or CT scan of

       Decedent's chest/thorax;

p.     failing to order and obtain cardiothoracic surgical consult;

q.     failing to order and obtain a consult by a cardiologist;

r.     failing to recognize the signs, symptoms, and risk factors of a

       thoracic aortic aneurysm and/or dissection;

s.     failing to order and obtain an ultrasound;

t.     failing to order and obtain a chest x-ray;

u.     failing to properly and/or timely intervene in Decedent's care
to prevent his aortic aneurysm and/or dissection from
bleeding and/or rupturing;

v.     failing to properly and/or timely intervene in Decedent's care
to prevent his death; and

w.     failing to timely and/or properly communicate with other
physicians/nurses regarding the care and treatment of
Decedent.

63.     The careless and negligent acts and/or omissions of Dr. Buddhdev,
which acts and/or omissions are imputed to Abington Memorial Hospital,
deviated from accepted standards of medical care, increased the risk of harm to
the Decedent, and/or was a substantial factor and/or was a factual cause of said
Decedent's   suffering the injuries and/or damages set forth in ¶47 above and
incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha
Strimber, respectfully demand judgment in their favor, and against Steven B.
Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez,
CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja,
M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical
Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians
Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an
amount in excess of $75,000, exclusive of interest and costs.

## COUNT VI - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. EUN KYUNG KOH, M.D.

64.    Paragraphs one (1) through fifty-three (53) above are incorporated by reference hereat as if set forth at length.

65.    Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Koh, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

66.    At all time material and relevant hereto, Dr. Koh was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

      a.    failing to properly diagnose Decedent;

      b.    failing to timely diagnose Decedent;

      c.    failing to properly treat Decedent;

      d.    failing to timely treat Decedent;

      e.    failing to timely diagnose an aortic aneurysm and/or dissection;

      f.    failing to timely treat an aortic aneurysm and/or dissection;

      g.    failing to timely order and obtain a surgical consultation;

      h.    failing to timely surgically treat an aortic aneurysm and/or dissection;

i.      failing to timely medically treat an aortic aneurysm and/or

        dissection;

j.      failing to order and/or complete proper radiology studies to

        evaluate Decedent's complaints;

k.      failing to properly appreciate Decedent's risks and complaints

        as potentially related to an aortic aneurysm and/or

        dissection;

l.      failing to order and/or perform a CT scan of Decedent's

        chest/thorax;

m.      failing to order and/or perform a Trans-Esophageal

        Echocardiogram (TEE);

n.      failing to order and/or perform a Trans-Thoracic

        Echocardiogram (TTE);

o.      failing to order and/or perform an MRI or CT scan of

        Decedent's chest/thorax;

p.      failing to order and obtain cardiothoracic surgical consult;

q.      failing to order and obtain a consult by a cardiologist;

r.      failing to recognize the signs, symptoms, and risk factors of a

        thoracic aortic aneurysm and/or dissection;

s.      failing to order and obtain an ultrasound;

t.      failing to order and obtain a chest x-ray;

u.      failing to properly and/or timely intervene in Decedent's care

        to prevent his aortic aneurysm and/or dissection from

        bleeding and/or rupturing;

v.    failing to properly and/or timely intervene in Decedent's care

to prevent his death; and

w.    failing to timely and/or properly communicate with other

physicians/nurses regarding the care and treatment of

Decedent.

67.    The careless and negligent acts and/or omissions of Dr. Koh,

which acts and/or omissions are imputed to Abington Memorial Hospital,

deviated from accepted standards of medical care, increased the risk of harm to

the Decedent, and/or was a substantial factor and/or was a factual cause of

said Decedent's suffering the injuries and/or damages set forth in ¶47 above and

incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha

Strimber, respectfully demand judgment in their favor, and against Steven B.

Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez,

CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja,

M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical

Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians

Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an

amount in excess of $75,000, exclusive of interest and costs.

## COUNT VII - PROFESSIONAL NEGLIGENCE
## GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF
## ABRAHAM STRIMBER AND BRACHA STRIMBER
## V. MANOJ R. MUTTREJA, M.D.

68.    Paragraphs one (1) through sixty-seven (67) above are incorporated

by reference hereat as if set forth at length.

