# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY B. FREEDMAN, ESQUIRE,    ) CIVIL ACTION
**Administrator of the ESTATE OF**    )
**ABRAHAM STRIMBER, deceased, and**    ) NO. 2:13-CV-03145-CDJ
**BRACHA STRIMBER,**    )
    )
    **Plaintiffs,**    )
    )
    **v.**    )
    )
**STEVEN FISHER, M.D., MARGO**    )
**TURNER, M.D., MANOJ R. MUTTREJA,**    )
**M.D., ABINGTON MEDICAL**    )
**SPECIALISTS ASSOCIATION, P.C. d/b/a**    )
**ABINGTON MEDICAL SPECIALISTS, and**    )
**d/b/a AMS CARDIOLOGY, ABINGTON**    )
**EMERGENCY PHYSICIAN ASSOCIATES,**    )
**ABINGTON MEMORIAL HOSPITAL, and**    )
**RITESH RAMPURE, M.D.,**    )
    )
    **Defendants.**    )

## ORDER

    AND NOW, on this _____ day of _____, 2014, upon consideration of the Defendants', Steven Fisher, M.D. and Abington Emergency Physician Associates, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 as to Count VIII of Plaintiffs' Amended Complaint Alleging Negligent Infliction of Emotional Distress, and any responses thereto, it is hereby ORDERED and DECREED that Summary Judgment is GRANTED.

                                       _____
                                       **J. WILLIAM DITTER, JR., J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY B. FREEDMAN, ESQUIRE, Administrator of the ESTATE OF ABRAHAM STRIMBER, deceased, and BRACHA STRIMBER, | ) CIVIL ACTION ) ) NO. 2:13-CV-03145-CDJ ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| STEVEN FISHER, M.D., MARGO TURNER, M.D., MANOJ R. MUTTREJA, M.D., ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C. d/b/a ABINGTON MEDICAL SPECIALISTS, and d/b/a AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIAN ASSOCIATES, ABINGTON MEMORIAL HOSPITAL, and RITESH RAMPURE, M.D., | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS', STEVEN FISHER, M.D. AND ABINGTON EMERGENCY PHYSICIAN ASSOCIATES, MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 AS TO COUNT VIII OF PLAINTIFFS' AMENDED COMPLAINT ALLEGING NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

AND NOW COMES, Defendants, Steven Fisher, M.D. and Abington Emergency Physician Associates, by and through their attorneys, Post & Schell, P.C., and hereby move this Honorable Court, pursuant to Federal Rule of Civil Procedure 56 and the Second Revised Case Management Order setting forth a deadline for dispositive motions of October 1, 2014, to grant summary judgment in support of Moving Defendants and against the Plaintiffs as to Count VIII of Plaintiffs' Amended Complaint alleging negligent infliction of emotional distress. In support thereof, Moving Defendants aver as follows:

1.      Plaintiffs, Gary B. Freedman, Esquire, Administrator of the Estate of Abraham Strimber, deceased, and Bracha Strimber initiated this medical professional liability action by filing a Complaint in the United States District Court for the Eastern District of Pennsylvania on June 6, 2013. (Doc. No. 1.)

2.      With leave of this Honorable Court, they filed an Amended Complaint on May 6, 2014. (Doc. No. 47. A true and correct copy of the Amended Complaint is attached hereto as Exhibit A.)

3.      After the approval of Stipulations of Dismissal (Doc. No. 31, 37, and 50), the following Defendants remain: Steven Fisher, M.D. (emergency medicine), Abington Emergency Physician Associates, P.C., Margo Turner, M.D. (internal medicine), Manoj R. Muttreja, M.D. (cardiologist), Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists and d/b/a AMS Cardiology, Abington Memorial Hospital, and Ritesh Rampure, M.D. (internal medicine).

4.      Plaintiffs' claimed that Drs. Fisher, Turner, Muttreja, and Rampure failed to properly diagnose and treat Mr. Abraham Strimber for an alleged dissecting aorta and that as a result, Mr. Strimber passed away. (Exhibit A.)

5.      More specifically, in their Amended Complaint, Plaintiffs asserted: (1) negligence claims against Drs. Fisher, Turner, Muttreja, and Rampure; (2) vicarious liability claims for the alleged negligence of Dr. Fisher against Abington Emergency Physician Associates, P.C.; (3) vicarious liability claims for the alleged negligence of Dr. Muttreja against Abington Medical Specialists Associates, P.C. d/b/a Abington Medical Specialists and d/b/a AMS Cardiology; (4) vicarious liability claims for the alleged negligence of Drs. Fisher, Turner, Muttreja, and Rampure against Abington Memorial Hospital; (5) corporate negligence against Abington

Memorial Hospital; (6) negligent infliction of emotional distress against all Defendants; (7) loss

of consortium against all Defendants; and (8) claims for violation of the Emergency Medical

Treatment and Labor Act against Abington Memorial Hospital. (Exhibit A.)

6.      On August 28, 2014, the Motion of Defendants, Manoj Muttreja, M.D. and

Abington Medical Specialists Association, P.C. to Dismiss Count VIII of the Plaintiffs'

Amended Complaint Alleging Negligent Infliction of Emotional Distress was filed pursuant to

Federal Rules of Civil Procedure 12(b)(6), 12(c), and 56. (Doc. No. 70.)

7.      The arguments advanced in that Motion are equally applicable to Moving

Defendants and therefore the arguments are incorporated herein by reference in full as though set

forth herein at length. (Doc. No. 70.)

8.      On September 16, 2014, Plaintiffs filed their Response in opposition. (Doc. No.

71.)

9.      On October 1, 2014, this Honorable Court granted the Motion for Summary

Judgment seeking dismissal of Plaintiffs' claims against Defendants, Manoj Muttreja, M.D. and

Abington Medical Specialists, P.C., for negligent infliction of emotional distress. (Doc. Nos. 75

and 76.  True and correct copies this Honorable Court's Memorandum and Order are attached

hereto collectively as Exhibit B.)

10.      The reasoning that this Honorable Court applied to dismiss Plaintiffs' claims

against Defendants, Manoj Muttreja, M.D. and Abington Medical Specialists, P.C., for negligent

infliction of emotional distress is equally applicable to Moving Defendants and is incorporated

herein by reference in full as though set forth herein at length. (Exhibit B.)

11.      That is, this Honorable Court aptly summarized the facts as follows:

Mr. Strimber presented to the emergency department at Abington Memorial
Hospital with a series of . . . abdominal complaints at approximately 11:40 a.m.

4

Within minutes Mr. Strimber was evaluate by an emergency department nurse and then assigned to a primary nurse.  Both nurses documented his complaints, their examinations, and their observations of Mr. Strimber.

At 12:23 p.m., Mr. Strimber was examined by an emergency department physician, Steven Fisher, M.D., who made a differential diagnosis and ordered extensive laboratory tests.  [Dr. Fisher also ordered a CT scan without IV contrast because Mr. Strimber had a history of contrast allergy with anaphylaxis.]  At 2:27 p.m., Dr. Fisher admitted Mr. Strimber to the hospital for further observation.[1]

Margo Turner, M.D., who specializes in internal medicine, next observed, examined, and ordered further testing. . . .  Mr. Strimber was next seen by Dr. Muttreja, a cardiologist, at 6:30 p.m.

At 8:30 p.m., the floor nurse alerted Dr. Turner to a dangerous change in Mr. Strimber's cardiac condition.   Shortly thereafter he was taken to the catheterization lab where testing revealed pericardial hemorrhage.  Mr. Strimber rapidly deteriorated and despite a series of emergency measures, he died at 10:49 p.m.

(Exhibit B at pages 1-2.)

12.     Furthermore, this Honorable Court summarized and explained the claim for negligent infliction of emotional distress noting that although a "plaintiff may not have suffered a physical injury, recovered is allowed when": (1) "he or she was in close proximity to a traumatic event, typically an accident;" (2) "recovery is allowed if the plaintiff witnessed an accident that caused serious injury to a close family member; and" (3) "most recently, and still evolving, where a defendant owes the plaintiff a duty that arises from a contractual or fiduciary obligation."  (Exhibit B at pages 2-3.)

13.     Plaintiffs' claims for negligent infliction of emotional distress against Moving Defendants are based on Toney v. Chester County Hospital, 614 Pa. 98, 36 A.3d 83 (2011) with the contention that Mrs. Strimber "was present during the entire time of her husband's hospital care and treatment; observed his pain, suffering, anguish, and fear; and as a result 'suffered and

---

[1] Moving Defendants' position is that Mr. Strimber did not complain of chest pain.

experienced serve emotional distress and extreme mental pain and suffering.'"  (Exhibit B at page 3 (<u>quoting</u> Exhibit A at ¶ 73).)

14.     As this Honorable Court noted, <u>Toney</u> only extended negligent infliction of emotional distress liability to cases "'involving preexisting relationships . . . involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach'" and in which the harm is beyond "'the type that a reasonable person is expected to bear'" and is likely to have "'a visceral and devastating assault on the self' such that it 'resemble[s] physical agony in its brutality.'"  (Exhibit B at pages 3-4 (<u>quoting</u> <u>Toney</u>, 614 Pa. at 117, 36 A.3d at 95).)

15.     <u>Toney</u>, which "involved the adequacy of pleadings[,]" is also distinguishable in that respect from the instant issue that "involves the adequacy of the record."  (Exhibit B at page 4.)

16.     For the following reasons, Plaintiffs' evidence does not satisfy any of the requirements in <u>Toney</u>.

17.     As this Honorable Court found, "There is no evidence showing that Mrs. Strimber had any preexisting relationship with the hospital or any of the doctors, [including Moving Defendants,] nor that any relationship developed during the 11 hours before Mr. Strimber died.  With one minor exception, there is no record of any conversations -- no questions, suggestions, or comments from or to the doctors on their part or on her part."  (Exhibit B at page 4.)

18.     As this Honorable Court found, "Mrs. Strimber's observations of Mr. Strimber's pain and fear are of a type that life's experiences often bring and are of a type that a reasonable person may be expected to bear.  There is nothing in the record to suggest that her observations were 'a devastating assault on her self' akin to 'physical agony in its brutality.'"  (Exhibit B at page 4 (<u>quoting</u> <u>Toney</u>, 614 Pa. at 117, 36 A.3d at 95).)

19.     Moreover, as this Honorable Court found, "[T]here is nothing in the record to suggest that her presence when Mr. Strimber died had any extraordinary effect on Mrs. Strimber." (Exhibit B at page 4.)

20.     Thus, overall, "Mrs. Strimber failed to establish that Mr. Strimber's physicians owed her a duty of care.   Moreover, she failed to establish that her contemporaneous observations of her husband's alleged pain and suffering rises to the level [of] 'a devastating assault' or 'physical agony.'" (Exhibit B at page 6-7 (quoting Toney, 614 Pa. at 117, 36 A.3d at 95).)

21.     For these reasons and for all of the reasons set forth in the Motion of Defendants, Manoj Muttreja, M.D. and Abington Medical Specialists, P.C., to Dismiss Count VIII of the Plaintiffs' Amended Complaint Alleging Negligent Infliction of Emotional Distress and in this Honorable Court's Memorandum and Order, Plaintiffs' claims for negligent infliction of emotional distress against Moving Defendants should be dismissed as well.

WHEREFORE, Defendants, Steven Fisher, M.D. and Abington Emergency Physician Associates, respectfully request that this Honorable Court issue the attached Order dismissing all claims for negligent infliction of emotional distress.

POST & SCHELL, P.C.

BY:

DATED: 10/1/14

DONALD N. CAMHI, ESQUIRE
I.D. # 41026
POST & SCHELL, P.C.
FOUR PENN CENTER
1600 JOHN F. KENNEDY BLVD.
PHILADELPHIA, PA  19103
215-587-1000
E-MAIL: DCAMHI@POSTSCHELL.COM

(ATTORNEY FOR DEFENDANTS, STEVEN
FISHER, M.D. AND ABINGTON EMERGENCY
PHYSICIAN ASSOCIATES)

## CERTIFICATE OF SERVICE

I, Donald N. Camhi, Esquire, attorney for Defendants, Steven Fisher, M.D. and Abington Emergency Physician Associates, hereby state that a true and correct copy of the foregoing Defendants', Steven Fisher, M.D. and Abington Emergency Physician Associates, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 as to Count VIII of Plaintiffs' Amended Complaint Alleging Negligent Infliction of Emotional Distress was served via electronic filing on the following individual(s):

H. Leon Aussprung, III, Esquire
James E. Hockenberry, Esquire
**Law Office of Leon Aussprung MD, LLC**
121 South Broad Street
20th Floor
Philadelphia, PA 19107
(Plaintiffs' counsel's current law firm)

John P. Shusted, Esquire
**German, Gallagher & Murtagh, P.C.**
200 S. Broad Street
The Bellevue, Suite 500
Philadelphia, PA 19102
(Counsel for Defendants, Manoj R. Muttreja, M.D. and Abington Medical Specialists Association, P.C.)

