IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY FREEDMAN, et al. | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN FISHER, M.D., et al. | : | No. 13-3145 |
| Defendants | : | |

**MEMORANDUM**

An appropriate federal law addresses the problem of "patient dumping," a practice of some hospitals that, for economic and other reasons, sent prospective patients to another institution without first evaluating that patient's needs. In brief, the law known as the Emergency Treatment and Labor Act ("EMTALA"), provides that whatever the hospital's protocol may be for a given condition, every patient must receive the same tests, evaluation, care, and treatment as every other patient with the same condition. In addition, the hospital must stabilize any known emergency medical condition prior to transfer of a patient to another facility. Notwithstanding, EMTALA does not create a federal cause of action for malpractice. Presently before me are cross motions for summary judgment along with responses and sur-replies related to Plaintiffs' claim under that law.

Defendant Abington Memorial Hospital ("AMH") argues that summary judgment should be entered in its favor on the plaintiffs' claims brought under EMTALA, 42 U.S.C. § 1395dd(a), as pled by plaintiffs in Count XI of the Amended Complaint. In

support thereof, AMH contends that the plaintiffs' EMTALA claim is time-barred by the statute of limitations and that undisputed material facts demonstrate that the plaintiffs' EMTALA claim is legally insufficient.

In their cross-motion, the plaintiffs also move for summary judgment on the EMTALA claim. Plaintiffs argue that judgment should be entered in their favor as there is no genuine dispute as to the material facts which establish an EMTALA violation.

For the reasons that follow, the plaintiffs motion for summary judgment is denied and AMH's motion is partially denied and partially granted.

## I.  FACTUAL BACKGROUND

I will review the facts once again for clarity's sake. Abraham Strimber presented to the emergency department at Abington Memorial Hospital at approximately 11:40 a.m. with multiple complaints, including chest and abdominal pain. Within minutes, Mr. Strimber was evaluated by an emergency department nurse and then assigned to a primary nurse. Both nurses documented his complaints, their examinations, and their observations of Mr. Strimber.

At 12:23 p.m., Mr. Strimber was examined by an emergency department physician, Steven Fisher, M.D., who made a differential diagnosis and ordered extensive laboratory tests. At 2:27 p.m., Dr. Fisher discharged Mr. Strimber from the emergency department and transferred him within the hospital for further observation.

Margo Turner, M.D., who specializes in internal medicine, next observed,

examined, and ordered further testing. Mr. Strimber was then seen by Dr. Muttreja, a cardiologist, at 6:30 p.m. Dr. Muttreja noted that he doubted Mr. Strimber suffered from acute coronary syndrome based upon cardiac markers and an EKG, but recommended an echocardiogram.[1]

At 8:30 p.m., the floor nurse alerted Dr. Turner to a dangerous change in Mr. Strimber's cardiac condition. Shortly thereafter he was taken to the catheterization lab where testing revealed pericardial hemorrhage. Mr. Strimber rapidly deteriorated and despite a series of emergency measures, he died at 10:49 p.m. of a dissecting aorta.[2]

**IIL     STANDARD OF REVIEW**

A reviewing court may enter summary judgment where there are no genuine issues as to any material fact and a party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The evidence presented must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In deciding the motion for summary judgment, it is not the function of the court to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. Id.

---

[1] It does not appear that Mr. Strimber ever received an echocardiogram. *See* Dep. of Dr. Turner, 3/18/14 at pp. 99-101.

[2] It may have been a ruptured ascending aorta aneurysm. For the present purposes, at least, the difference is unimportant.

at 248-49.