69.     At all time material and relevant hereto, defendant Dr. Muttreja
was the agent, ostensible agent, apparent agent, workman, employee, and/or
servant of Abington Medical Specialists Association, P.C., d/b/a Abington
Medical Specialists, and/or d/b/a AMS Cardiology and/or Abington Memorial
Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable
healthcare provider under the circumstances, and his negligent and careless
acts and/or omissions fell below the applicable standard of care in the following
manner:

a.     failing to properly diagnose Decedent;

b.     failing to timely diagnose Decedent;

c.     failing to properly treat Decedent;

d.     failing to timely treat Decedent;

e.     failing to timely diagnose an aortic aneurysm and/or
dissection;

f.     failing to timely treat an aortic aneurysm and/or dissection;

g.     failing to timely order and obtain a surgical consultation;

h.     failing to timely surgically treat an aortic aneurysm and/or
dissection;

i.     failing to timely medically treat an aortic aneurysm and/or
dissection;

j.     failing to order and/or complete proper radiology studies to
evaluate Decedent's complaints;

k.     failing to properly appreciate Decedent's risks and complaints as potentially related to an aortic aneurysm and/or dissection;

l.     failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.     failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.     failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.     failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.     failing to order and obtain cardiothoracic surgical consult;

q.     failing to order and obtain a consult by a cardiologist;

r.     failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.     failing to order and obtain an ultrasound;

t.     failing to order and obtain a chest x-ray;

u.     failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.     failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.    failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

70.    The careless and negligent acts and/or omissions of Dr. Manoj, which acts and/or omissions are imputed to Abington Emergency Physicians Associates and/or Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's suffering the injuries and/or damages set forth in ¶47 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT VIII - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V.   ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., d/b/a   ABINGTON MEDICAL SPECIALISTS, and d/b/a AMS CARDIOLOGY

71.    Paragraphs one (1) through seventy (70) above are incorporated by reference hereat as if set forth at length.

72.    Defendant AMS is vicariously responsible for the acts and/or omissions of defendant Dr. Muttreja as detailed herein.

73.    Defendant AMS is vicariously responsible for the acts and/or omissions of its known and unknown agents, workmen, servants, and/or employees who provided negligent care and treatment to decedent Abraham Strimber.

74.    All allegations asserted against Dr. Muttreja as detailed above are incorporated herein by reference and made a part hereof as if set forth in full.

75.    The injuries and damages to decedent Abraham Strimber, his Estate, and/or his widow, Bracha Strimber, including those listed in ¶47 *supra*, were caused solely and wholly by reason of the negligence of the defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT IX - VICARIOUS LIABILITY
## GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ABINGTON EMERGENCY PHYSICIAN ASSOCIATES

76.    Paragraphs one (1) through seventy-five (75) above are incorporated by reference hereat as if set forth at length.

77.    Defendant Abington Emergency Physician Associates is vicariously responsible for the acts and/or omissions of defendant Dr. Fisher as detailed herein.

78.    Defendant Abington Emergency Physician Associates is vicariously responsible for the acts and/or omissions of its known and unknown agents, workmen, servants, and/or employees who provided negligent care and treatment to decedent Abraham Strimber.

79.    All allegations asserted against Dr. Fisher as detailed above are incorporated herein by reference and made a part hereof as if set forth in full.

80.    The injuries and damages to decedent Abraham Strimber, his Estate, and/or his widow, Bracha Strimber, including those listed in ¶47 *supra*, were caused solely and wholly by reason of the negligence of the defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical

Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians

Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an

amount in excess of $75,000, exclusive of interest and costs.

## COUNT X - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ABINGTON MEMORIAL HOSPITAL

81.    Paragraphs one (1) through eighty (80) above are incorporated by

reference hereat as if set forth at length.

82.    Defendant AMH is vicariously responsible for the acts and/or

omissions of defendants Dr. Fisher, Dr. Turner, Dr. Jani, NP Martinez, Dr.

Buddhdev, and Dr. Koh as detailed herein.

83.    Defendant AMH is vicariously responsible for the acts and/or

omissions of its known, including the nurses named *supra*, and unknown

agents, workmen, servants, and/or employees who provided negligent care and

treatment to decedent Abraham Strimber.

84.    All allegations asserted against Dr. Fisher, Dr. Turner, Dr. Jani, NP

Martinez, Dr. Buddhdev, and Dr. Koh, as detailed above are incorporated herein

by reference and made a part hereof as if set forth in full.

85.    The injuries and damages to decedent Abraham Strimber, his

Estate, and/or his widow, Bracha Strimber, including those listed in ¶47 *supra*

were caused solely and wholly by reason of the negligence of the defendants, as

set forth more fully herein, and were not caused or contributed thereto by any

negligence on the part of Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT XI - CORPORATE NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER
### V. ABINGTON MEMORIAL HOSPITAL

86.     Paragraphs one (1) through eighty-five (85) above are incorporated by reference hereat as if set forth at length.