James A. Young, Esquire
Heather A. Tereshko, Esquire
**Christie, Pabarue, Mortensen and Young**
1880 John F. Kennedy Blvd.
10th Floor
Philadelphia, PA 19103
(Counsel for Defendants, Margo Turner, M.D., Abington Memorial Hospital, and Ritesh Rampure, M.D.)

POST & SCHELL, P.C.

BY:

DATED: 10/1/14

DONALD N. CAMHI, ESQUIRE
I.D. # 41026
POST & SCHELL, P.C.
FOUR PENN CENTER
1600 JOHN F. KENNEDY BLVD.
PHILADELPHIA, PA 19103
215-587-1000
E-MAIL: DCAMHI@POSTSCHELL.COM

(ATTORNEY FOR DEFENDANTS, STEVEN FISHER, M.D. AND ABINGTON EMERGENCY PHYSICIAN ASSOCIATES)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY B. FREEDMAN, ESQUIRE, Administrator of the ESTATE OF ABRAHAM STRIMBER, deceased, and BRACHA STRIMBER, | ) CIVIL ACTION<br>)<br>) NO. 2:13-CV-03145-CDJ<br>) |
| Plaintiffs, | ) |
| v. | ) |
| STEVEN FISHER, M.D., MARGO TURNER, M.D., MANOJ R. MUTTREJA, M.D., ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C. d/b/a ABINGTON MEDICAL SPECIALISTS, and d/b/a AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIAN ASSOCIATES, ABINGTON MEMORIAL HOSPITAL, and RITESH RAMPURE, M.D., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**DEFENDANTS', STEVEN FISHER, M.D. AND ABINGTON EMERGENCY PHYSICIAN ASSOCIATES, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 AS TO COUNT VIII OF PLAINTIFFS' AMENDED COMPLAINT ALLEGING NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Defendants, Steven Fisher, M.D. and Abington Emergency Physician Associates, by and through their attorneys, Post & Schell, P.C., hereby respectfully submit the instant Memorandum of Law in support of their request, pursuant to Federal Rule of Civil Procedure 56 and the Second Revised Case Management Order setting forth a deadline for dispositive motions of October 1, 2014, for the granting of summary judgment against the Plaintiffs as to Count VIII of Plaintiffs' Amended Complaint alleging negligent infliction of emotional distress.

## I.   FACTS

Plaintiffs, Gary B. Freedman, Esquire, Administrator of the Estate of Abraham Strimber, deceased, and Bracha Strimber initiated this medical professional liability action by filing a Complaint in the United States District Court for the Eastern District of Pennsylvania on June 6, 2013. (Doc. No. 1.)  With leave of this Honorable Court, they filed an Amended Complaint on May 6, 2014. (Doc. No. 47 and Exhibit A.)  After the approval of Stipulations of Dismissal (Doc. No. 31, 37, and 50), the following Defendants remain: Steven Fisher, M.D. (emergency medicine), Abington Emergency Physician Associates, P.C., Margo Turner, M.D. (internal medicine), Manoj R. Muttreja, M.D. (cardiologist), Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists and d/b/a AMS Cardiology, Abington Memorial Hospital, and Ritesh Rampure, M.D. (internal medicine).

Plaintiffs' claimed that Drs. Fisher, Turner, Muttreja, and Rampure failed to properly diagnose and treat Mr. Abraham Strimber for an alleged dissecting aorta and that as a result, Mr. Strimber passed away.  (Exhibit A.)  More specifically, in their Amended Complaint, Plaintiffs asserted: (1) negligence claims against Drs. Fisher, Turner, Muttreja, and Rampure; (2) vicarious liability claims for the alleged negligence of Dr. Fisher against Abington Emergency Physician Associates, P.C.; (3) vicarious liability claims for the alleged negligence of Dr. Muttreja against Abington Medical Specialists Associates, P.C. d/b/a Abington Medical Specialists and d/b/a AMS Cardiology; (4) vicarious liability claims for the alleged negligence of Drs. Fisher, Turner, Muttreja, and Rampure against Abington Memorial Hospital; (5) corporate negligence against Abington Memorial Hospital; (6) negligent infliction of emotional distress against all Defendants; (7) loss of consortium against all Defendants; and (8) claims for violation of the Emergency Medical Treatment and Labor Act against Abington Memorial Hospital.  (Exhibit A.)

On August 28, 2014, the Motion of Defendants, Manoj Muttreja, M.D. and Abington Medical Specialists Association, P.C. to Dismiss Count VIII of the Plaintiffs' Amended Complaint Alleging Negligent Infliction of Emotional Distress was filed pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c), and 56. (Doc. No. 70.) The arguments advanced in that Motion are equally applicable to Moving Defendants and therefore the arguments are incorporated herein by reference in full as though set forth herein at length. (Doc. No. 70.) On September 16, 2014, Plaintiffs filed their Response in opposition. (Doc. No. 71.)

On October 1, 2014, this Honorable Court granted the Motion for Summary Judgment seeking dismissal of Plaintiffs' claims against Defendants, Manoj Muttreja, M.D. and Abington Medical Specialists, P.C., for negligent infliction of emotional distress. (Doc. Nos. 75 and 76 and Exhibit B.) The reasoning that this Honorable Court applied to dismiss Plaintiffs' claims against Defendants, Manoj Muttreja, M.D. and Abington Medical Specialists, P.C., for negligent infliction of emotional distress is equally applicable to Moving Defendants and is incorporated herein by reference in full as though set forth herein at length. (Exhibit B.)

That is, this Honorable Court aptly summarized the facts as follows:

Mr. Strimber presented to the emergency department at Abington Memorial Hospital with a series of . . . abdominal complaints at approximately 11:40 a.m. Within minutes Mr. Strimber was evaluate by an emergency department nurse and then assigned to a primary nurse. Both nurses documented his complaints, their examinations, and their observations of Mr. Strimber.

At 12:23 p.m., Mr. Strimber was examined by an emergency department physician, Steven Fisher, M.D., who made a differential diagnosis and ordered extensive laboratory tests. [Dr. Fisher also ordered a CT scan without IV contrast because Mr. Strimber had a history of contrast allergy with anaphylaxis.] At 2:27 p.m., Dr. Fisher admitted Mr. Strimber to the hospital for further observation.[1]

Margo Turner, M.D., who specializes in internal medicine, next observed, examined, and ordered further testing. . . . Mr. Strimber was next seen by Dr. Muttreja, a cardiologist, at 6:30 p.m.

---

[1] Moving Defendants' position is that Mr. Strimber did not complain of chest pain.

At 8:30 p.m., the floor nurse alerted Dr. Turner to a dangerous change in Mr. Strimber's cardiac condition.   Shortly thereafter he was taken to the catheterization lab where testing revealed pericardial hemorrhage.  Mr. Strimber rapidly deteriorated and despite a series of emergency measures, he died at 10:49 p.m.

(Exhibit B at pages 1-2.)

## II.    ARGUMENT

This Honorable Court summarized and explained the claim for negligent infliction of emotional distress noting that although a "plaintiff may not have suffered a physical injury, recovered is allowed when": (1) "he or she was in close proximity to a traumatic event, typically an accident;" (2) "recovery is allowed if the plaintiff witnessed an accident that caused serious injury to a close family member; and" (3) "most recently, and still evolving, where a defendant owes the plaintiff a duty that arises from a contractual or fiduciary obligation." (Exhibit B at pages 2-3.)

Here, Plaintiffs' claims for negligent infliction of emotional distress against Moving Defendants are based on Toney v. Chester County Hospital, 614 Pa. 98, 36 A.3d 83 (2011) with the contention that Mrs. Strimber "was present during the entire time of her husband's hospital care and treatment; observed his pain, suffering, anguish, and fear; and as a result 'suffered and experienced serve emotional distress and extreme mental pain and suffering.'" (Exhibit B at page 3 (quoting Exhibit A at ¶ 73).)

As this Honorable Court noted, Toney only extended negligent infliction of emotional distress liability to cases "'involving preexisting relationships . . . involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach'" and in which the harm is beyond "'the type that a reasonable person is expected to bear'" and is likely to have "'a visceral and devastating assault on the self' such that it 'resemble[s] physical agony in its

brutality.'"  (Exhibit B at pages 3-4 (quoting Toney, 614 Pa. at 117, 36 A.3d at 95).)  Toney, which "involved the adequacy of pleadings[,]" is also distinguishable in that respect from the instant issue that "involves the adequacy of the record."  (Exhibit B at page 4.)

For the following reasons, Plaintiffs' evidence does not satisfy any of the requirements in Toney:

- As this Honorable Court found, "There is no evidence showing that Mrs. Strimber had any preexisting relationship with the hospital or any of the doctors, [including Moving Defendants,] nor that any relationship developed during the 11 hours before Mr. Strimber died.  With one minor exception, there is no record of any conversations -- no questions, suggestions, or comments from or to the doctors on their part or on her part."  (Exhibit B at page 4.)

- As this Honorable Court found, "Mrs. Strimber's observations of Mr. Strimber's pain and fear are of a type that life's experiences often bring and are of a type that a reasonable person may be expected to bear.  There is nothing in the record to suggest that her observations were 'a devastating assault on her self' akin to 'physical agony in its brutality.'"  (Exhibit B at page 4 (quoting Toney, 614 Pa. at 117, 36 A.3d at 95).)

- Moreover, as this Honorable Court found, "[T]here is nothing in the record to suggest that her presence when Mr. Strimber died had any extraordinary effect on Mrs. Strimber."  (Exhibit B at page 4.)

Thus, overall, "Mrs. Strimber failed to establish that Mr. Strimber's physicians owed her a duty of care.  Moreover, she failed to establish that her contemporaneous observations of her husband's alleged pain and suffering rises to the level [of] 'a devastating assault' or 'physical agony.'"  (Exhibit B at page 6-7 (quoting Toney, 614 Pa. at 117, 36 A.3d at 95).)

For these reasons and for all of the reasons set forth in the Motion of Defendants, Manoj Muttreja, M.D. and Abington Medical Specialists, P.C., to Dismiss Count VIII of the Plaintiffs' Amended Complaint Alleging Negligent Infliction of Emotional Distress and in this Honorable Court's Memorandum and Order, Plaintiffs' claims for negligent infliction of emotional distress against Moving Defendants should be dismissed as well.

## III.   RELIEF REQUESTED

Defendants, Steven Fisher, M.D. and Abington Emergency Physician Associates, respectfully request that this Honorable Court issue their proposed Order dismissing all claims for negligent infliction of emotional distress.

POST & SCHELL, P.C.

BY:

DATED: 10/1/14
                         DONALD N. CAMHI, ESQUIRE
                         I.D. # 41026
                         POST & SCHELL, P.C.
                         FOUR PENN CENTER
                         1600 JOHN F. KENNEDY BLVD.
                         PHILADELPHIA, PA  19103
                         215-587-1000
                         E-MAIL: DCAMHI@POSTSCHELL.COM

                         (ATTORNEY FOR DEFENDANTS, STEVEN FISHER, M.D. AND ABINGTON EMERGENCY PHYSICIAN ASSOCIATES)

## CERTIFICATE OF SERVICE

I, Donald N. Camhi, Esquire, attorney for Defendants, Steven Fisher, M.D. and Abington Emergency Physician Associates, hereby state that a true and correct copy of the foregoing Defendants', Steven Fisher, M.D. and Abington Emergency Physician Associates, Memorandum of Law in Support of Their Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 as to Count VIII of Plaintiffs' Amended Complaint Alleging Negligent Infliction of Emotional Distress was served via electronic filing on the following individual(s):

H. Leon Aussprung, III, Esquire
James E. Hockenberry, Esquire
**Law Office of Leon Aussprung MD, LLC**
121 South Broad Street
20th Floor
Philadelphia, PA 19107
(Plaintiffs' counsel's current law firm)

John P. Shusted, Esquire
**German, Gallagher & Murtagh, P.C.**
200 S. Broad Street
The Bellevue, Suite 500
Philadelphia, PA 19102
(Counsel for Defendants, Manoj R. Muttreja, M.D. and Abington Medical Specialists Association, P.C.)