The moving party has the initial burden of identifying relevant evidence which it believes shows an absence of a genuine issue of material fact and supports its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings and designate specific facts, by use of affidavits, depositions, admissions, or answers to interrogatories, showing that there is a genuine issue for trial. *Id*. at 324. Moreover, when the nonmoving party bears the burden of proof, it must "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987) (quoting *Celotex*, 477 U.S. at 322). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.  DISCUSSION

#### A.  EMTALA

The cross-motions before me both address the plaintiffs' EMTALA claim. As I have previously noted, EMTALA was enacted based on concerns over "patient dumping"– a practice where hospitals, usually because of economic concerns, either

4

refused to treat certain emergency room patients or transferred them to other facilities. *See Torretti v. Main Line Hospitals*, 580 F.3d 168, 173 (3d Cir. 2009). The Act contains several requirements, however, and is not limited to a prohibition against refusing to treat individuals with emergency conditions based on insurance coverage. "EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside facilities."[3] *Torretti*, 580 F.3d at 172 (citing 42 U.S.C. § 1395dd(a)-(c)). Because EMTALA does not create a federal cause of action for malpractice, "[l]iability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice, as the statute was aimed at disparate patient treatment." *Id.* at 174 (internal citations omitted).

1. **Statute of Limitations**

AMH first argues that the EMTALA claim is barred by the statute of limitations while the plaintiffs contend it "relates back" to the original complaint and therefore may

---

[3] The screening and stabilization provision in EMTALA are distinct obligations. In order to establish an EMTALA violation, a plaintiff must show that the hospital either "(a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition." *See Correa v. Hospital San Francisco,* 69 F.3d 1184, 1190 (1st Cir. 1995).

5

proceed.[4] As it relates to the instant case, Rule 15(c) sets forth one relevant prerequisite for an amendment to relate back to the original complaint: "the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (citing Fed.R.Civ.P. 15(c)). "Relation back is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Glover*, 698 F.3d at 145 (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010)). "[A]pplication of Rule 15(c)(1)(B) normally entails a 'search for a common core of operative facts in the two pleadings'" *Id.* (citations omitted). "[I]t is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that a 'party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Id.* (citations omitted). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will

---

[4] EMTALA claims have a two year statute of limitations. Mr. Strimber died on February 22, 2012. The original Complaint was filed on June 7, 2013. The Motion for Leave to Amend the Complaint in order to plead an EMTALA claim was filed on April 15, 2014, and the Order granting leave to file the Amended Complaint was filed on May 6, 2014. Because the amended complaint was filed after the two year statute of limitations had expired, plaintiffs' EMTALA claim will be considered timely only if it "relates back" to the time of the filing of the original Complaint. *See Glover v. Federal Deposit Ins. Corp.*, 698 F.3d 139, 145 (3d Cir. 2012) ("[w]here an amendment relates back, Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations, thereby permitting resolution of a claim on the merits, as opposed to a technicality").

relation back be allowed." *Id.* (citation omitted).

AMH contends that there is "nothing pleaded [in the original complaint] that should have alerted AMH that it might have direct statutory liability for failure to comply with a federal statutory requirement of performance [EMTALA] of an appropriate screening examination." Def's. Mot. for Partial Summ. J. (Doc. #77), at 20. The facts underpinning an EMTALA claim were pled in the original complaint, i.e, the failure to adequately screen, examine and treat Mr. Strimber. This gave AMH "fair notice" that an EMTALA claim was possible. *See Glover*, 698 F.3d at 146. In their original pleading, the plaintiffs alleged that on AMH had a duty to "adopt and enforce adequate rules and policies to ensure quality care for patients" as well as to ensure medical staff perform "timely and proper patient assessments and/or evaluations." Pls.' Compl. ¶ 87. Similarly, in their amended complaint, the plaintiffs claimed that AMH failed in its duty to "conduct a full and complete medical screening examination" and failed to "timely determine whether or not an emergency medical condition existed." Pls.' Am. Compl. ¶ 84. Moreover, the plaintiffs' EMTALA claim does not differ in "time and type" from the claims earlier alleged against AMH.

There is no question that the EMTALA claim arises out of the same incident and set of facts. *Contra Glover*, 698 F.3d at 147 (finding claim in amended complaint did not "relate back" when defendants were not given "fair notice" of the basis for liability asserted against them because amended claim did not arise from the factual occurrences giving rise to claim in original pleading). Because the plaintiffs' original complaint

7

"adequately notified [AMH] of the basis for liability the plaintiffs would later advance in the amended complaint," *Glover*, 698 F.3d at 146 (citations omitted), AMH's motion for dismissal on the ground that the plaintiffs' EMTALA claim does not relate back to the filing date of the original complaint is denied.