87.     The corporate negligence of defendant AMH consisted of the following:

a.     A duty to select and retain only competent physicians, surgeons, residents, interns, nurses, technicians, and others who treated decedent Abraham Strimber, as described herein, including staff and/or employees that will ensure proper communication of all medical care and treatment, including emergency department care, and for enforcing policies and/or procedures to protect and/or mitigate the risk of harm to patients such as Abraham Strimber;

b.   A duty to use reasonable care in the maintenance of safe and adequate emergency department equipment and facilities for the treatment of decedent, Abraham Strimber;

c.   A duty to oversee all persons who practice medicine within its walls as to patient care, in particular the duty to oversee the physicians, surgeons, nurses, resident, interns, technicians, and others who treated decedent Abraham Strimber, as described herein, including staff and/or employees that will ensure proper communication of enforcing policies concerning protocol for medical conditions such as decedent Abraham Strimber's;

d.   A duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients, in particular to have rules and policies to:

   i.   Ensure physicians, surgeons, residents, interns, nurses, technicians, and/or other medical staff perform and/or document timely and proper patient assessments and/or evaluations;

   ii.   Ensure proper monitoring of patients while in the emergency department;

   iii.   Ensure proper monitoring of patients following admission from the emergency department;

   iv.   Ensure that all orders are timely and properly carried out;

v.      ensure that patient complaints are timely and appropriately assessed and responded to;

vi.     Ensure that changes in a patient's condition, including cardiovascular status and/or physical status are timely and properly communicated to physicians, surgeons, nurses, residents, interns, technicians, aides, and/or other personnel responsible for patient medical care and/or treatment;

vii.    Ensure policies and/or procedures and their enforcement concerning the admission of patients from the emergency department without a proper plan and/or diagnosis;

viii.   Ensure proper and timely communication and/or consultation of physicians;

ix.     Ensure proper training and supervision of emergency department staff;

x.      Ensure proper training and supervision of hospitalists, interns, residents, and specialists; and,

xi.     Ensure the use of proper diagnostic tools for emergency  department physicians, hospitalists, interns, residents, nurses, and other medical staff.

88.     The carelessness and negligence of defendant AMH as set forth above increased the risk of harm and was a substantiail factor and/or factual

cause in causing the injuries and damages suffered by Plaintiffs and decedent Abraham Strimber as set forth more fully herein, including those listed in ¶47 *supra.*

89.   Defendant AMH had actual and/or constructive knowledge of its failures, carelessness, and/or negligence as described above.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT XII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; ASHISH JANI, M.D.; KRISTINA A. MARTINEZ, CRNP; BHUVIN M. BUDDHDEV, M.D.; EUN KYUNG KOH, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL

90.   Paragraphs one (1) through eighty-nine (89) above are incorporated by reference hereat as if set forth at length.

91.   At the time of the aforesaid incident of 2/22/2012, plaintiff Bracha Strimber was the wife of decedent Abraham Strimber.

92.   Plaintiff Bracha Strimber was present throughout the entirety of the care and treatment rendered by the defendants herein while her husband,

Abraham Strimber, was a patient at Abington Memorial Hospital on 2/22/2012, and observed the care, treatment, pain, suffering, anguish, and fear suffered by Abraham Strimber.

93.     As a direct and proximate result of the defendants' negligence and Bracha Strimber's sensory and contemporary observation of the care, treatment, pain, suffering, anguish, and fear of her husband, said plaintiff suffered and experienced severe emotional distress and extreme mental pain and suffering.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT XIII – LOSS OF CONSORTIUM
### BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; ASHISH JANI, M.D.; KRISTINA A. MARTINEZ, CRNP; BHUVIN M. BUDDHDEV, M.D.; EUN KYUNG KOH, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL

94.     Paragraphs one (1) through ninety-three (93) above are incorporated by reference hereat as if set forth at length.

95.    As a result of the negligence of the defendants herein, plaintiff Bracha Strimber has and will continue to suffer the loss of the services, support and consortium of her spouse, decedent Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT XIV – WRONGFUL DEATH
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; ASHISH JANI, M.D.; KRISTINA A. MARTINEZ, CRNP; BHUVIN M. BUDDHDEV, M.D.; EUN KYUNG KOH, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL

96.    Paragraphs one (1) through ninety-five (95) above are incorporated by reference hereat as if set forth at length.

97.    Plaintiffs bring this Wrongful Death action on behalf of the beneficiaries, under and by virtue of the Acts of 1855, P.L. 309, as amended, 42 Pa.C.S.A. §8301, the applicable Rules of Civil Procedure and decisional law.

98.    As a result of the negligence, wrongful conduct, and misconduct of defendants, as set forth above, decedent Abraham Strimber was caused grave

injuries and death resulting in the entitlement to damages by said beneficiaries under the Wrongful Death Act.

99.   Plaintiffs claim damages for all administrator's expenses suffered by reason of the death of decedent Abraham Strimber, including, but not limited to medical, hospital, funeral and burial expenses and expenses of estate administration and other expenses recoverable under the Wrongful Death Act.