James A. Young, Esquire
Heather A. Tereshko, Esquire
**Christie, Pabarue, Mortensen and Young**
1880 John F. Kennedy Blvd.
10th Floor
Philadelphia, PA 19103
(Counsel for Defendants, Margo Turner, M.D., Abington Memorial Hospital, and Ritesh Rampure, M.D.)

POST & SCHELL, P.C.

BY:

DATED: 10/1/14

**DONALD N. CAMHI, ESQUIRE
I.D. # 41026
POST & SCHELL, P.C.
FOUR PENN CENTER
1600 JOHN F. KENNEDY BLVD.
PHILADELPHIA, PA 19103
215-587-1000
E-MAIL: DCAMHI@POSTSCHELL.COM**

**(ATTORNEY FOR DEFENDANTS, STEVEN FISHER, M.D. AND ABINGTON EMERGENCY PHYSICIAN ASSOCIATES)**

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY FREEDMAN, et al.                    :        CIVIL ACTION
                          v.             :
                                         :
STEVEN FISHER, M.D., et al.              :        NO. 13-3145
                          :

## ORDER

AND NOW, this 6th day of May, 2014, IT IS HEREBY ORDERED that plaintiffs'

motion to amend the complaint (Dkt. 42) is GRANTED. Pursuant to Federal Rule of Civil

Procedure 15, Dr. Ritesh Rampure shall be added as a party defendant[1] and plaintiffs may amend

their complaint to assert a claim under 42 U.S.C. § 1395dd against defendant Abington

Memorial Hospital. The Clerk's Office is directed to file the plaintiffs' proposed amended

complaint, docketed as Exhibit A to plaintiffs' motion to amend (Dkt. 42-2).

In connection with this order, I make the following findings and reach the following

conclusions:

1.  Plaintiffs seek to amend their complaint to add a claim against defendant Abington

Memorial Hospital for violation of the Emergency Medical Treatment and Active Labor Act,

("EMTALA"), 42 U.S.C. § 1395dd(a). According to plaintiffs' motion, they first learned of the

existence of a possible EMTALA claim at the deposition of one of the party defendants, Dr.

Margo Turner, on March 18, 2014.

2.  At this stage of the case, plaintiffs' complaint may be amended only with the opposing

party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). Leave to amend must

---

[1] Defendants do not oppose the joinder of Dr. Rampure and the amendment of plaintiffs' claims to reflect
his addition to this case. By agreement of the parties, Dr. Rampure will be joined as a defendant as of April 15,
2014. As defendants do not object to Dr. Rampure's joinder, their response to plaintiffs' motion to amend is a
partial opposition and discusses only the additional claim against Abington Hospital.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY FREEDMAN, et al.            :        CIVIL ACTION
                      v.         :
                                 :
STEVEN FISHER, M.D., et al.      :        NO. 13-3145

## ORDER

AND NOW, this 6 day of May, 2014, IT IS HEREBY ORDERED that plaintiffs'
motion to amend the complaint (Dkt. 42) is GRANTED. Pursuant to Federal Rule of Civil
Procedure 15, Dr. Ritesh Rampure shall be added as a party defendant[1] and plaintiffs may amend
their complaint to assert a claim under 42 U.S.C. § 1395dd against defendant Abington
Memorial Hospital. The Clerk's Office is directed to file the plaintiffs' proposed amended
complaint, docketed as Exhibit A to plaintiffs' motion to amend (Dkt. 42-2).

In connection with this order, I make the following findings and reach the following
conclusions:

1.  Plaintiffs seek to amend their complaint to add a claim against defendant Abington
Memorial Hospital for violation of the Emergency Medical Treatment and Active Labor Act,
("EMTALA"), 42 U.S.C. § 1395dd(a). According to plaintiffs' motion, they first learned of the
existence of a possible EMTALA claim at the deposition of one of the party defendants, Dr.
Margo Turner, on March 18, 2014.

2.  At this stage of the case, plaintiffs' complaint may be amended only with the opposing
party's written consent or the court's leave. See Fed. R. Civ. P. 15(a)(2). Leave to amend must

---

[1] Defendants do not oppose the joinder of Dr. Rampure and the amendment of plaintiffs' claims to reflect
his addition to this case. By agreement of the parties, Dr. Rampure will be joined as a defendant as of April 15,
2014. As defendants do not object to Dr. Rampure's joinder, their response to plaintiffs' motion to amend is a
partial opposition and discusses only the additional claim against Abington Hospital.

be freely given when justice so requires. *Id.* Undue delay, bad faith, dilatory motive, prejudice and futility are among the grounds that could justify a denial of leave to amend. *See Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000). Here, defendants urge me to deny plaintiffs' motion on the basis that such an amendment would be a futility. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* In assessing "futility," I apply the same standard of legal sufficiency as under Rule 12(b)(6). *Id.*

3. EMTALA was enacted based on concerns over "patient dumping"– a practice where hospitals, because of economic constraints, either refused to treat certain emergency room patients or transferred them to other facilities. *See Torretti v. Main Line Hospitals,* 580 F.3d 168, 173 (3d Cir. 2009).

4. The Act contains several requirements, however, and is not limited to a prohibition against refusing to treat individuals with emergency conditions based on insurance coverage. "EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside facilities." *Torretti,* 580 F.3d at 172 (citing 42 U.S.C. § 1395dd(a)-(c)). However, EMTALA does not create a federal cause of action for malpractice. Accordingly, "[l]iability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice, as the statute was aimed at disparate patient treatment." *Id.* at 174 (internal citations omitted).

5. Plaintiffs here contend Abington Hospital violated EMTALA's screening provision when Mr. Strimber entered the hospital's emergency department. *See Pl.'s Mot. to Amend,* Exh. A (*Proposed Am. Compl.* ¶ 84). That provision requires a hospital to "provide for an appropriate

medical screening examination within the capability of the hospital's emergency department . . .

to determine whether or not an emergency medical condition {} exists." 42 U.S.C. § 1395dd(a).

6.   The statute does not define "appropriate medical screening." However, courts in this

Circuit have interpreted the statute as requiring hospitals to provide "uniform screening to all

those who present substantially similar complaints." *Blake v. Main Line Hospitals, Inc.*, Civ.

No. 12-3456, 2014 WL 1345973, at *3 (E.D. Pa. Apr. 3, 2014); *see also Byrne v. Cleveland*

*Clinic*, 519 Fed. Appx. 739, 742 (3d Cir. 2013) (observing that, under EMTALA, a hospital is

free to determine what its screening procedures will be, but it must "apply them alike to all

patients").

7.   Under this interpretation of the statute, the allegations in plaintiffs' amended complaint

are sufficient to withstand the Rule 12(b)(6) standard for the legal sufficiency of a claim.

Plaintiffs have alleged, *inter alia*, that Abington Hospital departed from their standard screening

procedures and failed to perform a medical screening examination in accordance with its

capabilities when Mr. Strimber presented his complaints to the emergency department. *See*

*Proposed Am. Compl.* ¶ 84. Plaintiffs further allege that the hospital's screening procedure for a

patient complaining of chest pain was not applied uniformly, as it was not applied to Mr.

Strimber. *Id.* ¶ 89.

8.   It may be that, after further development of the record is completed and evidence is

presented concerning Abington Hospital's screening procedures and whether those procedures

were used or should have been used for Mr. Strimber, plaintiffs' EMTALA claim will not be

able to survive summary judgment. However, based on the facts presented in the plaintiffs'

proposed amended complaint, I find that amendment to add an EMTALA claim would not be futile and therefore, plaintiffs' motion to amend is granted.

BY THE COURT:

J. WILLIAM DITTER, JR. J.

4

# EXHIBIT "A"

**LAW OFFICE OF LEON AUSSPRUNG, M.D., L.L.C.**
By:   H. Leon Aussprung, III, M.D., Esquire
         I.D. No.: 80183
         James E. Hockenberry, Esquire
         I.D. No.: 91133
One Commerce Square, Suite 2300
2005 Market Street
Philadelphia, PA   19103
267-809-8250
LA@aussprunglaw.com
JH@aussprunglaw.com

---

|  | |
|---|---|
| GARY B. FREEDMAN, ESQUIRE, Administrator of the ESTATE OF ABRAHAM STRIMBER, deceased Freedman & Grinshpun, P.C. 7909 Bustleton Avenue Philadelphia, PA 19152 | ) ) ) ) ) |

**UNITED STATES DISTRICT COURT**
 **EASTERN DISTRICT OF**
 **PENNSYLVANIA**

No.:

and                                                       )

BRACHA STRIMBER                          )
3117 Northbrook Road
Pikesville, MD 21208                         )

Plaintiffs,                                             )

                              v.                            )

STEVEN FISHER, M.D.                      )
c/o Abington Emergency Physician
Associates                                          )
AMH Emergency Trauma Center
1200 Old York Road                          )
Abington, PA 19001
                                                            )

and                                                       )

MARGO TURNER, M.D.                    )
c/o Abington Memorial Hospital
1200 Old York Road                          )
Abington, PA 19001
                                                            )

and                                                       )

Case 2:13-cv-03145-WD   Document 472   Filed 05/06/14   Page 33 of 36

MANOJ R. MUTTREJA, M.D.                     )
c/o Abington Medical Specialists            )
Association, P.C., d/b/a Abington
Medical Specialists and d/b/a               )
AMS Cardiology
1235 Old York Road                          )
Levy Medical Plaza, Suite 222
Abington, PA 19001                          )

and                                         )

ABINGTON MEDICAL SPECIALISTS )
ASSOCIATION, P.C., d/b/a
ABINGTON MEDICAL                            )
SPECIALISTS, and d/b/a AMS
CARDIOLOGY                                  )
1235 Old York Road
Levy Medical Plaza, Suite 222               )
Abington, PA 19001
                                            )
and                                         )

ABINGTON EMERGENCY                          )
PHYSICIAN ASSOCIATES
c/o AMH Emergency Trauma                    )
Center
1200 Old York Road                          )
Abington, PA 19001

and                                         )

ABINGTON MEMORIAL HOSPITAL )
1200 Old York Road
Abington, PA 19001                          )

        and                                 )

RITESH RAMPURE, M.D.                        )
c/o Abington Memorial Hospital
1200 Old York Road                          )
Abington, PA 19001
_____ )

## PLAINTIFFS' FIRST AMENDED CIVIL ACTION COMPLAINT

I.    INTRODUCTION

    1.    This case involves medical negligence that occurred on 2/22/2012 while Abraham Strimber, (hereafter Decedent), was a patient at Abington Memorial Hospital in the Emergency Department and after being admitted to the Internal Medicine service.   On that date, the licensed professionals involved in Decedent's care failed to diagnose and treat Decedent properly and within the standards of care required of them, leading to Decedents' death as a result of a ruptured ascending aortic aneurysm on that same date.   Plaintiffs bring this action pursuant to their authority as personal representatives of the Estate of Abraham Strimber pursuant 20 Pa.C.S.A §3373 and 42 Pa.C.S.A. §8302.   Plaintiff Bracha Strimber, as the surviving spouse of Abraham Strimber, also brings this action individually.

II.    JURISDICTION AND VENUE

    2.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states as plaintiff, Bracha Strimber, Decedent's surviving spouse, is a resident of the state of Maryland.   In addition, Plaintiff, Gary B. Freedman, Esquire, the Administrator of Decedent's estate, is deemed a citizen of Maryland for the purposes of diversity jurisdiction pursuant to 28 U.S.C. §1332(c)(2), as the Decedent was a citizen of Maryland at the time of his death on 2/22/2012.

    3.    Venue in the Eastern District of Pennsylvania is proper as at least one (1) of the defendants resides in this District and a substantial part of the

Case 2:13-cv-03145-WD   Document 42-2   Filed 05/05/14   Page 55 of 36

events or omissions giving rise to the claim occurred in this District.