### 2. Failure to Screen

Plaintiffs contend AMH violated EMTALA's screening provision when Mr. Strimber was admitted to the hospital's emergency department. Pl.'s Am. Compl. ¶ 84. That provision requires a hospital to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition [] exists." 42 U.S.C. § 1395dd(a). Although the statute does not define "appropriate medical screening," courts in this Circuit have interpreted the statute as requiring hospitals to provide "uniform screening to all those who present substantially similar complaints." *Blake v. Main Line Hospitals, Inc.*, Civ. No. 12-3456, 2014 WL 1345973, at *3 (E.D. Pa. Apr. 3, 2014); *see also Byrne v. Cleveland Clinic*, 519 Fed. Appx. 739, 742 (3d Cir. 2013) (observing that, under EMTALA, a hospital is free to determine what its screening procedures will be, but it must "apply them alike to all patients").

The plaintiffs argue that AMH did not have an established policy or protocol applicable to a case presenting symptoms such as those exhibited by Mr. Strimber. Pls.' Resp. in Opp'n to Mot. for Partial Summ. J. (Doc. #83), at 9. Therefore, the plaintiffs contend they must look to the medical records of similarly situated patients in order to

8

determine the "uniform screening" for patients who complain of chest pain in the emergency room at AMH. *Id.* at 10. Plaintiffs report that 96 percent of all patients (or 212 of the 221 patient records reviewed) who complained of chest pain received some form of chest imaging. *Id.* Thus, the plaintiffs claim that Mr. Strimber's complaint of chest pain should have triggered AMH's protocol for patients who complain of chest pain and that AMH should have performed a chest x-ray or chest imaging.

AMH counters that Mr. Strimber repeatedly denied chest pain and that the treatment provided to him provided appropriate medical screening for a patient exhibiting his myriad of symptoms.[5] In support thereof, it notes the protocol entitled "Policy Regarding Myocardial Infarction," applies to Mr. Strimber's case. Def's. Mot. for Partial Summ. J. (Doc. #77), at 8. AMH notes that this policy does not require a physician or other caregivers to order a chest X-ray for patients with chest pain. *Id.* Instead, the results of an electrocardiogram ("EKG") are evaluated to rule out the possibility of an acute myocardial infarction and to address the need for further testing. *Id.*

I conclude that there is a material issue of fact as to whether AMH had an appropriate protocol or standard screening procedure for a patient presenting with Mr. Strimber's complaints and whether the protocol/screening procedure was followed in Mr. Strimber's case. Complicating that decision is the issue of Mr. Strimber's alleged chest

---

[5] Mr. Strimber's emergency room records indicate that AMH was aware that Mr. Strimber was allergic to "iodinated contrast" and "iodinated radiocontrast agents." Consequently, he was unable to receive any testing with contrast. He received a CT scan, without contrast, of his abdomen and pelvis at 1:36 p.m.

9

pain complaints. AMH argues that Mr. Strimber repeatedly denied chest pain to healthcare professionals. However, there are numerous conflicts in the medical record and deposition testimony regarding complaints of chest pain. For example, Dr. Fisher, the initial emergency room treating physician, testified at his deposition that he did not believe that Mr. Strimber suffered from chest pain; however, his treatment notes and orders include references to chest pain. *See* Pls.' Mot. for Partial Summ. J. (Doc. #78), at Ex. "A," "H." Moreover, although Dr. Turner testified that Mr. Strimber did not specifically complain of chest pain to her, she also stated "I believe [Mr. Strimber] had chest pain." Dep. of Dr. Turner, 3/18/14 at p. 54:19-20. AMH contends that the initial indication of chest pain in Mr. Strimber's medical record was merely transcribed by a clerk during his emergency room registration. Dep. of Dr. Fisher, 2/24/14 at p. 155-156. AMH also points out that notations of chest pain by Drs. Fisher and Turner were not based on actual complaints but were in the record to provide a reason to obtain a particular test or cardiology consult. Def's. Mot. for Partial Summ. J., at 15. At the very least, these conflicts between deposition testimony and Mr. Strimber's medical record are issues of material fact to be weighed by a jury.