100.  Plaintiffs claim damages for loss of the monetary support that decedent Abraham Strimber would have provided to beneficiaries during his lifetime, including, but not limited to earnings, maintenance, support, and other similar losses recognized under the Wrongful Death Act that they would have received from him for the rest of his natural life.

101.  Plaintiffs claim damages, under the Wrongful Death Act, for all pecuniary losses suffered by the beneficiaries.

102.  Plaintiffs claim, under the Wrongful Death Act, an amount to compensate beneficiaries for the losses of contribution between the time of death and today, and the amount of support that decedent Abraham Strimber would have contributed to them in the future.

103.  Plaintiffs claim, under the Wrongful Death Act, damages for services provided or which could have been expected to have been provided in the future by decedent Abraham Strimber, as well as household services.

104.  Plaintiffs claim, under the Wrongful Death Act, damages for loss of guidance, tutelage and other similar losses recognized under the Wrongful Death Act that would have been provided to the beneficiaries.

105.  Plaintiff Bracha Strimber, as the wife of decedent, claims, under the Wrongful Death Act, damages for her past and future loss of spousal consortium, services, society, support, guidance, tutelage, comfort and other similar losses recognized under the Wrongful Death Act.

106.  Plaintiffs claim, under the Wrongful Death Act, the full measure of damages allowed under the law and under the categories of administrator's expenses, support and services as defined under the laws of the Commonwealth of Pennsylvania.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT XV – SURVIVAL ACTION
**GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; ASHISH JANI, M.D.; KRISTINA A. MARTINEZ, CRNP; BHUVIN M. BUDDHDEV, M.D.; EUN KYUNG KOH, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL**

107.  Paragraphs one (1) through one hundred and six (106) above are incorporated by reference hereat as if set forth at length.

108.   Plaintiffs bring this Survival Action on behalf of the Estate of Decedent Abraham Strimber, under and by virtue of 42 Pa.C.S.A. § 8302, the applicable Rules of Civil Procedure and decisional law.

109.   The beneficiaries, as described above, are entitled to the entire distribution of the Estate of Decedent Abraham Strimber.

110.   As a result of the negligence, wrongful conduct, and misconduct of all Defendants, as set forth above, decedent Abraham Strimber was caused grave injuries and death resulting in the entitlement to damages by said beneficiaries under the Survival Act.

111.   As a result of the death of decedent, his Estate has been deprived of the economic value of his life expectancy and Plaintiffs, Gary B. Freedman, Esquire, as Executor of the Estate of Abraham Strimber and/or his spouse, respectively, claim, under the Survival Act, damages for all pecuniary losses suffered by the Estate of Abraham Strimber as a result of his death, including all loss of income, earnings, retirement income and benefits and Social Security income, until death, as a result of said decedent's death.

112.   Plaintiffs further claim under the Survival Act the total amount that Decedent would have earned between today and the end of his life expectancy; Plaintiffs especially seek the total amount of future lost earning capacity, including, but not limited to the total amount of future lost earnings and earning capacity, including, but not limited to the total lost future net earnings for decedent Abraham Strimber, less his cost of personal maintenance.

113.   Plaintiffs further claim under the Survival Act, damages for embarrassment, humiliation, and mental anguish.

114.   Plaintiffs further claim under the Survival Act damages for the conscious pain and suffering, and inconvenience endured by decedent Abraham Strimber prio to his death, including, but not limited to physical pain and suffering, mental pain and suffering, and the fright and mental suffering attributed to the peril leading to said decedent's death.

115.   Plaintiffs claim the full measure of damages under the Survival Act and decisional law interpreting said Act.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D., Ashish Jani, M.D., Kristina A. Martinez, CRNP, Bhuvin M. Buddhdev, M.D., Eun Kyung Koh, M.D., Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

Respectfully submitted,

By: _____

Joseph S. Lukomski, Esquire
James E. Hockenberry, Esquire
*Counsel for Plaintiffs*

# VERIFICATION

I, BRACHA STRIMBER, being duly sworn according to law, deposes and says that he/she is the Plaintiff herein; and, that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of his/her knowledge, information and belief.  This statement is made subject to the penalties of 18 PA.C.S. Section 4904 relating to unsworn falsification to authorities.

_Bracha Strimber_
BRACHA STRIMBER

Dated:  _5-24-13_

# V E R I F I C A T I O N

I, GARY FREEMAN, being duly sworn according to law, deposes and says that he/she is the Plaintiff herein in the capacity of Executor of the Estate of Abraham Strimber; and, that the facts set forth in the foregoing Civil Action Complaint are true and correct to the best of his/her knowledge, information and belief.  This statement is made subject to the penalties of 18 PA.C.S. Section 4904 relating to unsworn falsification to authorities.

GARY FREEDMAN, as Executor of the Estate
of Abraham Strimber

Dated: _____