III.   PARTIES

4.     Plaintiff, Gary B. Freedman, Esquire, is an attorney licensed to practice law in the Commonwealth of Pennsylvania and is the personal representative/Administrator of the Estate of Abraham Strimber, pursuant to Letters of Administration issued by the Register of Wills for Philadelphia County on 11/14/2012, with an address of 7909 Bustleton Avenue, Philadelphia, Pennsylvania.

5.     Plaintiff, Bracha Strimber, is an adult individual and the surviving spouse of the Decedent, Abraham Strimber, residing at 3117 Northbrook Road, Pikesville, Maryland.

6.     Defendant, Steven Fisher, M.D., (hereafter "Dr. Fisher"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in emergency medicine, and has a principal place of business at c/o Abington Emergency Physicians Associates, AMH Trauma Center, 1200 Old York Road, Abington, Pennsylvania.   At all times material and relevant hereto, Dr. Fisher was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

7.     Defendant, Margot Turner, M.D., (hereafter "Dr. Turner"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in

Case 2:13-cv-03145-WD   Document 42   Filed 05/05/14   Page 66 of 336

Internal Medicine, and has a principal place of business at c/o Abington
Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania.   At all times
material and relevant hereto, Dr. Turner was the employee and/or agent
and/or ostensible agent and/or apparent agent of each of the other defendants
in this matter, and his negligent acts and/or omissions are imputed to said
defendants.   Plaintiff is asserting a professional liability claim against this
defendant.

8.   Defendant Manoj R. Muttreja, M.D., (hereafter "Dr. Muttreja"), is
an adult individual and licensed physician who at the time of the alleged
negligence on 2/22/2012, set forth more fully herein, purported to specialize in
Cardiology, and has a principal place of business at c/o Abington Medical
Specialists Association, P.C., d/b/a Abington Medical Specialists and d/b/a
AMS Cardiology, 1235 Old York Road, Levy Medical Plaza, Suite 222, Abington,
Pennsylvania.   At all times material and relevant hereto, Dr. Muttreja was the
employee and/or agent and/or ostensible agent and/or apparent agent of each
of the other defendants in this matter, and his negligent acts and/or omissions
are imputed to said defendants.   Plaintiff is asserting a professional liability
claim against this defendant.

9.   Defendant Abington Medical Specialists Association, P.C., d/b/a
Abington Medical Specialists, and/or d/b/a AMS Cardiology, (hereafter
AAMS@), is a corporation, fictitious name, or other similar entity, organized
and/or existing under the laws of the Commonwealth of Pennsylvania, and is
engaged in the business of providing healthcare and related services to the

general public, and at all times material and relevant hereto maintained a

principle place of business at 1235 Old York Road, Levy Medical Plaza, Suite

222, Abington, Pennsylvania.   At all times material and relevant hereto said

defendant acted through its agents, ostensible agents, servants, workmen,

and/or employees, specifically including Dr. Watson and Dr. Muttreja, each of

whose negligent acts and/or omissions are imputed to AMS.   Plaintiff is

asserting a professional liability claim against this defendant.

10.    Defendant Abington Emergency Physicians Associates is a

corporation, fictitious name, or other similar entity, organized and/or existing

under the laws of the Commonwealth of Pennsylvania, and is engaged in the

business of providing healthcare and related services to the general public, and

at all times material and relevant hereto maintained a principle place of

business at c/o AMH Trauma Center, 1200 Old York Road, Abington,

Pennsylvania.   At all times material and relevant hereto said defendant acted

through its agents, ostensible agents, servants, workmen, and/or employees,

specifically including Dr. Fisher, whose negligent acts and/or omissions are

imputed to AMS.   Plaintiff is asserting a professional liability claim against this

defendant.

11.    Defendant Abington Memorial Hospital, (hereafter "AMH"), is, upon

information and belief, a corporation, or other entity, organized and/or existing

under the laws of the Commonwealth of Pennsylvania, and is engaged in the

business of providing healthcare and related services to the general public, and

at all times material and relevant hereto maintained a principle place of

business at 1200 Old York Road, Abington,   Pennsylvania.   At all times

Case 2:13-cv-03145-WD   Document 72   Filed 05/06/14   Page 8 of 36

material and relevant hereto, AMH acted through its agents, apparent agents, ostensible agents, servants, workmen, and/or employees, specifically including each defendant named herein, all of whose negligent acts and/or omissions are imputed to AMH.   Plaintiff is asserting a professional liability claim against this defendant.

12.    Defendant, Ritesh Rampure, M.D., (hereafter "Dr. Rampure"), is an adult individual and licensed physician, who at the time of the alleged negligence on 2/22/2012, set forth more fully herein, purported to specialize in Internal Medicine, and has a principal place of business at c/o Abington Memorial Hospital, 1200 Old York Road, Abington, Pennsylvania.    At all times material and relevant hereto, Dr. Rampure was the employee and/or agent and/or ostensible agent and/or apparent agent of each of the other defendants in this matter, and his negligent acts and/or omissions are imputed to said defendants.   Plaintiff is asserting a professional liability claim against this defendant.

IV.    ALLEGATIONS

13.    The paragraphs and allegations stated above are incorporated herein by reference and made a part hereof as if set forth in full.

14.    Decedent, Abraham Strimber, a 61 year old male, presented to the Abington Memorial Hospital Emergency Room at 11:42 a.m. on 2/22/2012 with multiple complaints, including the abrupt onset, after loading his car, of the sensation that he had a lid of a paint can that began in his epigastrum and slammed up into his jaw and then came down and continues to compress on his abdomen.

15.   The assessment performed by triage nurse Lori Ischinger, RN, at 11:45 a.m. stated that Decedent "here w/ c/o legs vibrating and and feels like is going to explode."   Nurse Ischinger is an agent of all defendants.

16.   Nurses Lynne Stelaris, R.N. and Perry Benedict, R.N. also provided emergency department triage and/or care to Decedent and they were agents of all defendants.

17.   Decedent reported his past medical history as significant for hypertension and mitral and aortic valve replacement.

18.   Cardiac valve replacement is a risk factor for an aortic aneurysm.

19.   The emergency department nursing assessment noted:

a.   A[patient] states he was walking up the driveway after loading things in the car felt >a rising metallic feeling like someone put a pain can in my stomachs and the lid was rising up into my throat=.   Wife states became pale and clammy.   Denies syncope. [Patient] had 2 episodes of diarrhea and + nausea.   C/o abd distention and pain radiating to back.@

b.   APatient denies chest pain@

c.   AAbdominal pain is diffuse, Pain radiates to back, Abdomen is distended@;

20.   Upon physical examination, Dr. Fisher noted the following findings:

a.   systolic click;

Case 2:13-cv-03145-WD   Document 42   Filed 05/05/14   Page 10 of 36

    b.    epigastric tenderness; and,

    c.    aortic pulsation;

21.    Additionally, Dr. Fisher noted that A[t]he exact precipitant of the Patient's pain remained unclear.   I was worried based upon his examination that he could have a AAA.   This did not appear to be the case.   The patient did not receive IV contrast as he has a significant allergy to IV dye.   Ultimately, the patient was admitted given our uncertainty as to the patient's pain.   He was clearly uncomfortable.   The patient's case was discussed at length with the hospitalist who admitted the patient.@

22.    Upon information and belief, the hospitalist who discussed the patient's case was an agent of Defendants.

23.    Dr. Turner performed a History & Physical at approximately 4:09 p.m. on 2/22/12 while Decedent was in the emergency department, and noted the following:

    a.    Chief Complaint: chest/epigastric/back pain, n/v/d@

    b.    that Decedent takes Warfarin at home in doses ranging from 5 to 7.5 mg daily dependent upon INR results, which increases the likelihood and severity of bleeding;

    c.    Lab results noting PTT of 40 and INR of 2.8

    d.    CT scan of abdomen and pelvis showed no *abdominal* aortic aneurysm or any evidence of dissection; and,

    e.    that Decedent had a history of valve replacement surgery;

24.    No thoracic CT scan was ever ordered or completed for Decedent.

Case 2:13-cv-03145-WD   Document 42-2   Filed 05/05/14   Page 11 of 36

25.    Warfarin is a blood thinning medication that worsens bleeding and the likelihood to bleed.

26.    At approximately 6:30 p.m., following Decedent's admission to the internal medicine service, he was seen and examined by Dr. Muttreja, a cardiologist.

27.    Dr. Muttreja's *Consultation Report* notes that the "Reason for Consult as Aback pain h/o AVR."

28.    Dr. Muttreja further noted that Decedent was admitted with Aback pain epigastric pain and that Decedent complained of AN/V + back pain.@

29.    Dr. Muttreja's assessment stated that Decedent was stable regarding his cardiovascular issues and that doubts acute coronary syndrome based upon cardiac markers and EKG, but recommended an echocardiogram.

30.    At approximately 8:31 p.m. on the evening of 2/22/2012, prior defendant Kristina Martinez, (herafter "NP Martinez"), was notified by the telemetry nurse of a Achange in condition@ of Decedent, specifically of a heart rate of 49 and ST changes.

31.    NP Martinez rendered care and treatment to Decedent as follows:

a.    ordering sublingual Nitroglycerin at 8:40 p.m.

b.    ordering aspirin at 9:01 p.m.

c.    ordering Decadron (Dexamethasone ) at 9:01 p.m.

d.    ordering Leukoreduced Packed Red Blood Cells at 9:01 p.m.

e.    an EKG, nitroglycerin, SL & cardiac enzymes later that evening.

32.   At approximately 9:34 p.m. Decedent was taken to the Cardiac Catheterization Lab for urgent catheterization.

33.   Dr. Watson arrived to perform the catheterization procedure at approximately 9:38 p.m.

34.   Dr. Watson found no obstructive coronary artery disease, however concluded that Decedent suffered [c]ardiogenic shock due to ruptured ascending aortic aneurysm with fistula to Right atrium/pericardium presumably and [p]ossible acute pericardial tamponade, and that the patient expired.

35.   Decedent's ascending aortic aneurysm was located in his thorax.

36.   Dr. Watson spoke with Dr. Garrido, a cardothoracic surgeon following his findings, but noted that it was futile to attempt to open this thorax.

37.   Following efforts at cardiopulmonary resuscitation, the patient was pronounced dead at 10:49 p.m.

38.   Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Turner, who consulted with defendant Ritesh Rampure, M.D., her attending, regarding the presentation of Abraham Strimber, as well as the plan and assessment for Abraham Straimber, both of whom had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

39.   At all times while Decedent was under the care of each and every defendant he was suffering from a thoracic aortic aneurysm and/or dissection.

40.    None of the defendants ordered, completed and/or performed a thoracic CT scan, chest x-ray, thoracic ultrasound, thoracic MRI, trans-esophogeal echocardiogram, or trans-thoracic echocardiogram upon Decedent nor did they timely diagnose an aortic aneurysm/dissesction.

### COUNT I - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF
### ABRAHAM STRIMBER AND BRACHA STRIMBER V. STEVEN FISHER, M.D.

41.    Paragraphs one (1) through forty (40) are incorporated by reference hereat as if set forth at length.

42.    At all time material and relevant hereto, defendant, Dr. Fisher, the agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Emergency Physicians Associates and/or Abington Memorial Hospital, failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and this negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

    a.    failing to properly diagnose Decedent;

    b.    failing to timely diagnose Decedent;

    c.    failing to properly treat Decedent;

    d.    failing to timely treat Decedent;

    e.    failing to timely diagnose an aortic aneurysm and/or dissection;

    f.    failing to timely treat an aortic aneurysm and/or dissection;

    g.    failing to timely order and obtain a surgical consultation;

    h.    failing to timely surgically treat an aortic aneurysm and/or

Case 2:13-cv-03145-WD   Document 42   Filed 05/06/14   Page 14 of 56

dissection;

i.    failing to timely medically treat an aortic aneurysm and/or dissection;

j.    failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k.    failing to properly appreciate Decedent's risks and complaints as potentially related to an aortic aneurysm and/or dissection;

l.    failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.    failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.    failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.    failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.    failing to order and obtain cardiothoracic surgical consult;

q.    failing to order and obtain a consult by a cardiologist;

r.    failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.    failing to order and obtain an ultrasound;

t.    failing to order and obtain a chest x-ray;

u.    failing to properly and/or timely intervene in Decedent's care

> to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.   failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.   failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

43.   The careless and negligent acts and/or omissions of Dr. Fisher, which acts and/or omissions are imputed to Abington Emergency Physicians Associates and/or Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent=s suffering the following injuries and damages:

a.   death;

b.   pain and suffering;

c.   past mental anguish;

d.   cardiac tamponade;

e.   loss of ability to enjoy the pleasures of life;

f.   financial loss, general expenses, funeral expenses, and bills;

g.   the loss of the Decedent=s companionship, guidance, nurture, and tutelage;

h.   as a result of the death of Abraham Strimber, his estate has been deprived of the economic value of his life expectancy,

and Plaintiffs herein claim damages for said pecuniary loss; and,

f.   such other valuables and damages as are appropriately allowed by Pennsylvania law under the Wrongful Death and Survival statutes, respectively, 42 Pa.C.S.A. §§8301, 8302.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT II - PROFESSIONAL NEGLIGENCE
## GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF
## ABRAHAM STRIMBER AND BRACHA STRIMBER V. MARGO TURNER, M.D.