Because the record contains conflicting evidence regarding Mr. Strimber's complaints of chest pain, there is an issue of material fact regarding AMH's perception of Mr. Strimber's emergency condition and whether the medical screening performed was appropriate. This issue will be resolved by weighing the evidence and evaluating

witnesses - an issue which must be resolved by a jury.[6]

### 3. Failure to Stabilize

The plaintiffs also argue that AMH had a duty to stabilize his condition before moving him out of the emergency room. Under EMTALA, if a hospital determines that an "individual at a hospital has an emergency medical condition which has not been stabilized [], the hospital may not transfer the individual." 42 U.S.C. § 1395dd(c)(1). In order to prevail on a "failure to stabilize" claim, the plaintiffs must establish that Mr. Strimber: "(1) had 'an emergency medical condition; (2) the hospital actually knew of

---

[6] AMH argues that the recent case of *Moore v. Grand View Hospital*, 2014 WL 6676535 (E.D. Pa. Nov. 24, 1014) (Tucker, C.J.), supports its contention that the plaintiffs have failed to establish a claim under EMTALA; however, *Moore* is distinguishable. Rachel Moore was 38 6/7 weeks pregnant when she was admitted to Grand View Labor and Delivery Unit for testing. The attending physician, Michael Chmielewski, M.D., conducted electronic fetal monitoring, blood pressure tests and a urinalysis, but did not screen Mrs. Moore for preeclampsia, a pregnancy complication affecting both mother and child. Dr. Chmielewski discharged Mrs. Moore after several hours. Two days later, Mrs. Moore delivered a stillborn baby girl. Testing indicated that preeclampsia was the presumptive cause of baby girl Moore's death. In granting Grand View Hospital's motion for summary judgment on the plaintiff's EMTALA claim, Judge Tucker concluded that Grand View had followed its standard screening procedure in treating Mrs. Moore. The plaintiffs' allegation that Mrs. Moore's treating physician should have tested her for preeclampsia ultimately failed because Dr. Chmielewski did not perceive Mrs. Moore as a patient presenting with preeclampsia or any other medical emergency. Judge Tucker opined that "Dr. Chmielewski and Grand View performed medical screening on Mrs. Moore consistent with Dr. Chmielewski['s] *perception* of Mrs. Moore's medical condition at the time she was admitted to Grand View." *Id.* at 7 (emphasis in original). In the instant case, as previously discussed, there is a question of fact as to Mr. Strimber's treatment providers' perception of his complaints. Indeed, although Mr. Strimber repeatedly denied having chest pain, Dr. Turner testified at her deposition that she admitted Mr. Strimber because a "61-year-old man with a history of aortic valve surgery complaining of chest pain in triage and having abdominal pain is someone who warrants admission for further evaluation." *See* Dep. of Margo E. Turner, M.D., (3/18/14, at 114-115). Because there is some evidence that Mr. Strimber's treatment providers perceived him as a patient with chest pain, there is an issue of fact as whether he received appropriate medical screening. Thus, *Moore* is not persuasive.

11

that condition; [and] (3) the patient was not stabilized before being transferred." *Torretti*, 580 F. 3d at 178 (citing *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 883 (4th Cir. 1992)). Although the plaintiffs contend that Mr. Strimber was "discharged" to the observation unit, their arguments are unconvincing. For purposes of EMTALA, the term "transfer" means the movement, including the discharge, of an individual to a facility outside the hospital. 42 U.S.C. § 1395dd(e)(4). Dr. Fisher's decision to move Mr. Strimber out of the emergency room and into an observation unit is not a "transfer" as specifically defined under EMTALA. Mr. Strimber never left AMH's facility; therefore, he was not "discharged." Because Mr. Strimber was never "transferred" from AMH's facility, the plaintiffs have failed to establish a "failure to stabilize" claim under EMTALA. As a result, judgment is entered in favor of AMH with respect to the plaintiffs failure to stabilize claim.