44.   Paragraphs one (1) through forty-three (43) above are incorporated by reference hereat as if set forth at length.

45.   Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was examined and/or treated by Dr. Turner, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

46.   At all time material and relevant hereto, Dr. Turner was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and

her negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

a.   failing to properly diagnose Decedent;

b.   failing to timely diagnose Decedent;

c.   failing to properly treat Decedent;

d.   failing to timely treat Decedent;

e.   failing to timely diagnose an aortic aneurysm and/or dissection;

f.   failing to timely treat an aortic aneurysm and/or dissection;

g.   failing to timely order and obtain a surgical consultation;

h.   failing to timely surgically treat an aortic aneurysm and/or dissection;

i.   failing to timely medically treat an aortic aneurysm and/or dissection;

j.   failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k.   failing to properly appreciate Decedent's risks and complaints
     as potentially related to an aortic aneurysm and/or dissection;

l.   failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.   failing to order and/or perform a Trans-Esophageal

Case 2:13-cv-03145-WD   Document 42   Filed 04/05/14   Page 18 of 36

Echocardiogram (TEE);

n.  failing to order and/or perform a Trans-Thoracic
Echocardiogram (TTE);

o.  failing to order and/or perform an MRI or CT scan of
Decedent's chest/thorax;

p.  failing to order and obtain cardiothoracic surgical consult;

q.  failing to order and obtain a consult by a cardiologist;

r.  failing to recognize the signs, symptoms, and risk factors of a
thoracic aortic aneurysm and/or dissection;

s.  failing to order and obtain an ultrasound;

t.  failing to order and obtain a chest x-ray;

u.  failing to properly and/or timely intervene in Decedent's care
to prevent his aortic aneurysm and/or dissection from
bleeding and/or rupturing;

v.  failing to properly and/or timely intervene in Decedent's care
to prevent his death; and

w.  failing to timely and/or properly communicate with other
physicians/nurses regarding the care and treatment of
Decedent.

47.  The careless and negligent acts and/or omissions of Dr. Turner,
which acts and/or omissions are imputed to Abington Memorial Hospital,
deviated from accepted standards of medical care, increased the risk of harm to
the Decedent, and/or was a substantial factor and/or was a factual cause of

Case 2:13-cv-03145-WD   Document 42   Filed 05/05/14   Page 19 of 36

said Decedent's   suffering the injuries and/or damages set forth in ¶43 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT III - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. MANOJ R. MUTTREJA, M.D.

48.    Paragraphs one (1) forty-seven (47) above are incorporated by reference hereat as if set forth at length.

49.    At all time material and relevant hereto, defendant Dr. Muttreja was the agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology and/or Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

        a.    failing to properly diagnose Decedent;

        b.    failing to timely diagnose Decedent;

c.   failing to properly treat Decedent;

d.   failing to timely treat Decedent;

e.   failing to timely diagnose an aortic aneurysm and/or dissection;

f.   failing to timely treat an aortic aneurysm and/or dissection;

g.   failing to timely order and obtain a surgical consultation;

h.   failing to timely surgically treat an aortic aneurysm and/or dissection;

i.   failing to timely medically treat an aortic aneurysm and/or dissection;

j.   failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

k.   failing to properly appreciate Decedent's risks and complaints
     as potentially related to an aortic aneurysm and/or dissection;

l.   failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.   failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.   failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.   failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.   failing to order and obtain cardiothoracic surgical consult;

q.   failing to order and obtain a consult by a cardiologist;

r.   failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.   failing to order and obtain an ultrasound;

t.   failing to order and obtain a chest x-ray;

u.   failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.   failing to properly and/or timely intervene in Decedent's care to prevent his death; and

w.   failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent.

50.   The careless and negligent acts and/or omissions of Dr. Manoj, which acts and/or omissions are imputed to Abington Emergency Physicians Associates and/or Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's suffering the injuries and/or damages set forth in ¶43 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical

Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or

d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or

Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or

severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT IV - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V.   ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., d/b/a   ABINGTON MEDICAL SPECIALISTS, and d/b/a AMS CARDIOLOGY

51.    Paragraphs one (1) through fifty (50) above are incorporated

by reference hereat as if set forth at length.

52.    Defendant AMS is vicariously responsible for the acts and/or

omissions of defendant Dr. Muttreja as detailed herein.

53.    Defendant AMS is vicariously responsible for the acts and/or

omissions of its known and unknown agents, workmen, servants, and/or

employees who provided negligent care and treatment to decedent Abraham

Strimber.

54.    All allegations asserted against Dr. Muttreja as detailed above are

incorporated herein by reference and made a part hereof as if set forth in full.

55.    The injuries and damages to decedent Abraham Strimber, his

Estate, and/or his widow, Bracha Strimber, were caused solely and wholly by

reason of the negligence of the defendants, as set forth more fully herein, and

were not caused or contributed thereto by any negligence on the part of

Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha

Strimber, respectfully demand judgment in their favor, and against Steven B.

Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical

Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or

d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or

Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or

severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT V - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ABINGTON EMERGENCY PHYSICIAN ASSOCIATES

56.     Paragraphs one (1) through fifty-five (55) above are incorporated

by reference hereat as if set forth at length.

57.     Defendant Abington Emergency Physician Associates is vicariously

responsible for the acts and/or omissions of defendant Dr. Fisher as detailed

herein.

58.     Defendant Abington Emergency Physician Associates is vicariously

responsible for the acts and/or omissions of its known and unknown agents,

workmen, servants, and/or employees who provided negligent care and

treatment to decedent Abraham Strimber.

59.     All allegations asserted against Dr. Fisher as detailed above

are incorporated herein by reference and made a part hereof as if set forth in

full.

60.     The injuries and damages to decedent Abraham Strimber, his

Estate, and/or his widow, Bracha Strimber, were caused solely and wholly by

reason of the negligence of the defendants, as set forth more fully herein, and

were not caused or contributed thereto by any negligence on the part of

Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT VI - VICARIOUS LIABILITY
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. ABINGTON MEMORIAL HOSPITAL

61.    Paragraphs one (1) through sixty (60) above are incorporated by reference hereat as if set forth at length.

62.    Defendant AMH is vicariously responsible for the acts and/or omissions of defendants Dr. Fisher, Dr. Turner, and Dr. Rampure as detailed herein.

63.    Defendant AMH is vicariously responsible for the acts and/or omissions of its known and unknown agents, workmen, servants, and/or employees who provided negligent care and treatment to decedent Abraham Strimber.

64.    All allegations asserted against Dr. Fisher, Dr. Turner, and Dr. Rampure, as detailed above are incorporated herein by reference and made a part hereof as if set forth in full.

65.    The injuries and damages to decedent Abraham Strimber, his

Case 2:13-cv-03145-WD   Document 42   Filed 05/06/14   Page 25 of 36

Estate, and/or his widow, Bracha Strimber, were caused solely and wholly by reason of the negligence of the defendants, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of Plaintiffs or Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT VII - CORPORATE NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER
### V. ABINGTON MEMORIAL HOSPITAL

66.     Paragraphs one (1) through sixty-five (65) above are incorporated by reference hereat as if set forth at length.

67.     The corporate negligence of defendant AMH consisted of the following:

> a.     A duty to select and retain only competent physicians, surgeons, residents, interns, nurses, technicians, and others who treated decedent Abraham Strimber, as described herein, including staff and/or employees that will ensure proper communication of all medical care and treatment, including emergency department care, and for enforcing

policies and/or procedures to protect and/or mitigate the
risk of harm to patients such as Abraham Strimber;

b.    A duty to use reasonable care in the maintenance of
safe and adequate emergency department equipment and
facilities for the treatment of decedent, Abraham Strimber;

c.    A duty to oversee all persons who practice medicine within
its walls as to patient care, in particular the duty to oversee
the physicians, surgeons, nurses, resident, interns,
technicians, and others who treated decedent Abraham
Strimber, as described herein, including staff and/or
employees that will ensure proper communication of
enforcing policies concerning protocol for medical conditions
such as decedent Abraham Strimber=s;

d.    A duty to formulate, adopt and enforce adequate rules and
policies to ensure quality care for patients, in particular to
have rules and policies to:

    i.    Ensure physicians, surgeons, residents, interns,
nurses, technicians, and/or other medical staff
perform and/or document timely and proper patient
assessments and/or evaluations;

    ii.    Ensure proper monitoring of patients while in the
emergency department;

    iii.    Ensure proper monitoring of patients following

admission from the emergency department;

iv.  Ensure that all orders are timely and properly carried
out;

v.  ensure that patient complaints are timely and
appropriately assessed and responded to;

vi.  Ensure that changes in a patient's condition, including
cardiovascular status and/or physical status are
timely and properly communicated to physicians,
surgeons, nurses, residents, interns, technicians,
aides, and/or other personnel responsible for patient
medical care and/or treatment;

vii.  Ensure policies and/or procedures and their
enforcement concerning the admission of patients from
the emergency department without a proper plan
and/or diagnosis;

viii.  Ensure proper and timely communication and/or
consultation of physicians;

ix.  Ensure proper training and supervision of emergency
department staff;

x.  Ensure proper training and supervision of hospitalists,
interns, residents, and specialists; and,

xi.  Ensure the use of proper diagnostic tools for
emergency  department physicians, hospitalists,

Case 2:13-cv-03145-WID   Document 42   Filed 05/05/14   Page 28 of 36

interns, residents, nurses, and other medical staff.

68.  The carelessness and negligence of defendant AMH as set forth above increased the risk of harm and was a substantial factor and/or factual cause in causing the injuries and damages suffered by Plaintiffs and decedent Abraham Strimber as set forth more fully herein.

69.  Defendant AMH had actual and/or constructive knowledge of its failures, carelessness, and/or negligence as described above.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

**COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; RITESH RAMPTURE, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL**

70.  Paragraphs one (1) through sixty-nine (69) above are incorporated by reference hereat as if set forth at length.

71.  At the time of the aforesaid incident of 2/22/2012, plaintiff Bracha Strimber was the wife of decedent Abraham Strimber.

72.  Plaintiff Bracha Strimber was present throughout the entirety of

Case 2:13-cv-03145-WD   Document 272   Filed 06/05/14   Page 29 of 36

the care and treatment rendered by the defendants herein while her husband, Abraham Strimber, was a patient at Abington Memorial Hospital on 2/22/2012, and observed the care, treatment, pain, suffering, anguish, and fear suffered by Abraham Strimber.

73.   As a direct and proximate result of the defendants' negligence and Bracha Strimber's sensory and contemporary observation of the care, treatment, pain, suffering, anguish, and fear of her husband, said plaintiff suffered and experienced severe emotional distress and extreme mental pain and suffering.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT IX – LOSS OF CONSORTIUM
### BRACHA STRIMBER V. STEVEN B. FISHER, M.D.; MARGO TURNER, M.D.; RITESH RAMPURE, M.D.; MANOJ R. MUTTREJA, M.D.; ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND/OR D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIANS ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL

74.   Paragraphs one (1) through seventy-three (73) above are incorporated by reference hereat as if set forth at length.

75.   Plaintiff Bracha Strimber in her individual capacity bring this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. §8301 and

Case 2:13-cv-03145-WD   Document 4272   Filed 05/06/14   Page 33 of 36

Pa.R.C.P. 2202(a)

76.   As a result of the negligence of the defendants herein, plaintiff Bracha Strimber has and will continue to suffer the loss of the services, support and consortium of her spouse, decedent Abraham Strimber.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

## COUNT X - PROFESSIONAL NEGLIGENCE
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER V. RITESH RAMPURE, M.D.

77.   Paragraphs one (1) through seventy-six (76) above are incorporated by reference hereat as if set forth at length.

78.   Following Decedent's admission to the Internal Medicine service at Abington Memorial Hospital, he was treated by Dr. Rampure, who had access to Decedent's hospital chart that was created upon arrival in the Abington Memorial Hospital Emergency Department.

79.   Specifically, Dr. Turner telephone Dr. Rampure, who was her attending, and presented Mr. Strimber's case to him, including discussing her History & Physical, symptoms, and laboratory studies.

80.   Dr. Rampure then advised Dr. Turner to cancel the cardiology

consult that she had previously requested.

81.     At all times material and relevant hereto, Dr. Rampure was an agent, ostensible agent, apparent agent, workman, employee, and/or servant of Abington Memorial Hospital, and failed to exercise the care, skill, and/or judgment of a reasonable healthcare provider under the circumstances, and his negligent and careless acts and/or omissions fell below the applicable standard of care in the following manner:

   a.     failing to properly diagnose Decedent;

   b.     failing to timely diagnose Decedent;

   c.     failing to properly treat Decedent;

   d.     failing to timely treat Decedent;

   e.     failing to timely diagnose an aortic aneurysm and/or dissection;

   f.     failing to timely treat an aortic aneurysm and/or dissection;

   g.     failing to timely order and obtain a surgical consultation;

   h.     failing to timely surgically treat an aortic aneurysm and/or dissection;

   i.     failing to timely medically treat an aortic aneurysm and/or dissection;

   j.     failing to order and/or complete proper radiology studies to evaluate Decedent's complaints;

   k.     failing to properly appreciate Decedent's risks and complaints
          as potentially related to an aortic aneurysm and/or

dissection;

l.     failing to order and/or perform a CT scan of Decedent's chest/thorax;

m.    failing to order and/or perform a Trans-Esophageal Echocardiogram (TEE);

n.     failing to order and/or perform a Trans-Thoracic Echocardiogram (TTE);

o.     failing to order and/or perform an MRI or CT scan of Decedent's chest/thorax;

p.     failing to order and obtain cardiothoracic surgical consult;

q.     failing to order and obtain a consult by a cardiologist;

r.     failing to recognize the signs, symptoms, and risk factors of a thoracic aortic aneurysm and/or dissection;

s.     failing to order and obtain an ultrasound;

t.     failing to order and obtain a chest x-ray;

u.     failing to properly and/or timely intervene in Decedent's care to prevent his aortic aneurysm and/or dissection from bleeding and/or rupturing;

v.     failing to properly and/or timely intervene in Decedent's care to prevent his death;

w.    failing to timely and/or properly communicate with other physicians/nurses regarding the care and treatment of Decedent; and,

x.     failing to personally see and examine Decedent.

82.    The careless and negligent acts and/or omissions of Dr. Rampure, which acts and/or omissions are imputed to Abington Memorial Hospital, deviated from accepted standards of medical care, increased the risk of harm to the Decedent, and/or was a substantial factor and/or was a factual cause of said Decedent's  suffering the injuries and/or damages set forth in ¶43 above and incorporated by reference hereat.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha Strimber, respectfully demand judgment in their favor, and against Steven B. Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or severally, in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT XI – VIOLATION OF EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT, 42 U.S.C. §1395dd
### GARY B. FREEDMAN, ESQUIRE, ADMINISTRATOR OF THE ESTATE OF ABRAHAM STRIMBER AND BRACHA STRIMBER
### V. ABINGTON MEMORIAL HOSPITAL

83.    Paragraphs one (1) through eighty-two (82) above are incorporated by reference hereat as if set forth at length.

84.    Defendant Abington Memorial Hospital violated § 1395dd(a) of EMTALA on 2/22/2012 in order to determine if Decedent Abraham Strimber was suffering from an "emergency medical condition;" specifically, said Defendants and/or their employees, servants, workmen, agents, and/or ostensible agents:

a.   failed to conduct a full and complete medical screening examination;

b.   performed an inadequate triage examination without an appropriate complete medical screening examination;

c.   treated Abraham Strimber disparately from other similarly situated patients;

d.   departed from their standard medical screening examination of patients with complaints and symptoms similar to those of Abraham Strimber;

e..   failed to timely determine whether or not an emergency medical condition existed;

f.   failed to adhere to their own standard policies, procedures and/or protocols for patients entering the Emergency Department in similar medical circumstances;

g.   failed to perform a medical screening examination within the capabilities of the defendant hospitals' Emergency Department and ancillary services; and

h.   otherwise departed from appropriate standards of care as described herein.

85.   Had such an appropriate screening examination been performed, his thoracic aortic aneurysm/dissection that was placing his life, health, body and/or organ function in serious jeopardy would have been discovered and

appropriately treated.

86.    In the alternative, at the time Abraham Strimber presented to

Abington Memorial Hospital's Emergency Department on 2/22/2012, he was

suffering from an emergency medical condition, i.e., a thoracic aortic

aneurysm/dissection, that put his life and health in jeopardy, placed him at

risk for a serious impairment of a body function, placed him at risk for the

serious dysfunction of a body organ, to wit, his heart/thoracic aorta.

87.    Dr. Fisher and/or Dr. Turner and/or Dr. Rampure and/or the

employees, agents, staff, nurses, or other medical providers who cared for Mr.

Strimber during his Emergency Department visit at Abington Memorial

Hospital on 2/22/2012, failed to stabilize Mr. Strimber and/or to transfer him

to another hospital for further appropriate treatment.

88.    In addition, the screening procedure used at Abington Memorial

Hospital as of 2/22/2012 for patients complaining of, *inter alia*, chest pain,

was not reasonably calculated to identify critical medical conditions.

89.    In the alternative, the screening procedure used at Abington

Memorial Hospital as of 2/22/2012 for patients complaining, *inter alia,* of chest

pain, was not applied uniformly, *i.e.*, to Mr. Strimber, as to others who present

to the Emergency Department with substantially similar complaints/scenarios.

90.    As a result of the foregoing violations of EMTALA by Abington

Memorial Hospital, and/or its employees, servants, workmen, agents and/or

ostensible agents, Plaintiffs and/or Decedent Abraham Strimber suffered the

losses and damages set forth above in detail.

WHEREFORE, Plaintiffs, Gary B. Freedman, Esquire, and Bracha

Strimber, respectfully demand judgment in their favor, and against Steven B.

Fisher, M.D., Margo Turner, M.D, Manoj R. Muttreja, M.D., Abington Medical

Specialists Association, P.C., d/b/a Abington Medical Specialists, and/or

d/b/a AMS Cardiology, Abington Emergency Physicians Associates, and/or

Abington Memorial Hospital, and/or Ritesh Rampure, M.D., jointly and/or

severally, in an amount in excess of $75,000, exclusive of interest and costs.

Respectfully submitted,


By:      _____
         H. Leon Aussprung, III, M.D., Esquire
         James E. Hockenberry, Esquire
         *Counsel for Plaintiffs*

# EXHIBIT "B"

Case 2:13-cv-03145-WD   Document 42-1   Filed 08/06/14   Page 2 of 6

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

GARY B. FREEDMAN,            :
ESQUIRE, Administrator : NO.
of the ESTATE OF       : 2:13-cv-3145-CDJ
ABRAHAM STRIMBER,            :
deceased                     :
and                          :
BRACHA STRIMBER,             :
                             :
            Plaintiffs, :
                             :
            v.               :
                             :
STEVEN FISHER, M.D.,         :
et al.,                      :
                             :
            Defendants. :

- - -

Tuesday, March 18, 2014

- - -

            Videotape deposition of
MARGO E. TURNER, M.D., taken pursuant to
notice, was held at the law offices of
Christie, Pabarue & Young, 1880 JFK
Boulevard, 10th Floor, Philadelphia,
Pennsylvania, commencing at 10:40 a.m.,
on the above date, before Amy M. Murphy,
a Professional Court Reporter and Notary
Public there being present.

- - -

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com

MAGNA LEGAL SERVICES



Case 2:13-cv-03145-WD   Document 42-3   Filed 08/05/14   Page 3 of 6

Page 62

1    Q.   And in the case of Mr.
2   Strimber, that was whoever was attending
3   on the Green team that day?
4    A.   That's correct.
5    Q.   Because they were the ones
6   taking admissions?
7    A.   That's correct.
8    Q.   And my understanding, from
9   conversations among Counsel, is that that
10  attending was a Dr. Rampure that day?
11   A.   That's correct.
12   Q.   Is that your recollection?
13   A.   Yes.
14   Q.   Just going down the list,
15  there's an order that you wrote that says
16  "Doc to Nurse." What is that?
17   A.   It doesn't say what that
18  order is, so.
19   Q.   Do you have an understanding
20  of what it is?
21   A.   I would have to see the
22  order that I gave to interpret that. It
23  doesn't say it. If we match that time to
24  orders, we might be able to discern what

Page 63

1   happened at 16:01.
2    Q.   Is there somewhere else that
3   there are orders written concerning these
4   things other than here?
5    A.   I see medication orders
6   follow. And if I can match something to
7   that time I could perhaps -- that says
8   16:01. I see a 16:04 order entered for
9   Zofran. And it could be that the nurse
10  asked me a question, told me it was --
11  you know, he was feeling nauseated, and I
12  said, okay, I'm going to put an order in
13  for Zofran, and that order appeared three
14  minutes later.
15   Q.   So, it could be the doc to
16  nurses kind of a way that they chart a
17  normal order?
18   A.   Yes.
19   Q.   We're not sure, but I
20  understand what you're saying.
21       All right. Going onto the
22  next page, the first one I have on my
23  page is 02 therapy by cannula?
24   A.   Yes.

Page 64

1    Q.   You placed the patient on
2   oxygen?
3    A.   Yes.
4    Q.   Why?
5    A.   I don't recall.
6    Q.   What was the patient's
7   oxygen saturation in the emergency
8   department; did you know?
9    A.   I would have to look at it
10  to see that number.
11   Q.   You can look.
12   A.   I do not see an O2 set
13  recorded in the place where vital signs
14  where that normally would appear.
15       MR. CAMHI:  There's a whole
16   list of them.
17       THE WITNESS:  Which page?
18       MR. YOUNG:  On the second
19   page.
20       MR. CAMHI:  Yeah.
21       THE WITNESS:  Second page of
22   this?
23  BY MR. AUSSPRUNG:
24   Q.   Yes.

Page 65

1        MR. CAMHI:  Under the
2   heading of "vital signs."
3        THE WITNESS:  I have it,
4   okay. 02 set, okay. I see those,
5   yes.
6   BY MR. AUSSPRUNG:
7    Q.   So, I see that there are at
8   least four 02 stats reported at range
9   between 94 percent and 97 percent;
10  correct?
11   A.   Yes.
12   Q.   Is it your understanding
13  that those oxygen saturation levels were
14  done on room air?
15   A.   It says "room air" beside
16  it.
17   Q.   Okay. So, did the patient
18  have an abnormal AA gradient?
19   A.   No.
20   Q.   So the patient had normal
21  oxygen saturations on room air; correct?
22   A.   Yes.
23   Q.   So why did you order oxygen?
24   A.   I do not recall.

MAGNA

Case 2:13-cv-03145-WD   Document 42-1   Filed 08/06/14   Page 4 of 6

Page 90

1  cardiology consult, you'll see that it
2  happened long before I wrote this in my
3  note about adding it -- I mean, about it
4  being done. So, it was done hours
5  before. I ordered a cardiology consult
6  on admission. When I talked to
7  Dr. Rampure about it and presented Mr.
8  Strimber's case to him, he told me he
9  didn't think we needed a cardiology
10  consult and asked me to take it out,
11  which I did. But I'm thankful that the
12  cardiology consult was done before I took
13  it out. So when I went to Mr. Strimber
14  when he got into trouble and I looked at
15  the chart, the cardiology consult was
16  there. So, it was done.
17      Q.   So, at 4:15 when you
18  initially wrote your comments,
19  assessment, and plan, you included
20  consult cardiology?
21      A.   Yes.
22      Q.   Then you spoke to
23  Dr. Rampure and he asked you to take that
24  out of your order set?

Page 91

1      A.   Yes.
2      Q.   And so then when you edited
3  it at 8:20 p.m., you removed that?
4      A.   Perhaps that's the
5  difference in things then.
6      Q.   Okay.
7      A.   But it had been done.
8      Q.   We received an affidavit
9  from Dr. Rampure basically just saying he
10  doesn't have any memory of the events.
11      How many conversations do
12  you recall having with Dr. Rampure about
13  Mr. Strimber and his care?
14      A.   Two.
15      Q.   Let's talk about the first
16  conversation.
17      THE VIDEOGRAPHER: The time
18  is 12:01 p.m. We are off the
19  record.
20      (Off video record.)
21      THE VIDEOGRAPHER: The time
22  is 12:02 p.m. We are back on the
23  record.
24      THE WITNESS: I was

Page 92

1  answering my two conversations
2  with Dr. Rampure.
3  BY MR. AUSSPRUNG:
4      Q.   Correct. So, what can you
5  tell me about the first conversation you
6  had with Dr. Rampure?
7      A.   The first conversation was
8  after seeing Mr. Strimber, doing his
9  history and physical, formulating his
10  orders and my plan, I then called the
11  attending physician whose services he's
12  being admitted to say, and I present this
13  patient, this is what I have, his
14  symptoms, my exam, the laboratory
15  studies, and my plan.
16      Q.   Is that your general routine
17  or is that your actual memory?
18      A.   No. That's a routine that
19  has to be done at every admission at
20  Abington.
21      Q.   What do you actually
22  remember about your conversation with
23  Dr. Rampure that first time?
24      A.   I remember all of it. I

Page 93

1  remember it.
2      Q.   You remember doing --
3      A.   I remember doing it. I
4  remember it, yes.
5      Q.   And did Dr. Rampure ask you
6  any specific questions on that first
7  phone call?
8      A.   I don't recall specific
9  questions.
10      Q.   Was that initial interaction
11  with Dr. Rampure on the phone?
12      A.   It was on the phone.
13      Q.   Do you remember any
14  instructions or orders he gave you to
15  carry out?
16      A.   Yes. He agreed with the
17  plan but he just said I don't think we
18  need a cardiology consult so do you mind
19  taking that out. And I said I would
20  remove it.
21      Q.   Anything else you recall
22  about that first telephone call?
23      A.   We went everything was
24  routine. We were all right. I don't

24 (Pages 90 to 93)



MAGNA
LEGAL SERVICES

Page 94

1  recall anything specific about that. It
2  was our regular way of communicating
3  about new admissions.
4      Q.  Do you have any sense as to
5  what time that phone call occurred at?
6      A.  I don't. I could estimate
7  that it was a little bit after the orders
8  were entered cause I usually -- but the
9  orders have different times and that kind
10  of thing. It's hard to tell. But
11  sometime after I admitted Mr. Strimber
12  before 7 o'clock. Sometime after I put
13  the initial things in:
14      Q.  Would it have been after you
15  entered your history and physical into
16  the computer?
17      A.  It didn't have to be. It
18  might have been before.
19      Q.  So you don't really know
20  what time between 4 p.m. and 7 p.m. that
21  conversation occurred?
22      A.  I don't recall that time.
23      Q.  Okay. You said there was a
24  second conversation with Dr. Rampure?

Page 95

1      A.  Yes.
2          MR. AUSSPRUNG:  Rampure is
3  R-A-M-P-U-R-E.
4          THE WITNESS:  And that was
5  --
6  BY MR. AUSSPRUNG:
7      Q.  Tell me about the second
8  conversation.
9      A.  The second conversation was
10  to inform him that a patient admitted to
11  his service, Mr. Strimber, had had a
12  change in status and had changed from a
13  person who was stable with abdominal
14  symptoms now had a change in status.
15      Q.  Do you know what time that
16  phone call occurred at?
17      A.  I'm going to say it must
18  have happened sometime after 8:10 because
19  that's the time I see in the chart that I
20  recall to be clear to me that the nurse
21  calls that there's a problem with Mr.
22  Strimber.
23      Q.  If it was sometime after
24  8:10 when you had the second conversation

Page 96

1  with Dr. Rampure, why is it that you
2  didn't make your change and remove the
3  cardiology consult until 8:20 p.m.?
4      A.  I had other things that I
5  was involved in, other things, others
6  orders of patients.
7      Q.  What do you recall informing
8  Dr. Rampure during the second phone call?
9  Do you recall what you told him?
10      A.  I recall that I told him
11  that he had an EKG which looked acute,
12  like he was having acute MI, that I was
13  going to activate the cardiac cath lab,
14  and we would get back to him in a little
15  bit to tell him what the outcome of those
16  things were.
17      Q.  Anything else you remember
18  telling him in that second call?
19      A.  No.
20      Q.  Did he instruct you to do
21  anything in that second call?
22      A.  He did not. I did tell him
23  that the cardiology consult was done, you
24  asked me to take it out but it was done.

Page 97

1  We talked about the cardiologist's
2  recommendations and we left it there.
3  But I did inform him of that.
4      Q.  When did you first learn the
5  cardiology consult had been completed?
6      A.  When I went to see Mr.
7  Strimber when he developed an acute
8  change.
9      Q.  So that was sometime around
10  8:10, I think you said?
11      A.  Or after.
12      Q.  Did you ever speak to the
13  cardiologist who did the cardiology
14  consult?
15      A.  I did not.
16      Q.  Did you have an
17  understanding as to what the
18  cardiologist's recommendations were after
19  he did the consult?
20      A.  When I read it, yes, I did.
21      Q.  And that was sometime after
22  13:10?
23      A.  Yes.
24      Q.  I'm sorry, 8:10 p.m.

Case 2:13-cv-03145-WD   Document #23   Filed 06/30/14   Page 0 of 0

Page 98

1    A.  Yes.
2    Q.  What was your understanding
3  as to what the cardiologist wanted?
4    A.  May I take a look at the
5  cardiology consult?
6    Q.  Yes. I'll mark it for us
7  and we can all look at it together.
8    - - -
9    (Whereupon, Exhibit Turner-8
10  was marked for identification.)
11    - - -
12    MR. AUSSPRUNG: I'm marking
13  it as Exhibit-8.
14    THE WITNESS: I remember
15  that evening quickly focusing my
16  eye on the assessment, plan, and
17  recommendations when I went over.
18    MR. AUSSPRUNG: I'm sorry.
19  Could you just read back that
20  answer? I didn't hear.
21    - - -
22    (Whereupon, the pertinent
23  portion of the record was read.)
24    - - -

Page 99

1  BY MR. AUSSPRUNG:
2    Q.  Okay. What was your
3  understanding as to what the
4  cardiologist's assessment, plan, and
5  recommendations were?
6    A.  That he did not identify any
7  acute cardiovascular issues. He wrote
8  doubt ACS by enzymes and EKG. Some of
9  the writing is difficult to read the next
10  line, but he recommended checking an
11  echocardiogram or stress test. And I
12  think that might say either for the
13  patient or for the a.m. I can't read that
14  last word. And it says INR, in range.
15    So, my impression of reading
16  his consult was he did not identify any
17  acute cardiovascular issues and was
18  agreeing with the plan to check serial
19  EKGs and enzymes.
20    Q.  I want to focus on that
21  third line.
22    A.  Yes.
23    Q.  What's that first word?
24    A.  I think that says sent

Page 100

1  enzymes and EKG. I think that says
2  "sent." That orders have been placed for
3  the enzymes and the EKG. I think that's
4  what that says.
5    Q.  I'm sorry. So go two lines
6  below that.
7    A.  You're going to -- oh,
8  you're at the bottom; right?
9    Q.  Right. The second to the
10  last line.
11    A.  Second to the last line.
12    Q.  What is the first word
13  there?
14    A.  I don't know.
15    Q.  What is the second word
16  there?
17    A.  Need to check echo or stress
18  for, and I don't know what that last word
19  is. I don't know what that first letter
20  is.
21    Q.  So you weren't sure what
22  that recommendation was?
23    A.  I could read echo or stress
24  test. So, I would take from that that he

Page 101

1  was suggesting we order an echo or stress
2  test.
3    Q.  An echo would have revealed
4  a thoracic aortic aneurysm; correct?
5    A.  It would have. Now, he
6  didn't call me to tell me that. This was
7  placed on the chart -- left on the chart
8  for us to read when we saw him. So, no
9  one called to say, Dr. Turner, get that
10  echo right now. And if the cardiologist
11  wanted that, he would have ordered it
12  right then anyway; so. He wrote that in
13  recommendation for us to look at when he
14  was -- the next person was going to see
15  him, if things were going per usual,
16  would have been Dr. Rampure the next day
17  when he came to evaluate him. He would
18  have seen this and ordered the echo.
19    If he wanted it immediately,
20  he would have called me to say he wanted
21  the echo, and either I or he would have
22  ordered it. We can ask him what that
23  first letter might say right there.
24    Q.  I'll mark this document as

**MAGNA** ◐
Legal Services

# EXHIBIT "C"

| Name | 20.  <font color=//8B008B>(Protocol) Chest Pain |
|------|-----|
| Type | Clinical Pathway |
| Status | Active |

| Record Started | Sat Nov 06, 2010 00:55 by 0 | Record Changed | Tue May 24, 2011 11:20 by Judith M. Mack |
|---|---|---|---|

### Laboratory

| | | | |
|---|---|---|---|
| 02620 | Basic Metabolic Panel | 185 | Cardiac BNP |
| 02760 | Cardiac Troponin | 03400 | CBC/Diff/Platelets |
| 02620 | CK w/Reflexive MB | 00580 | Digoxin Level |
| 03255 | Protime | | |

### Nursing

| | | | |
|---|---|---|---|
| NURE C0030 | Blood Pressure - BILATERAL | NURE C0019 | Cardiac Monitor |
| NURE C0121 | Infusor - Insert | NURE C0174 | O2 Therapy Cannula |
| NURE C0266 | Pulse Ox Monitor | | |

### Cardiology

| | |
|---|---|
| 30500 | EKG 12 Lead - Chest Pain |

### General Radiology

| | | | |
|---|---|---|---|
| 00280 | Chest - 2 Views (PA-LAT) Chest Pain | 88055 | Chest Portable - Chest Pain |
| NURE C0816 | Blood Glucose Monitor POC | | |

SVC   CPT   ICD-9   ICD-10   MED   Combo Med

# EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| GARY B. FREEDMAN, ESQUIRE, Administrator of the ESTATE OF ABRAHAM STRIMBER, Deceased  and  BRACHA STRIMBER  v.  STEVEN FISHER, M.D., MARGO TURNER, M.D., KRISTINA A. MARTINEZ, CRNP, MANOJ R. MUTTREJA, M.D., ABINGTON MEDICAL SPECIALISTS ASSOCIATION, P.C., D/B/A ABINGTON MEDICAL SPECIALISTS AND D/B/A AMS CARDIOLOGY, ABINGTON EMERGENCY PHYSICIAN ASSOCIATES AND ABINGTON MEMORIAL HOSPITAL | No. 2:13-cv-03145-CDJ |

---

### AFFIDAVIT OF RITESH J. RAMPURE, M.D.

I, Ritesh J. Rampure, M.D., being duly sworn, depose and state the following:

1.     I was the attending physician for the Department of Medicine Green Service on February 22, 2012 at Abington Memorial Hospital at or around the time that Abraham Strimber was admitted for observation.

2.     On February 22, 2012, I was an employee of Abington Memorial Hospital, and I remain an employee of Abington Memorial Hospital as of the making of this Affidavit.

3.     To the best of my knowledge, I was not physically present in the hospital when the patient was admitted for observation by Dr. Margo Turner, who was providing coverage services for the Department of Medicine Green Service.

4.     I did not examine, treat, consult, or see Abraham Strimber prior to his death on February 22, 2012.

5.     I have no recollection of the substance of any conversation with any defendant in this case, including Dr. Margo Turner, Dr. Steven Fisher, and Dr. Manoj Muttreja.

6.     To the best of my knowledge, I made no recommendations and offered no opinions to any other physician regarding the care of Abraham Strimber on February 22, 2012.

7.     Based upon my review of the medical records as well as my review of my schedule for February 22, 2012, I had no involvement in the care or treatment of Abraham Strimber after he was admitted to Abington Memorial Hospital for observation on February 22, 2012.

8.     Based on my review of the Abington medical chart, I wrote no progress notes nor did I make any other entries in the patient's chart.

9.     This affidavit is made to the best of my knowledge, information and belief.

_____
RITESH J. RAMPURE, M.D.


SWORN AND SUBSCRIBED
BEFORE ME THIS 19th DAY
OF FEBRUARY, 2014

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LATOYA ANN RICHIE, Notary Public
Abington Twp., Montgomery County
My Commission Expires October 9, 2016

2

JENNA WIERCINSKI,

                          Plaintiff,

                vs.

STEVEN B. COHEN, M.D., et al,

                          Defendants.

IN THE COURT OF COMMON PLEAS
DELAWARE COUNTY

NO. 11-9465

## O R D E R

AND NOW, this _1st_ day of _May_, 2014, upon consideration of the parties' *Stipulation to Discontinue as to Defendants Arjun Saxena, M.D., Thomas Jefferson University Hospitals, Inc., Jefferson University Physicians And Thomas Jefferson University*, it is hereby **ORDERED** and **DECREED** that Defendants, Arjun Saxena, M.D., Thomas Jefferson University Hospitals, Inc. (named by Plaintiff as "Thomas Jefferson University Hospital"), Jefferson University Physicians and Thomas Jefferson University, are hereby dismissed with prejudice consistent with said Stipulation.

It is further **ORDERED** and **DECREED** that the caption is hereby amended to remove the names of Arjun Saxena, M.D., Thomas Jefferson University Hospital, Jefferson University Physicians and Thomas Jefferson University.

BY THE COURT:

**G. MICHAEL GREEN** J.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARY FREEDMAN, et al.                     :                    CIVIL ACTION
              Plaintiffs        :
          v.                         :
                            :
STEVEN FISHER, M.D., et al.               :                    NO. 13-3145
            Defendants         :

**MEMORANDUM**

Ditter, J.                                                September 30, 2014

Presently before me is a motion for summary judgment filed by defendants Manoj

Muttreja, M.D., and Abington Medical Specialists Association, P.C., as to a wife's claim for the

negligent infliction of emotional distress arising from the death of her husband.  For the reasons

that follow, I will grant the defendants' motion for summary judgment.[1]

This action involves the alleged failure of hospital doctors to properly diagnose and treat

Abraham Strimber for a dissecting aorta[2] as a result of which he died.

Mr. Strimber presented to the emergency department at Abington Memorial Hospital

with a series of chest and abdominal complaints at approximately 11:40 a.m.  Within minutes

Mr. Strimber was evaluated by an emergency department nurse and then assigned to a primary

nurse.  Both nurses documented his complaints, their examinations, and their observations of Mr.

---

[1]  Defendants filed their motion on alternative grounds - as a motion to dismiss pursuant to
Federal Rules of Civil Procedure 12(b)(6) and 12© or as a motion for summary judgment pursuant to
Federal Rule of Civil Procedure 56.  Because I find that Plaintiff's claim for negligent infliction of
emotional distress states a claim under Pennsylvania law for which "relief can be granted," the motion to
dismiss is summarily denied.  See Fed.R.Civ.P. 12(b)(6), (c).

[2]  It may have been a ruptured ascending aorta aneurysm.  For the present purposes, at least, the
difference is unimportant.

Strimber.

At 12:23 p.m., Mr. Strimber was examined by an emergency department physician, Steven Fisher, M.D., who made a differential diagnosis and ordered extensive laboratory tests. At 2:27 p.m., Dr. Fisher admitted Mr. Strimber to the hospital for further observation.

Margo Turner, M.D., who specializes in internal medicine, next observed, examined, and ordered further testing.  She admitted Mr. Strimber to hospital care.  Mr. Strimber was next seen by Dr. Muttreja, a cardiologist, at 6:30 p.m.

At 8:30 p.m., the floor nurse alerted Dr. Turner to a dangerous change in Mr. Strimber's cardiac condition.  Shortly thereafter he was taken to the catheterization lab where testing revealed pericardial hemorrhage.  Mr. Strimber rapidly deteriorated and despite a series of emergency measures, he died at 10:49 p.m.

In summary, despite extensive testing, observation by several nurses, and treatment by three physicians[3] over the course of approximately 11 hours, Mr. Strimber died.

In addition to suits on behalf of Mr. Strimber's estate and Mrs. Strimber's loss of consortium claim, Mrs. Strimber sues for the negligent infliction of emotional distress (NIED) as a consequence of observing her husband from the time he came to the hospital until he died.

I am granting a defense motion for summary judgment as to this last claim.

The consequential emotional distress law (NIED) of Pennsylvania has developed as follows over the last several years:

1) although the plaintiff may not have suffered a physical injury, recovery is allowed when he or she was in close proximity to a traumatic event, typically an accident;

---

[3] There was also a telephone consultation with another cardiologist, Ritesh Rampure, M.D.

2) recovery is allowed if the plaintiff witnessed an accident that caused serious injury to a close family member; and

3) most recently, and still evolving, where a defendant owes the plaintiff a duty that arises from a contractual or fiduciary obligation.

Mrs. Strimber's claim is based on this most recent category. She alleges that she was present during the entire time of her husband's hospital care and treatment; observed his pain, suffering, anguish, and fear; and as a result "suffered and experienced severe emotional distress and extreme mental pain and suffering." *See Am. Comp.*, at ¶ 73.

In *Toney v. Chester County Hospital,* 36 A.3d 83 (Pa. 2011), an evenly divided Supreme Court of Pennsylvania affirmed a Superior Court's finding that plaintiff's allegations of resulting emotional distress withstood a motion to dismiss. In *Toney*, it was undisputed that defendants performed an ultrasound examination of the plaintiff and her unborn child. They interpreted and reported the results to the plaintiff as normal. However, when the plaintiff gave birth to a son several months later he had "profound physical abnormalities." *Id.* at 85. Plaintiff alleged that the defendants' misinterpretation of the ultrasound prevented her from preparing herself for the shock of witnessing her son's birth with such substantial physical deformities. *Id.* She did not allege that the misinterpretation of the ultrasound was in any way related to the child's deformities, nor did it alter or delay their treatment. *Id.*

Because the Supreme Court was evenly divided on the issue its decision has no precedential value. Nonetheless, the careful and detailed opinion of the justices who favored affirmance is persuasive authority.

The justices who favored affirmance concluded that a justification exists to extend NIED

liability "to a subset of cases involving preexisting relationships . . . involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach." *Toney*, 36 A.3d at 95.  The court further noted that "[t]he potential emotional harm must not be the type that a reasonable person is expected to bear. . . [rather the] [c]ompensable emotional harm has been described as 'likely to be experienced as a visceral and devastating assault on the self' such that it 'resemble[s] physical agony in its brutality.'" *Id.* (citations omitted).

 *Toney*, of course, involved the adequacy of pleadings.  Mrs. Strimber's claim involves the adequacy of the record.

 For the reasons that follow, I conclude that Mrs. Strimber's evidence does not satisfy any of *Toney's* requirements.

 There is no showing that Mrs. Strimber had any preexisting relationship with the hospital or any of the doctors, nor that any relationship developed during the 11 hours before Mr. Strimber died.  With one minor exception, there is no record of any conversations – no questions, suggestions, or comments from or to the doctors on their part or on her part.

 Mrs. Strimber's observations of Mr. Strimber's pain and fear are of a type that life's experiences often bring and are of a type that a reasonable person may be expected to bear.  There is nothing in the record to suggest that her observations were "a devastating assault on her self" akin to "physical agony in its brutality." *Toney*, 614 at 117.

 Moreover, there is nothing in the record to suggest that her presence when Mr. Strimber died had any extraordinary effect on Mrs. Strimber.

 The only exception to what I have said about her being involved with any of the health care professionals is recorded in her deposition:

-4-

**A.**    . . . I vaguely remember something about blood test and that my husband was going to have a CAT scan, but I don't remember which physician said that.

I do remember that later on in the evening she wanted to discharge him, we're going to discharge him now.  And I said, you can't do that.

I said, how do you know that he didn't have a heart attack because of all these symptoms? And she said, well, we could keep him overnight and could check his enzymes every eight hours and find out if he had a heart attack.

And I said, well, what would that do if you find out he had a heart attack?  Well, we'll have to wait and see.

So she sent him upstairs to a different room outside of the ER.  They were going to observe him.

And when everything turned bad, when all of a sudden I saw my husband turn ashen and go unconscious, that's when I yelled for help.

And people started sauntering in, joking, laughing out in the hallways, you know, the people that were coming into his room.

And they pushed me out of his room.  Then some young woman in a lab coat said, does anybody know how to code?  I don't know how to code?  Can somebody tell me how to code? I never coded before.

And I started panicking out in the hallway.  And then Dr. Turner came out, but I hadn't seen her go into the room.  She had come out and put her hands on both of my shoulders.

She said, look, we just found a blockage.  It's not in the bad artery.  It's in the good artery.  And we're going to take him to the cath lab, and we're going to put in a stent and he'll be fine and probably go home tomorrow.

That was the extent of my conversation with her.  Then they took him away.

**Q.**    You mentioned that at some point he turned ashen and became unconscious.

**A.**    Yes.

**Q.**    Were you alone in the room with him when that happened?

**A.**    I believe so.

**Q.**   Are you able to tell me whether he was hooked up to various machines?

**A.**   He had all kinds of leads on him, but there was a young girl before who was trying to attach leads. And she said she didn't know how to do it and could someone show her how to do it.

There were two in the room at that time. It was not the same time when I saw him go ashen. I don't know the time frame, but it was upstairs in that room and not in the ER.

*See* Dep. of Bracha Strimber, 2/17/14, at 60-62.

*Toney*, and the cases from other jurisdictions to which it refers, make clear that a doctor's duty is to the patient and not to the concerned or worried relative. *See Toney*, 614 Pa. at 117-118 ("some relationships, including some doctor-patient relationships, will involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm"). There is no suggestion that a relative's claim should derive from the duty to the patient. There is a sound reason for confining a doctor's duty to the patient, especially in light of a possible life and death situation. Under such circumstances a doctor should be able to give all of his attention to the patient and not be worried about whether he has perceived and prevented any emotional distress, severe or otherwise, in one or more persons previously unknown to him, persons whom he may not have even met.[4]

Mrs. Strimber has failed to establish that Mr. Strimber's physicians owed her a duty of care. Moreover, she failed to establish that her contemporaneous observation of her husband's

---

[a]  I reach this conclusion cognizant of the theory of bystander liability adopted by the Pennsylvania Supreme Court in *Sinn v. Burd,* 404 A.2d 672 (Pa. 1979) (adoption of the bystander liability theory of NIED allowed recovery for emotional distress for plaintiffs who witnessed an accident causing serious injury to a close family member). I do not apply the bystander rule in this case because I conclude that application of any rule that would require a physician to be concerned about the emotional well-being of unknown persons would divert his attention from the duty to care for the patient.

alleged pain and suffering rises to the level "a devastating assault" or "physical agony." *Toney*, 614 at 117.  For these reasons, defendants' Manoj Muttreja, M.D., and Abington Medical Specialists Association, P.C., motion for summary judgment on Mrs. Strimber's claim for negligent infliction of emotional distress is granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY FREEDMAN, et al. | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN FISHER, M.D., et al. | : | No. 13-3145 |
| Defendants | : | |

## ORDER

**AND NOW**, this 30th day of September, 2014, upon consideration of the Motion

of Defendants, Manoj Muttreja, M.D., and Abington Medical Specialists, P.C., for

Judgment on the Pleadings, or in the alternative, for Summary Judgment as to Count VIII

of Plaintiffs' Amended Complaint alleging negligent infliction of emotional distress

(Doc. No. 70), and the response (Doc. No. 71), **I HEREBY ORDER** that:

1.  Defendants' Manoj Muttreja, M.D., and Abington Medical Specialists, P.C., Motion to Dismiss Count VIII of Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) is **DENIED**.

2.  Defendants' Manoj Muttreja, M.D., and Abington Medical Specialists, P.C., Motion for Summary Judgment as to Count VIII of the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 56 is **GRANTED.**

/s/ J. William Ditter, Jr.
**J. WILLIAM DITTER, JR., J.**